IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LEON WEINGRAD,** individually and on behalf of all others similarly situated, | Case No. 2:25-cv-1843 |
| *Plaintiff*, | **CLASS ACTION** |
| v. | **JURY TRIAL DEMANDED** |
| **EXACT CARE PHARMACY, LLC** | |
| *Defendant.* | |

**CLASS ACTION COMPLAINT**
**AND DEMAND FOR JURY TRIAL**

Plaintiff Leon Weingrad ("Plaintiff" or "Mr. Weingrad") brings this Class Action Complaint and Demand for Jury Trial against Defendant Exact Care Pharmacy, LLC ("Defendant") and alleges as follows:

1. Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations

was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3. The Plaintiff brings this action to enforce the consumer-privacy provisions of the TCPA alleging that Exact Care Pharmacy, LLC violated the TCPA by making telemarketing calls to Plaintiff and other putative class members listed on the National Do Not Call Registry without their written consent, by making telemarketing calls without the accurate provision of Caller ID Name (CNAM), as well as calling people who had previously asked to no longer receive calls.

## PARTIES

4. Plaintiff Leon Weingrad is an individual.

5. Defendant Exact Care Pharmacy, LLC, which does business under the name ExactCare Pharmacy, is an Ohio LLC which is registered to do business in Pennsylvania, with its registered agent office address in Montgomery County, which lies within this District.

## JURISDICTION AND VENUE

6. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

7. The Court has general personal jurisdiction over Defendant ExactCare. because it has registered to do business in Pennsylvania, thereby consenting to the exercise of general personal jurisdiction in Pennsylvania.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because the Defendant has its registered office in Montgomery County and therefore "resides" in this judicial District.

## BACKGROUND

**A. The TCPA Prohibits Calls to Numbers on the National Do Not Call Registry.**

9. The TCPA prohibits making multiple telemarketing calls to a residential telephone number that has previously been registered on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5).

10. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

11. A listing on the National Do Not Call Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

12. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers on the Registry and provide a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**B.   The TCPA Also Requires Telemarketers to Transmit Caller Identification Information Including the Telemarketer's Name.**

13. The TCPA requires any "person or entity that engages in telemarketing" to "transmit caller identification information." 47 C.F.R. § 64.1601(e).

14. The relevant regulation defines "caller identification information" as "either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer." 47 C.F.R. § 64.1601(e)(1).

15. A violation of this subsection of the TCPA is enforceable under the private right of action provided for under 47 U.S.C. § 227(c)(5)'s private right of action. *Dobronski v. Selectquote Ins. Servs.*, No. 2:23-CV-12597, 2025 WL 900439, at *3 (E.D. Mich. Mar. 25, 2025).

## FACTUAL ALLEGATIONS

16. The Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

17. At no point did the Plaintiff consent to receiving telemarketing calls or text messages from the Defendant prior to receiving the calls at issue.

18. Plaintiff's telephone number, (503) XXX-XXXX, is a residential, non-commercial telephone number.

19. Mr. Weingrad uses the number for personal, residential, and household reasons.

20. Mr. Weingrad does not use the number for business reasons or business use.

4

21. The number is a residential telephone line because it is assigned to a residential telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

22. Moreover, the telephone line is assigned to a cellular service which is presumptively residential and was eligible for registration on the National Do Not Call Registry at the time it was registered.

23. Plaintiff's telephone number has been listed on the National Do Not Call Registry for over a year prior to the calls at issue.

24. Plaintiff has never been a customer of ExactCare.

25. Despite that fact, the Plaintiff received over ten telemarketing calls from the Defendant, starting on November 27, 2024 and continuing through present.

26. The calls all came from the following numbers, which included "spoofed" or potentially "spoofed" numbers. Counsel for the Plaintiff has access to "dip" the Caller ID database of the calling carrier to ascertain the CNAM information to ascertain (1) whether caller name delivery (CNAM) is available with the Defendant's calling carrier, and (2) whether such CNAM information contained the name of the telemarketer. The results of those dips are as follows:

| Number | Date | CNAM Avail? | CNAM Result | Carrier |
|---|---|---|---|---|
| 5032888192 | 27/11/2024 | Y | O'NEILL CHRISTI | Comcast (spoofed) |
| 5037556487 | 07/12/2024 | Y | SEASIDE OR | IP Horizon (ps) |
| 5034613416 | 27/02/2025 | Y | CANNON BEACH OR | Commio (ps) |
| 5039908308 | 27/02/2025 | Y | INC RAYS PRODUC | Comcast (spoofed) |
| 5032884576 | 27/02/2025 | Y | PORTLAND OR | Onvoy (ps) |

5

| 5034046898 | 27/02/2025 | Y | COLLINSAEROSPAC | Teleport (ps) |
| 5037556487 | 28/02/2025 | Y | SEASIDE OR | IP Horizon (ps) |
| 8773557225 | 06/03/2025 | Y | EXACTCARE PHARM | ANI Networks |
| 5038560896 | 06/03/2025 | Y | SALEM,OR | Qwest (spoofed) |
| 8773557225 | 07/03/2025 | Y | EXACTCARE PHARM | ANI Networks |

27. As the aforementioned chart shows, the CNAM transmitted by the Defendant's ultimate telephone carrier, ANI Networks, provided accurate CNAM functionality in at least two instances, but provided inaccurate CNAM functionality in all others.

28. Moreover, in the case of several of the numbers at issue, the Defendant appears to have either spoofed them or potentially spoofed them, as will be revealed through discovery, to further hide their location.

29. The first such listed call was an individual named "Lisa" who was calling from "ExactCare Pharmacy." "Lisa" was calling to pitch the Plaintiff for a home delivery medication service, but could not validate that the Plaintiff had insurance, and so could not proceed, and wished the Plaintiff a good day.

30. However, the calls continued, including the call on February 27, 2025 at 7:45 AM local time from the "spoofed" caller ID 503-461-3416. During this call, the Plaintiff spoke with "Sophia" who initially claimed to be calling from the fictitious alias "Healthcare Benefits," and pitched the Plaintiff on a home delivery service for medication, and attempted to collect various personal information, including the medications that the Plaintiff was taking and his medicare number.

31. During that call, "Sophia" transferred the call to a "Diane" of "ExactCare Pharmacy's" "shipping team." "Diane" continued the sales pitch by stating that "ExactCare Pharmacy now offers complimentary services like automatic delivery of your prescriptions with

6

free shipping, re-sorting of your medications into pockets marked with a time and date to take them, and your pharmacist will review your medications to look for possible risk to you." However, upon review, "Diane" stated, "ExactCare pharmacy doesn't participate with your current insurance plan, so we cannot proceed with the onboarding process." "Diane" then hung up the call.

32. However, the Plaintiff received yet another call from "Sophia" from the alias "Healthcare Benefits" from the apparently "spoofed" caller ID 503-404-6898 that same day. "Sophia" stated that ExactCare would be able to ship out the Plaintiff's medication if the Plaintiff stated that he was on Medicaid and did not have private insurance. "Sophia" then transferred the call to "Snowar" with "ExactCare Pharmacy," who confirmed all the Plaintiff's information, and then transferred the call to "Sephra," who stated that she was an "onboarding specialist" at "ExactCare Pharmacy."

33. "Sephra" further explained the nature of the services offered by Defendant and attempted to sell them, including by stating that ExactCare was a "family-owned and operated pharmacy serving facilities, institutions, and project patients with over 30 years of experience" and advertised the ability to get prescriptions synchronized and packaged in pre-sorted packaging.

34. At the conclusion of the call, the Plaintiff stated that he was busy and that he would call the Defendant back.

35. However, despite not calling the Defendant back, the calls continued, including a February 28 call from the "spoofed" caller ID 503-755-6487. During that call, the Plaintiff spoke with "Hazel" from "Healthcare Benefits." The Plaintiff hung up.

7

36. Thereafter, on March 6, 2025, the Plaintiff spoke with an individual named "Justin" calling from the caller ID 877-355-7225, stating that he was looking to offer prescription delivery and that "We offer a service where we would sort and prepackage her prescription medications for her based on when she's scheduled to take it. And then we would deliver it at no additional cost. So we were just reaching out to see if that's something she would be interested in."

37. During this call, the Plaintiff stated that he was working and would give a call back if he was interested.

38. Thereafter, that same day, the Plaintiff received a call from the "spoofed" number 503-856-0896, with "Jane" calling from "Healthcare Benefits." During this call, "Jane" went through nearly the same script as "Justin" did previously and stated that the Plaintiff would receive a call back from someone regarding medication delivery. The Plaintiff stated that he would call the caller back.

39. Finally, on March 7, 2025, the Plaintiff received yet another call. It was "Justin" calling from the caller ID 877-355-7225, stating that he was looking to offer prescription delivery, using much the same script. The Plaintiff stated, "I'm at work, and you guys are calling me like every day. You guys can stop doing that."

40. The calls were unwanted.

41. The calls were nonconsensual encounters.

42. Plaintiff's privacy has been repeatedly violated by the above-described telemarketing calls, including by calling in violation of the calling hours restrictions of the TCPA.

43. Plaintiff never provided his consent or requested the calls.

44. Plaintiff and the Classes have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, storage space, and bandwidth, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## CLASS ACTION ALLEGATIONS

45. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

46. Plaintiff brings this action on behalf of himself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23.

> **National DNC Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendant encouraging the purchase of ExactCare's goods or services, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.
>
> **Telemarketing Caller ID Class:** All persons within the United States to whom: (1) Defendant (or a third-party acting on behalf of Defendant) sent (2) two or more telemarketing calls in a 12-month period, (3) without the transmission of caller identification information that included either CPN or ANI and the Defendant or telemarketer's name, (4) within the four years prior to the filing of the Complaint.
>
> **Early/Late Calls Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant (or a third-party acting on behalf of Defendant) called, (2) within any 12-month period, (3) promoting ExactCare's goods or services, (4) before the hour of 8 a.m. or after 9 p.m. (local time at the called party's location).
>
> **Internal DNC Class:** All persons within the United States to whom: (1) Defendant (or a third-party acting on behalf of Defendant) sent (2) two or more telemarketing calls in a 12-month period, (3) who were not current customers of the Defendant at the time of the calls, (4) who had previously asked for the calls to stop and (5) within the

four years prior to the filing of the Complaint.

47. **Numerosity**: The exact number of Class members is unknown but based on the *en masse* nature of telemarketing is believed to be at least hundreds of persons at this time, and individual joinder in this case is impracticable. Class members can be easily identified through Defendant's records, or those of their agents.

48. **Typicality**: Plaintiff's claims are typical of the claims of other Class members in that Plaintiff, and Class members, sustained damages arising out of Defendant' telemarketing calls and Class members sustained similar injuries and damages as a result of Defendant' uniform illegal conduct.

49. **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex class actions to vigorously prosecute this action on behalf of the Classes. Plaintiff has no interests that conflict with, or are antagonistic to those of, the Classes, and Defendant has no defenses unique to Plaintiff.

50. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to, the following:

    a. Whether Defendant obtained "prior express invitation or permission" under the TCPA, before the calls at issue;

    b. whether Defendant recorded or honored "do not call" requests of Plaintiff and members of the Internal Do Not Call Class;

    c. whether Defendant transmitted CPN or ANI and its name in the caller ID information, when provided as an option by their telephone carrier, to Plaintiff and members of

the Telemarketing Caller ID Class;

  d. whether Defendant placed calls in violation of the TCPA's calling hour restrictions, to Plaintiff and members of the Early/Late Calls Class;

  e. Whether Defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the TCPA's do-not-call regulations;

  f. Whether Defendant should be held liable for violations committed on its behalf; and

  g. Damages, including whether any violations were performed willfully or knowingly, such that Plaintiff and the other Class members are entitled to treble damages under 47 U.S.C. § 227(c)(5).

51. **Superiority**: Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. There are hundreds of Class members in each class, such that joinder of all members is impracticable.

52. In addition to satisfying the prerequisites of FED. R. CIV. P. 23(a), Plaintiff satisfies the requirements for maintaining a class action under FED. R. CIV. P. 23(b) because:

  a. The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendant;

  b. The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

  c. Defendant has acted or refused to act on grounds that apply generally to the proposed Classes, thereby making final injunctive relief or declaratory relief herein appropriate with respect to the proposed Classes as a whole; and

  d. Questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## COUNT I
### Violations of the TCPA, 47 U.S.C. § 227
### (On Behalf of Plaintiff and the National DNC Class)

53. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

54. It is a violation of the TCPA to initiate any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry. 47 C.F.R. 64.1200(c)(2).

55. Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the TCPA by causing multiple telephone solicitation calls to be initiated to Plaintiff and members of the National DNC Class in a 12-month period, despite the person's registration of his or her telephone numbers on the National Do Not Call Registry.

56. These violations were willful or knowing.

57. As a result of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA's national do-not-call rule, Plaintiff and members of the National DNC Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

58. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

## COUNT II
### Violations of the TCPA, 47 U.S.C. § 227
### (On Behalf of Plaintiff and the Telemarketing Caller ID Class)

59. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

60. It is a violation of the TCPA to make a telemarketing call without the transmission of caller identification information including either a CPN or ANI and, when available by the telemarketer's carrier, the name of the telemarketer. 47 C.F.R. § 64.1601(e)(1).

61. Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the TCPA by causing multiple telemarketing calls to be initiated to Plaintiff and members of the Telemarketing Caller ID Class in a 12-month period, without transmitting the name of the telemarketer, despite such option for transmission of accurate CNAM information being available by its carrier.

62. These violations were willful or knowing.

63. As a result of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA's telemarketing Caller ID transmission requirement, Plaintiff and members of the Telemarketing Caller ID are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

13

64. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

### COUNT III
### Violation of the Telephone Consumer Protection Act
### (47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c))
### (On Behalf of Plaintiff and the Early/Late Call Class)

65. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

66. It is a violation of the TCPA to initiate any telephone solicitation before 8:00 AM or after 9:00 PM, local time at the called party's location, as the Defendant did for some of the calls received by Plaintiff. 47 C.F.R. § 64.1200(c)(1)

67. Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the TCPA by sending such messages outside the permitted hours.

68. These violations were willful or knowing.

69. As a result of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA's calling hours restrictions, Plaintiff and members of the Early/Late Call Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

70. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

### COUNT IV
### Violations of the TCPA, 47 U.S.C. § 227
### (On Behalf of Plaintiff and the Internal DNC Class)

71. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

72. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by sending telemarketing calls, except for emergency purposes, to Plaintiff and members of the Internal Do Not Call Class despite previously requesting that such calls stop.

73. Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

74. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Internal Do Not Call Class are entitled to an award of up to $500 and in damages for each and every call sent and up to $1,500 in damages if the calls are found to be willful.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Classes, respectfully request that the Court enter judgment against Defendant for:

A. Certification of the Classes as alleged herein;

B. Appointment of Plaintiff as representative of the Classes;

C. Appointment of the undersigned as counsel for the Classes;

D. Damages to Plaintiff and members of the Class pursuant to 47 U.S.C. § 227(c)(5);

E. Injunctive relief for Plaintiff and members of the Class, pursuant to 47 U.S.C. § 227(c)(5), preventing the Defendant from making calls to numbers listed on the National Do Not Call Registry, to those who have asked them to stop, outside the permitted hours, or while failing to transmit the caller ID information required by law;

F. Attorneys' fees and costs, as permitted by law; and

G.      Such other or further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

RESPECTFULLY SUBMITTED AND DATED this 10th day of April, 2025.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
PA Bar #333687
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com