**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LEON WEINGRAD, | ) | CASE NO. 2:25-CV-1843-MMB |
| | ) | |
| Plaintiff, | ) | JUDGE MICHAEL M. BAYLSON |
| | ) | |
| v. | ) | |
| | ) | |
| EXACT CARE PHARMACY, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

<u>**DEFENDANT EXACT CARE PHARMACY, LLC'S BRIEF IN SUPPORT OF**</u>
<u>**MOTION TO BIFURCATE DISCOVERY**</u>

**I.      INTRODUCTION**

The very first rule of the Federal Rules of Civil Procedure states the rules "should be construed, administered, and employed by the court and the parties to ***secure the just, speedy, and inexpensive*** determination of every action and proceeding."  *See* Fed. R. Civ. P. 1 (emphasis added).  To that end, federal courts across the country (and within the Third Circuit) routinely bifurcate discovery in Telephone Consumer Protection Act ("TCPA") cases with discovery on the threshold issue of the Plaintiff's individual claims occurring before any class discovery.  This is particularly true where, as here, there are critical threshold issues unique to Plaintiff's individual claims that  may be dispositive of Plaintiff's claims and, if so, negate any need for class discovery.

Plaintiff Leon Weingrad ("Plaintiff" or "Mr. Weingrad") alleges that Exact Care Pharmacy, LLC ("Exact Care") violated the TCPA by contacting Plaintiff's telephone number because Defendant allegedly did not receive prior express consent to call Plaintiff's telephone number. However, Exact Care received from its vendor evidence of express consent to contact the phone number at issue.  The individual who completed the online form and provided express consent to contact the phone number at issue identified himself as Joseph Arnold.  Additionally, consent to

contact the phone number at issue was confirmed on call recordings in which the Plaintiff used a different name. Tellingly, Mr. Weingrad has brought more than twenty-five TCPA cases against other companies in close proximity to this lawsuit and in at least one of them the same incorrect name was used to provide consent to be contacted at the phone number at issue.[1] Because consent is an absolute defense to a TCPA claim, it is critical that the parties resolve this threshold issue to efficiently and expeditiously resolve this case.

Put simply, this case is a prime candidate for bifurcated discovery—where the parties initially focus discovery on narrowly-tailored issues relevant to the merits of Plaintiff's individual claim, before conducting broader discovery (if at all). Doing so would be much more efficient, conserve judicial and party resources, and possibly lead to a swifter resolution of Plaintiff's claims. If Plaintiff does not have a viable TCPA claim or lacks standing, his claim fails on the merits and he cannot serve as a class representative. Conversely, should Plaintiff have a viable claim, the parties will have the assurance that class-wide discovery is necessary. Accordingly, at this

---

[1] *See e.g., Weingrad v. First American Home Warranty Corporation* (E.D. Pa. 2:24-cv-05488); *Weingrad v. Premium Merchant Funding One, LLC* (E.D. Pa. 2:24-cv-06247); *Weingrad v. Posigen Developer, LLC* (E.D. Pa. 2:24-cv-06503); *Weingrad v. Fund Mate, LLC et al* (E.D. Pa. 24-cv-04716); *Weingrad v. Quotelab, LLC* (E.D. Pa. 2:23-cv-05007); *Weingrad v. National Health Enrolment Centre* (E.D. Pa. 2:23-cv-05114); *Weingrad v. RFR Capital LLC* (E.D. Pa. 2:24-cv-02636); *Weingrad v. Westmount Funding LLC* (E.D. Pa. 2:24-cv-03705); *Weingrad v. Iban Global LLC et al* (E.D. Pa. 2:24-cv-04212); *Weingrad v. Baker Solutions Inc.* (E.D. Pa. 2:25-cv-01792). *See also Weingrad v. SmartMatch Insurance Agency, LLC* (M.D. Pa. 1:24-cv-02067); *Weingrad v. Yelp Inc.* (M.D. Pa. 24-cv-01330); *Weingrad v. Quotewizard.com, LLC* (M.D. Pa. 1:25-cv-00002); *Weingrad v. Synergy BPO LLC* (N.D. Tex. 4:24-cv-00610); *Weingrad v. DH & RK Investments LLC* (C.D. Ca. 2:24-cv-05981); *Weingrad v. Top Healthcare Options Insurance Agency Inc.* (S.D. Fl. 24-cv-61930); *Weingrad v. Direct Health Solutions Insurance Agency, LLC* (S.D. Fl. 24-cv-62282); *Weingrad v. DH & RK Investments LLC* (S.D. Fl. 24-cv-80701); *Weingrad v. Tier One Insurance Company* (M.D. Ga. 4:25-cv-00124); *Weingrad v. Block Equity Group LLC* (E.D. N.Y. 2:24-cv-02618); *Weingrad v. Slingshot Enterprises Inc.* (E.D. N.Y. 2:24-cv-03736); *Weingrad v. K9 Bookkeeping, LLC* (S.D. N.Y. 1:24-cv-06256); *Weingrad v. BuyerLink Inc. et al* (D. Or. 3:24-cv-02114); *Weingrad v. CHW Group, Inc.* (D. Or. 3:25-cv-00370); *Weingrad v. DaBella Exteriors LLC* (D. Or. 3:25-cv-00396); *Weingrad v. LifeWave, Inc.* (D. Or. 3:25-cv-00752).

juncture, there is no just reason why the parties or this Court should be burdened with conducting premature, costly, and time-consuming discovery beyond the limited discovery needed to resolve the narrow questions unique to Plaintiff's individual claim.  For these reasons, and as more fully set forth below, Defendant respectfully requests an Order bifurcating discovery into two distinct segments: (1) discovery on the threshold issue of Plaintiff's individual TCPA claims, followed by (2) class-wide discovery, if Plaintiff's individual claims survive.  Targeted discovery at the outset of the discrete issues related to Plaintiff's individual TCPA claims, namely the consent to contact the phone number at issue, will save the parties, their counsel, and this Court from an unnecessary and burdensome foray into class-wide discovery.[2]

## II.    BACKGROUND

Exact Care is a medication management and pharmaceutical provider that specializes in helping people with complex medical needs overcome medication-related and chronic care challenges.  *See* Declaration of Todd Donnelly, Exact Care's Senior Vice President, Compliance, attached hereto as Exhibit 1 at ¶ 2–3.  As part of its patient outreach initiatives, Exact Care receives referrals for new patients from several sources in various formats including health plans, providers, insurance plans, home health agencies, lead generating companies, and other referral services.  *Id.* at ¶ 4.  If a referral comes from one of the patient lead generating companies that Exact Care partners with, the individual's documented consent to be called is captured and provided to Exact Care.  *Id.* at ¶ 5.

Mr. Weingrad alleges that he received phone calls from Exact Care and that the calls were unlawful because Exact Care allegedly did not receive consent to contact the Plaintiff's telephone number.  *See* Doc. # 1, Compl. ¶ 17.  Contrary to Mr. Weingrad's assertions, Exact Care received

---

[2] Class-wide discovery would be made all the more burdensome in this matter because Plaintiff is seeking to represent not just one, but four, patently overbroad classes. *See* Doc. # 1, Compl. ¶ 46.

from its vendor evidence that consent to contact a phone number ending in -6495 ("Phone Number at Issue") was expressly provided and confirmed several times. *See* Exh. 1 at ¶ 6–11. Express consent to contact the Phone Number at Issue was provided on December 12, 2024 from an IP address ending in 3.160 via an online interest form. *Id.* at ¶ 6. The website URL to which the individual submitted the Phone Number at Issue and the information that the individual provided in connection with the online interest form is attached hereto as Exhibit 1-A.[3] The individual who completed the online form identified himself as "Joseph Arnold." *Id.*; *see also* Exh. 1 at ¶ 6.

The Phone Number at Issue was then called pursuant to the referenced express consent on February 27, 2025. *Id.* at ¶ 7; *see also* Exhibit 1-B, call recording with the file name 2/27/2025 Health Care Benefits Outbound Call (filed under seal).[4] Someone, presumably Mr. Weingrad, answered, yet he told the caller that his name is "Jill Herrala." Exh. 1 at ¶ 8. On the call, it appears that Mr. Weingrad (as "Jill") answered questions regarding his medications, was informed he was eligible for medication delivery, and was told the call would be transferred to complete the process to sign up for home delivery of his medications. *Id.* At no point on the call did Mr. Weingrad object to the call or to the call being transferred. *Id.* The call was then transferred. *Id.* at ¶ 9; *see also* Exhibit 1-C, call recording with the file name 2-27-2025 Conversion Finder Call 4599287478 (filed under seal). Despite what appears to be Mr. Weingrad on the phone, he again states that he is "Jill Herrala," confirms his phone number, and proceeds to talk with the woman on the line. Exh. 1 at ¶ 9. The woman on the line shares information with Mr. Weingrad regarding Exact

---

[3] Personal identifying information has been redacted from Exhibit 1-A for confidentiality purposes. If the Court would like to see an unredacted version of Exhibit 1-A, then Defendant would be happy to provide it to the Court for review.
[4] In connection with this Motion, Exact Care is separately moving to file under seal copies of the call recordings referenced in this Brief and in Mr. Donnelly's Declaration (i.e. Exhibits 1-B through 1-F) due to the call recordings containing confidential health and personal information.

Care's services, including home delivery of medications, and indicated that she will ask a few questions to see if he qualifies for Exact Care's services. *Id.* Mr. Weingrad (posing as "Jill") is then informed that he will be connected with an Exact Care advisor who will review his medications with him and assist him in enrolling in Exact Care's services. *Id.* Before transferring the call to Exact Care, the caller says "Do you, Jill, give permission to be transferred to ExactCare advisors to assist you in enrolling for the service? Please say yes and I will start the transfer." *Id.* Mr. Weingrad (posing as "Jill") then says "yes." *Id.*

The call is then transferred to an Exact Care representative and Mr. Weingrad is provided information regarding Exact Care's services. *Id.* at ¶ 10; s*ee also* Exhibit 1-D, call recording with the file name 2-27-2025_1254PM_CF Transfer to ECP (filed under seal). When he is informed that the caller can help him get signed up for Exact Care's services, Mr. Weingrad says "yeah, can I give you a shout right back, I have someone banging on my door." Exh. 1 at ¶ 10. Mr. Weingrad then even tells the Exact Care representative "I have your number right here. I'll call you. Thank you." *Id.* He then hangs up the phone. Again, at no point on the call did Mr. Weingrad object to the call. *Id.*

In light of the express consent to be contacted by Exact Care and expressed interest in Exact Care's services, an Exact Care representative called the phone number at issue on March 6, 2025 and asked if "Jill" is still interested in signing up for Exact Care's services. *Id.* at ¶ 11; s*ee also* Exhibit 1-E, call recording with the file name 3-6-2025_1202 PM_ExactCare Outbound Call (filed under seal). Someone, presumably Mr. Weingrad, states that he is at work. Exh. 1 at ¶ 11. The caller then says he can call back at a time that is more convenient. *Id.* Mr. Weingrad then says, "yeah, I have your number right here. I'll give you a shout back. I appreciate it." *Id.* **Again at no point on the call did Mr. Weingrad object to the call**. *Id.* In light of Mr. Weingrad's expressed

continued interest in Exact Care's services, an Exact Care representative called him back on March 7, 2025. *Id.* at ¶ 12; *see also* Exhibit 1-F, call recording with the file name 3-7-2025_1220PM_ExactCare Outbound Call (filed under seal). Mr. Weingrad then for the first time asked not to be called. Exh. 1 at ¶ 12. Exact Care did not contact him again. *Id.*

Despite providing consent to be contacting and engaging with Exact Care on numerous calls, Mr. Weingrad filed this lawsuit about a month later seeking compensation from Exact Care under the TCPA. Notably, Mr. Weingrad has tried to use the TCPA as a vehicle to receive compensation from several other companies by filing over twenty-five other complaints in close proximity to this lawsuit, including ten within the Eastern District of Pennsylvania.[5] In at least one of those cases where Mr. Weingrad brought TCPA claims against other companies, the same incorrect name—Joseph Arnold—was used to provide consent to be contacted at the phone number at issue.[6] These circumstances indicate a pattern of consent being provided to several companies to contact the Phone Number at Issue and then Mr. Weingrad filing a lawsuit to try and receive compensation for calls made pursuant to that express consent. Plaintiff's counsel advises that Mr. Weingrad does not know how his phone number became associated with the consent to contact the Phone Number at Issue. Nonetheless, Exact Care submits it is in the interest of all parties to get to the bottom of this threshold issue to resolve this case expeditiously and efficiently.

III.    ARGUMENT

    A. **Bifurcating discovery to address and resolve narrow threshold issues specific to the named plaintiff is appropriate and common practice in TCPA cases.**

---

[5] *See* footnote 1.

[6] *See Weingrad v. Quotewizard.com, LLC*, M.D. Pa. Case No. 1:25-cv-00002, Doc. 5-2 ¶ 19 (stating "During a recorded call QuoteWizard had with Plaintiff, Plaintiff initially identified himself as Joseph Arnold, then revealed that he was Leon Weingrad, and then when the QuoteWizard representative asked again . . . Plaintiff responded stating that his true name was Joseph Arnold").

The Court has broad discretion to control its docket, including discretion to bifurcate or otherwise structure the timing and scope of discovery. *See Holton v. Finley*, Case No. 4:21-CV-737, 2022 U.S. Dist. LEXIS 246780, at *4 (M.D. Pa. Apr. 14, 2022); *Physicians Healthsource, Inc. v. Janssen Pharms., Inc.*, Case No. 12-2132, 2014 U.S. Dist. LEXIS 13523, at *10–11 (D.N.J. Feb. 4, 2014); *see also* Fed. R. Civ. P. 1. This is especially true where (as here) bifurcation serves judicial economy and does not unfairly prejudice any party. *Physicians Healthsource, Inc.*, 2014 U.S. Dist. LEXIS 13523, at *11–15. "To determine whether bifurcating discovery is appropriate, courts consider the benefits and detriments to each party's interest, as well as the Court's interest in reaching a just, speedy, and efficient resolution of the issues raised by the pleadings." *Kemen v. Cincinnati Bell Telephone Company LLC*, Case No. 1:22-cv-152, 2024 U.S. Dist. LEXIS 137287, at *1–3 (S.D. Ohio Aug. 2, 2024) (granting Motion to Bifurcate Discovery in TCPA case). "In line with those principles, bifurcation is permissible if it serves judicial economy and does not unfairly prejudice any party." *Id.* at *3–4 (internal quotations omitted); *see also Holton*, 2022 U.S. Dist. LEXIS 246780, at *4; *Physicians Healthsource, Inc.*, 2014 U.S. Dist. LEXIS 13523, at *11–15.

In cases asserting both individual liability and potential "class action" claims under the TCPA, courts often approve bifurcating discovery where narrow, potentially dispositive, issues can be decided at the outset of a case prior to costly class discovery. *See e.g., Pavelka v. Paul Moss Ins. Agency*, *LLC*, No. 1:22 CV 02226, 2023 U.S. Dist. LEXIS 94011, at *6–7 (N.D. Ohio May 29, 2023). Thus, federal courts throughout the country and this Circuit often bifurcate discovery in TCPA cases such as this case for efficiency purposes, so the parties can focus first on the narrow plaintiff-specific discovery necessary for the court to address the merits of the named plaintiff's claims before addressing broader issues, like class discovery. *See, e.g., Physicians*

*Healthsource, Inc.*, 2014 U.S. Dist. LEXIS 13523, at *11–15 (recognizing, in TCPA class case, that "bifurcating discovery into two phases will promote the efficient resolution of this matter" and granting motion to bifurcate, with an initial phase focused on whether the subject communications were actionable, reasoning that resolution of that "narrow, potentially dispositive issue" could obviate the need for costly class discovery); *Pavelka*, 2023 U.S. Dist. LEXIS 94011, at *9 (holding that "bifurcation of discovery to first address the individual [TCPA] liability claims, and then to entertain possible summary judgment motion practice on Plaintiffs' individual claims, prior to class action discovery, is appropriate"); *Kemen*, 2024 U.S. Dist. LEXIS 137287, at *9 (bifurcating discovery on individualized issues relating to Plaintiff's individual TCPA claim because "[s]o bifurcating discovery has the potential to promote the 'speedy' and 'efficient' resolution of this matter"); *Osidi v. Assurance IQ, LLC*, No. 21-CV-11320-ADB, 2022 U.S. Dist. LEXIS 37436, at *4 (D. Mass. Mar. 3, 2022) (bifurcating discovery in TCPA case, noting: "[T]he need for class discovery may be eliminated if [d]efendant is able to demonstrate that the [n]amed [p]laintiff lacks viable individual claims."); *Katz v. Liberty Power Corp., LLC*, 2019 U.S. Dist. LEXIS 30901, at *4–6 (D. Mass. Feb. 27, 2019) (bifurcating discovery in TCPA case where doing so served the interests of justice, as class discovery was not needed to address certain issues that may be dispositive of the plaintiff's individual claim) (citing various cases); *Leschinsky v. Inter-Continental Hotels Corp.*, 2015 U.S. Dist. LEXIS 140535, at *4 (M.D. Fla. Oct. 15, 2015) (bifurcating discovery in TCPA case where "Defendants ha[d] presented evidence suggesting that [plaintiff's] TCPA claims are without merit as a matter of law" and, thus, finding that "Defendants' arguments in favor of a bifurcated discovery process [we]re well-taken"); *Physicians Healthsource, Inc. v. Anda, Inc.*, Case No. 12–60798, 2012 U.S. Dist. LEXIS 187644, at *5 (S.D. Fla. 2012) (ordering in TCPA case: "in the interests of efficiency, Defendant should be allowed to

8

conduct discovery on and submit a dispositive motion as to Plaintiff's individual claims" with "a schedule for class certification briefing [to] be set after Defendant's dispositive motion is resolved.").

These courts recognized there are often narrow case-dispositive issues in TCPA cases, like there is here, unique to the named plaintiff—e.g., if the plaintiff consented, has standing, or even has an actionable TCPA claim—that can be efficiently and quickly resolved through focused bifurcated discovery, and for which burdensome class discovery is not necessary to resolve. *See, e.g., Pavelka*, 2023 U.S. Dist. LEXIS 94011, at *6 ("In cases asserting both individual liability and potential 'class action' claims under the TCPA, courts have often approved bifurcating discovery in such cases where narrow, potentially dispositive, issues can be decided at the outset of a case prior to costly class discovery.") (collecting cases); *Kemen*, 2024 U.S. Dist. LEXIS 137287, at *7 ("[I]t is reasonable for [Defendant] to seek to test [Plaintiff's] personal claims before engaging in extensive class discovery."); *Newell v. Aliera Healthcare, Inc.*, 2020 U.S. Dist. LEXIS 267290, at *7 (N.D. Ga. Apr. 6, 2020) (focusing discovery on case-dispositive issues specific to the named plaintiff "has the potential to save the parties and the Court from the substantial costs and burdens associated with whole scale class action discovery."). Applying these well-settled principles shows that bifurcated discovery is particularly appropriate in this case.

> **B. Bifurcation is warranted because it will support a just, speedy, and efficient resolution of the case, which is in the interest of all parties and will not prejudice Plaintiff.**

Bifurcating discovery would serve the interests of judicial and party efficiency and economy because there are critical threshold dispositive issues unique to Plaintiff that could bring about a swift end to this case. The TCPA creates liability for calls made to a telephone number only if the calls were made without prior express consent to contact the telephone number. *See* 47 U.S.C. § 227(b)(1)(A). Accordingly, prior express consent to receive the calls at issue is a

complete defense to a TCPA claim. *Pavelka*, 2023 U.S. Dist. LEXIS 94011, at *8 ("[P]rior express consent to receive the calls at issue is a complete defense to TCPA claims."); *see also Miller v. 3G Collect, LLC*, 302 F.R.D. 333, 338 (E.D. Pa. 2014). Relatedly, Courts also dismiss claims for lack of a concrete injury (i.e., standing) where the evidence established that the calls at issue were induced for the purpose of bringing a TCPA claim. *See Stoops v. Wells Fargo Bank, N.A.*, 197 F.Supp.3d 782, 797, 800–06 (W.D. Pa. 2016) (summary judgment granted where plaintiff welcomed calls to profit from bringing TCPA claims and therefore did not have Article III constitutional or "prudential" standing as the calls were not "unwanted"); *see also Shelton v. Target Advance LLC*, No. 18-2070, 2019 U.S. Dist. LEXIS 64713, at *15 (E.D. Pa. Apr. 16, 2019) (summary judgment denied on standing grounds because additional discovery was needed, but strongly suggested that if plaintiff's sole purpose was to "drum up TCPA litigation by inducing … robocalls," then plaintiff's claims would be barred); *Laccinole v. Inter. Union of Police Assoc.*, 638 F. Supp. 3d 110, 116 (D.R.I. Oct. 26, 2022) (accord and dismissed for lack of standing). Additionally, courts recognize that "TCPA suits have, in many instances, been abused by serial litigants; and going forward each such case merits close scrutiny. . . ." *Morris v. Unitedhealthcare Ins. Co.*, No. 415-CV-00638, 2016 U.S. Dist. LEXIS 168288, at *18 (E.D. Tex. Nov. 9, 2016).

Here, Exact Care received from its vendors evidence of express consent to contact the Phone Number at Issue. *See* Ex. 1 at ¶ 6–11. Because consent is a threshold and case dispositive issue, it makes practical sense to postpone class discovery and first determine who provided consent to contact the phone number at issue, how consent to contact the phone number at issue was provided to Exact Care and its vendors, and whether that acquisition constitutes consent under the TCPA. As many courts have found this case-dispositive determination could spare the parties,

their counsel and this Court an unnecessary foray into burdensome class discovery and help all involved efficiently and expeditiously resolve this case.

For example, in *Pavelka v. Paul Moss Ins. Agency, LLC*, consent was at issue and this Court bifurcated discovery into two phases with "limited discovery into the merits of Plaintiff's individual TCPA claim followed by class-wide discovery if Plaintiff's individual TCPA complaint survives." 2023 U.S. Dist. LEXIS 94011, at *8. The Court reasoned that "[b]ecause consent is a dispositive issue, . . . , limited discovery on how [Defendant] acquired Plaintiff's contact information and whether that acquisition constitutes consent under the TCPA 'has the potential to save the parties and the Court from the substantial costs and burdens associated with whole scale class action discovery.'" *Id.* The Court, therefore, concluded that bifurcating discovery into two phases beginning with "limited discovery into the merits of Plaintiff's individual TCPA claim . . . will promote the efficient resolution of [the] matter [and] will allow the Court to address a narrow, potentially dispositive issue in a timely and cost-effective manner with no significant prejudice to Plaintiff." *Id.*

Similarly, in another recent TCPA case, the Court bifurcated discovery with discovery on issues relating to Plaintiff's individual TCPA claim occurring before any class discovery. *See Kemen*, 2024 U.S. Dist. LEXIS 137287, at *9. The Court concluded that bifurcation was warranted because the Defendant "identified various threshold issues that both require little discovery and could be dispositive of [Plaintiff's] individual claim." *Id.* The Court recognized that "it is reasonable for [the Defendant] to seek to test [Plaintiff's] personal claims before engaging in extensive class discovery" because "class discovery is expensive and resource intensive[,]" "bifurcating discovery has the potential to promote the 'speedy' and 'efficient' resolution of th[e]matter[,]" "[d]oing so therefore avoids potential prejudice to [the Defendant] (in the form of

11

substantial, unnecessary costs)[,] and 'serves judicial economy.'" *Id.* at *6–9. The Court also reasoned that on the other side of the scale bifurcating discovery would not unduly prejudice the Plaintiff because "bifurcation will require [the Plaintiff] to produce only a comparatively modest amount of discovery, much of which (a) is likely already in [Plaintiff's] possession or easily obtainable and (b) [Plaintiff] would need to produce in any event even absent bifurcation." *Id.* at *9. Accordingly, the Court issued an order bifurcating discovery with a limited discovery period on issues pertaining to the plaintiff's individual claim taking place before any class discovery. *Id.* at *9–10. (ordering a 90-day limited discovery period on Plaintiff's individual claim running from the date of the Court's Order).

This case is exactly like *Pavelka* and *Kemen*. Just like in those cases, limited discovery on threshold issues unique to Plaintiff's individual claim, namely issues involving the consent to contact the phone number at issue, has the potential to save the parties and the Court from the substantial costs and burdens associated with whole scale class wide discovery and will promote an efficient and expeditious resolution of this matter. Just like the Courts held in *Pavelka* and *Kemen*, this Court should likewise find that bifurcating discovery into two phases beginning with limited discovery into the merits of Plaintiff's individual TCPA claim will promote the efficient resolution of the matter and will allow the Court to address a narrow, potentially dispositive issue in a timely and cost-effective manner with no significant prejudice to Plaintiff. Accordingly, the Court should grant Defendant's motion to bifurcate discovery.

## IV.    CONCLUSION

For the foregoing reasons, it is in the interests of judicial and party efficiency and economy to bifurcate discovery and conduct initial, limited discovery on threshold issues unique to Plaintiff's individual TCPA claim that could promote resolution of this case. Accordingly,

Defendant respectfully requests that the Court issue an Order bifurcating discovery into two distinct segments: (1) discovery on the threshold issue of Plaintiff's individual TCPA claims, followed by (2) class-wide discovery, if or as necessary. If the Court so rules, Defendant would respectfully request that the parties have until October 6, 2025 (the current discovery deadline in this case) to conduct discovery on Plaintiff's individual claim, until November 6, 2025 (the current dispositive motion deadline) to file dispositive motions on Plaintiff's individual claim, and that the Court stay and reschedule the additional case deadlines set forth in the Court's June 5, 2025 Scheduling Order, if necessary, upon resolution of any dispositive motion on Plaintiff's individual claim. A proposed Order is filed herewith for the Court's consideration.

Respectfully submitted,

*/s/ Sean P. Fahey*
Sean P. Fahey (PA 73305)
Christopher M. Brolley (PA 322851)
TROUTMAN PEPPER LOCKE LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103
(215) 981-4000
Sean.Fahey@troutman.com
christopher.brolley@troutman.com

Colleen M. O'Neil (OH 0066576)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, OH 44114
(216) 622-8200 (Phone)
(216) 241-0816 (Fax)
coneil@calfee.com
*Admitted pro hac vice*

Gretchen L. Whaling (OH 0096780)
CALFEE, HALTER & GRISWOLD LLP
1200 Huntington Center
41 South High Street
Columbus, Ohio 43215
(614) 621-1500 (Phone)
(614) 621-0010 (Fax)
gwhaling@calfee.com
*Admitted pro hac vice*

*Attorneys for Defendant, Exact Care Pharmacy, LLC*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been filed electronically on June 17, 2025, with the United States District Court for the Eastern District of Pennsylvania. Notice of the filing will be sent by email to all counsel by operation of the Court's electronic filing system, and all parties may access this filing through that system.

*/s/ Sean P. Fahey*
Sean P. Fahey

*Counsel for Defendant*
*Exact Care Pharmacy, LLC*