UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEON WEINGRAD, | ) CASE NO. 2:25-CV-1843-MMB |
| Plaintiff, | ) JUDGE MICHAEL M. BAYLSON |
| v. | ) |
| EXACT CARE PHARMACY, LLC, | ) |
| Defendant. | ) |

**DEFENDANT EXACT CARE PHARMACY, LLC'S
REPLY BRIEF IN SUPPORT OF MOTION TO BIFURCATE DISCOVERY**

**I.   INTRODUCTION**

Plaintiff's Opposition (the "Opposition") to Exact Care's Motion to Bifurcate Discovery (the "Motion") only reinforces the unique nature of the Plaintiff's individual claims, *i.e.* the very reason bifurcation is warranted in this case. The call recordings Plaintiff submitted with his Opposition, which he admits represent calls he engaged in, reveal that Plaintiff used three different names on the various call recordings and provided inconsistent and false information throughout the call recordings. *See* Docs. 27-2, 27-3, 27-5 – 27-9, & 30 (hereinafter, the "Recordings").

In the first Recording, Plaintiff told the caller his name is Joseph Arnold—the very name provided with the consent to be contacted at the phone number ending in -6495 ("Phone Number at Issue") via the online consent form and the very name Plaintiff attests in his declaration he does not know. *See* Pl's Opp. Exh. 2; Doc. 19-3 at ¶ 6; Doc. 27-11 at ¶¶ 8-9. This raises several questions unique to Plaintiff's claims, especially given that the caller did not say she was calling for Joseph Arnold before Plaintiff voluntarily identified himself as such. In other Recordings, Plaintiff identifies himself as Jill Herrala and in one he uses his real name, Leon Weingrad.

Exact Care and its vendors are not the only entities that Mr. Weingrad has used these same false names to illegitimately manufacture TCPA claims. *See Weingrad v. Quotewizard.com, LLC*,

1

M.D. Pa. Case No. 1:25-cv-00002, Doc. 5-2 ¶ 19 ("During a recorded call QuoteWizard had with Plaintiff, Plaintiff initially identified himself as Joseph Arnold, then revealed that he was Leon Weingrad, and then when the QuoteWizard representative asked again . . . Plaintiff responded stating that his true name was Joseph Arnold"). Grasping at straws in response, Plaintiff now illegitimately accuses Exact Care of providing "forged call recordings" in support of its Motion, yet the content of the call recordings Exact Care submitted with its Motion are included within Plaintiff's Recordings.[1] Thus, Plaintiff's faux claim of forgery is belied by his own evidence.

      Contrary to Plaintiff's Opposition, this case presents the quintessential unique circumstances for bifurcated discovery. This case is not a traditional Telephone Consumer Protection Act ("TCPA") case. Indeed, Plaintiff's claims present a highly unusual situation where Exact Care received from its vendor evidence of express consent to contact the Phone Number at Issue, the individual who provided the express consent to contact the Phone Number at Issue identified himself as Joseph Arnold, then identified himself as Jill Herrala, and then, worse yet, Plaintiff brought TCPA claims against Exact Care and several other companies in close proximity to this lawsuit where similar false names were used to provide consent to be contacted at the Phone Number at Issue. Adding to these highly irregular circumstances is Plaintiff's contention that Exact Care submitted manufactured evidence. Thus, Exact Care's Motion seeks to get to the bottom of these unusual, fact-specific issues to resolve this case expeditiously and efficiently. Meanwhile, Plaintiff tellingly seeks to avoid targeted discovery on this threshold issue and instead seeks to burden Defendant and this Court with a costly and time-consuming fishing expedition into class discovery before assessing whether Plaintiff even has a viable TCPA claim.

---

[1] The call recordings Exact Care provided are broken up into separate recordings because calls were transferred to different entities, but the content of the recordings is within Plaintiff's larger set of Recordings. Further, several of the additional recordings Plaintiff submitted do not mention Exact Care or do not appear to be related to Exact Care's services.

It is in the interest of this case to bifurcate discovery where, as here, there are critical threshold issues unique to Plaintiff's individual claim that may be dispositive and negate any need for class discovery. Targeted discovery at the outset into the discrete issues related to Plaintiff's individual TCPA claims--consent to contact the Phone Number at Issue--will be more efficient; conserve judicial and party resources; save the parties, their counsel, and this Court from an unnecessary foray into class-wide discovery; and likely lead to a swifter resolution to this case. This is why courts throughout the country routinely bifurcate discovery in TCPA cases. This Court should follow the plethora of courts that have bifurcated discovery in such circumstances and grant Defendant's Motion. Plaintiff's Opposition fails to refute this conclusion.

## II.     ARGUMENT

### A. Plaintiff's Recordings and evidence only reinforce the need to bifurcate discovery.

Plaintiff's exhibits themselves further demonstrate the uniqueness of the issues underlying Plaintiff's individual claims and the need to bifurcate discovery. In the Recordings, which Plaintiff admits he made and engaged in, Plaintiff used three different names (only one being his actual name) and provided false information throughout them. *See* Exhibits 2-3 and 5-9 to Pl's Opp.

In the first Recording, Plaintiff identified himself as Joseph Arnold—the very name provided with the consent to be contacted at the Phone Number at Issue via the online consent form and the very name Plaintiff claims not to know. *See* Pl's Opp. Exh. 2 (file name: +15032888192-2411271048 at time stamp 2:20-2:38, again at time stamp 05:02-05:10, and again at time stamp 09:12-9:33); *see also* Doc. 19-3 at ¶ 6; Doc. 27-11 at ¶¶ 8-9. This raises several issues unique to Plaintiff's individual claim, especially given that the caller did not ask for Joseph Arnold before Plaintiff voluntarily identified himself as such. In other Recordings, Plaintiff claims his name is Jill Herrala and in one Recording he uses his real name, Leon Weingrad. *See*

3

Pl's Opp. Exh. 5-9.  Again, this raises several unique questions and issues as to Plaintiff's individual TCPA claim.

Exact Care and its vendors are not the only entities that Mr. Weingrad used these same fake names with on calls for purposes of filing TCPA claims.  *See Weingrad v. Quotewizard.com, LLC*, M.D. Pa. Case No. 1:25-cv-00002, Doc. 5-2 ¶ 19 ("During a recorded call QuoteWizard had with Plaintiff, Plaintiff initially identified himself as Joseph Arnold, then revealed that he was Leon Weingrad, and then when the QuoteWizard representative asked again . . . Plaintiff responded stating that his true name was Joseph Arnold").  The uniqueness of the circumstances is evident especially given that Plaintiff's Complaint does not reference a putative class of persons who admit to providing false names when providing consent to be contacted but rather pleads four other, overbroad classes: individuals who allegedly (1) received telemarketing calls by or on behalf of Exact Care who are listed on the National Do Not Call Registry, (2) received telemarketing calls without the accurate provision of Caller ID Name (CNAM), (3) received telemarketing calls after asking to no longer receive calls, and (4) received telemarketing calls before 8:00 AM and after 9:00 PM local time at the called party's location. *See* Doc. 1 at ¶ 46.

Throughout the Recordings Plaintiff admits he engaged in, Plaintiff provides inconsistent and false insurance and demographic information:

| Exhibit 2 to Opp. - November 27, 2024 Call<br>File name: +15032888192-2411271048 | Plaintiff states<br>• his name is Joseph Arnold.<br>• his birthday is XX-XX-1967<br>• he lives alone<br>• he has Medicare but no other health insurance.<br>The caller is unable to verify his Medicare ID (perhaps because he is not using his real name) and ends the call. |
|---|---|
| Exhibit 5 - First February 27, 2025 Call<br>File name: +15034613416-2502270745 | Plaintiff states<br>• his name is Jill Herrala<br>• his birthday is XX-XX-1961 |

4

|  | • he does *not* live alone<br>• he has Medicaid *and* Medicare<br>• after the call is transferred he says he *just* has Medicare - Cormcare |
|---|---|
| Exhibit 6 - Second February 27, 2025 Call<br>File name: +15034046898-2502270943 | Plaintiff states<br>• his name is Jill Herrala<br>• his birthday is XX-XX-1961<br>• he has Medicaid and Medicare<br>• then says he has Cormcare and then says he has Aetna |
| Exhibit 7 - First March 6, 2025 Call<br>File name: +18773557225-2503060902 | Plaintiff says his name is Jill Herrala |
| Exhibit 8 - Second March 6, 2025 Call<br>File name: +15038560896-2503061217 | Plaintiff says<br>• his name is Leon Weingrad<br>• his insurance is Medicare Advantage Cigna<br>• says his birthday is XX-XX-1977 then says it is XX-XX-1961 |
| Exhibit 9 - March 7, 2025 Call<br>File name: +18773557225-2503070920 | Plaintiff says his name is Jill Herrala |

Amongst the various Recordings, Plaintiff uses three different names, four different birthdays, five different insurance types/companies, says on one call that he lives alone and another that he lives with family. Thus, Plaintiff's own evidence demonstrates that he provided false and inconsistent information throughout the Recordings. Plaintiff's Opposition tellingly fails to mention any of this false and inconsistent information. Instead, Plaintiff seemingly tries to distract the Court from this fatal flaw by making false accusations against Exact Care.

Specifically, Plaintiff accuses Exact Care of providing "forged call recordings" in support of its Motion, yet the content of the call recordings that Exact Care submitted are within the very Recordings Plaintiff attests to. Exact Care provided five call recordings with its Motion. *See* Exhibits B through F to the Declaration of Todd Donnelly filed under seal with the Court on June 17, 2023. Exact Care received some of these call recordings from its vendor. *See* Declaration of Todd Donnelly at ¶ 6 attached hereto as Exhibit 1. The content of each of these five recordings filed with the Motion are within Plaintiff's Recordings:

- Motion Exhibits E and F, respectively, are the same as Opposition Exhibit 7 and 9.[2]

- Motion Exhibits C and D are also within Opposition Exhibit 6 in their entirety. Specifically, Motion Exhibit C appears in its entirety within the 1:14 through 11:22 time frame of Plaintiff's Exhibit 6.[3] Similarly, Motion Exhibit D appears in its entirety within Plaintiff's Exhibit 6 at time stamp 10:40 to 13:14.[4]

- The content of Motion Exhibit B is included within Opposition Exhibit 5. *See* Plaintiff's Exhibit 5 at time stamp 00:05-00:47; 01:20-04:21; and 06:34-7:56.[5]

Exact Care's recordings are broken up into separate recordings as calls were transferred but, as set forth above, the material content of them are within Plaintiff's Recordings.

Plaintiff's claim that Exact Care somehow "forged call recordings" when the content is included within Plaintiff's own Recordings is absurd. Equally absurd is the baseless accusation that Exact Care coached or engaged in "Medicare fraud." As discussed above, throughout the Recordings, Plaintiff made inconsistent statements as to his insurance coverage. The Recordings make clear that the callers are trying to understand what insurance Plaintiff has rather than "coach" anything or defraud anyone. In Opposition Exhibit 5, First February 27, 2025 Call, when the caller asks Plaintiff "what is the name of the insurance who pays for your medications," without any "coaching" from the caller, Plaintiff states "Medicaid" and then states he has Medicaid and Medicare. *See* Pl's Opp. Exh. 5 (file name +15034613416-2502270745) at time stamp 4:40-5:20.

---

[2] *Compare* Motion Exhibit E (file name 3-6-2025_1202 PM_ExactCare Outbound Call), *with* Opposition Exhibit 7 (file name: +18773557225-2503060902). And *compare* Motion Exhibit F (file name 3-7-2025_1220PM_ExactCare Outbound Call), *with* Opposition Exhibit 9 (file name +18773557225-2503070920).

[3] *Compare* Motion Exhibit C (file name 2-27-2025 Conversion Finder Call 4599287478), *with* time frame of 1:14-11:22 of Opposition Exhibit 6 (file name +15034046898-2502270943).

[4] *Compare* Motion Exhibit D (file name 2-27-2025_1254PM_CF Transfer to ECP) *with* time frame of 10:40- 13:14 of Opposition Exhibit 6 (file name +15034046898-2502270943).

[5] *Compare* Motion Exhibit B (file name 2/27/2025 Health Care Benefits Outbound Call), *with* the following time frames of Opposition Exhibit 5 (File name: +15034613416-2502270745): 00:05-00:47; 01:20-04:21; and 06:34-7:56. The two brief gaps in the time stamps of what is included within the Plaintiff's Exhibit 5 and not the call recording Exact Care received from its vendor (Exhibit B to Exact Care's Motion) appear to be immaterial additional dialogue regarding the amount of medications and discussion of Plaintiff's date of birth, health insurance information, and living situation in the second gap. None of this is material to the parties' claims or defenses here.

6

Yet, later in the same Recording after the call is transferred to another representative, Plaintiff states that his prescription drug provider is Medicare - Cormcare. When asked if he has any other insurance he states "Medicare" only. *Id.* at time stamp 8:48-10:10. Plaintiff is then informed his insurance does not participate with Exact Care Pharmacy so he cannot proceed with onboarding. *Id.* at time stamp 10:10-10:31. It appears from the Recordings that the caller from the First February 27, 2025 call, phoned Plaintiff later that same day and confirmed with Plaintiff that Plaintiff told her he had Medicare *and* Medicaid and that he told her the name of the insurance who pays for his medications is Medicaid. *See* Pl's Opp. Exhibit 6, Second February 27, 2025 Call (file name: +15034046898-2502270943 at time stamp 00:01-01:06). The caller appears to merely tell Plaintiff to accurately report his insurance when the call is transferred.[6]

Additionally, several Recordings do not mention Exact Care or appear to be unrelated to its services. The first Recording, the purported November 27, 2024 call, references Exact Care at the beginning but later therein it appears the call was actually made on behalf of a different entity. *See* Opposition Exhibit 2 (file name +15032888192-2411271048) at time stamp 7:24-8:23 (Plaintiff asks which company is calling and is informed it is Everyway Health and even spells out Everyway Health alphabetically for Plaintiff); *see also id.* at time stamp 10:36-10:59. Thus, it appears this call was made on behalf of an entity other than Exact Care, which is consistent with the fact that Exact Care has no record of it. *See* Decl. of Todd Donnelly at ¶ 8 attached hereto as Exhibit 1.[7]

There is also no indication that the December 7, 2024 call alleged in Plaintiff's Brief and Complaint was from Exact Care and Exact Care has no record of such a call. *Id.* at ¶ 9. The only

---

[6] Significantly, the caller on this portion of the call appears to be an affiliate of one of Exact Care's vendors and is not an individual from Exact Care. *See* Decl. of Todd Donnelly at ¶11 attached hereto as Exhibit 1.

[7] Notably, Plaintiff's Opposition Brief and Declaration are inconsistent with respect to the date of this alleged call. *Compare* Pl's Opp at p. 4 (referring to the call as taking place on November 27, 2024); *with* Pltff's Declaration, Doc. 27-11, at ¶ 33 (referring to the call as taking place on November 11, 2024).

7

evidence Plaintiff cites that this alleged call was somehow connected to Exact Care is that it came from the same phone number as an alleged February 28, 2025 call Plaintiff received. *See* Opp. at p. 4-5.[8] However, the Recording of the purported February 28, 2025 call included with Plaintiff's Opposition does not mention Exact Care. *See* Pl's Opp. Exh. 3 (call recording with File name: +15037556487-2502280819). Thus, this call also does not appear to have been made by or on behalf of Exact Care and Exact Care has no record of such a call. *Id.*; Decl. of Todd Donnelly at ¶ 10 attached as Exh. 1. Therefore, the two calls Plaintiff alleges predate the proffered December 12, 2024 consent to receive calls at the Phone Number at Issue do not appear to be affiliated with Exact Care.

Exact Care will investigate the purported "forensic report" included as Exhibit 1 to the Opposition through the proper channels of discovery in this case, but even at first glance its reliability is highly questionable. Specifically, Opposition Exhibit 1:

- does not provide the name of the individual(s) who conducted the purported analysis or drafted the report;

- at the end of the report there is a purported signature, but no name written with it and a curious stamp that says "Inspected by Forensic Expert;"

- there is no resume included with the report, or discussion of the experience or qualifications of the person(s) who prepared the report or qualifications or website of the company listed on the report; and

- it is also not clear from reviewing the report exactly what analysis, if any, was performed.

Moreover, on none of the Recordings did Plaintiff ask not to be contacted until the March 7, 2025 final call. Rather, throughout the Recordings, Plaintiff expressed interest in the services discussed on the calls and often said he would call back. On the final March 7, 2025 call, Plaintiff for the first time asked Exact Care not to call him. *See* Mot. Exh. F and Opp. Exh. 9. It is

---

[8] All citations to page numbers within the Opposition correspond to the page numbers listed in the header thereof.

undisputed that Exact Care did not contact the Phone Number at Issue again. *See* Doc. 19-3 at ¶ 12. To avoid this fatal fact, Plaintiff claims he engaged in these discussions only to find out who was calling him. *See* Doc. 27-11 at ¶¶ 30, 32. However, this assertion is undercut by the fact that in the Recordings he often engages the callers and shows interest in the services for several minutes *after* he learns who is calling. In sum, Plaintiff's own exhibits only further demonstrate the uniqueness of the facts underlying Plaintiff's individual claims and the need to bifurcate discovery.

**B. The Opposition fails to refute the fact that bifurcated discovery is warranted here.**

It is in the interest of all parties to resolve this case expeditiously and efficiently by bifurcating discovery and focusing on the threshold issues unique to Plaintiff's individual claim. Discovery of Plaintiff's individual claim may negate any need for burdensome class discovery.

In his Opposition, Plaintiff claims that Exact Care does not proffer that it obtained the Plaintiff's consent in any way that is materially different than the consent for the other purported class members. Not true. As discussed above, the circumstances underlying Plaintiff's consent are irrefutably unique. There are numerous specific issues and circumstances underlying Plaintiff's consent in this case, and these are only further highlighted by the Opposition.

Specifically, who provided consent to contact the Phone Number at Issue, how Plaintiff's phone number became associated with the name Joseph Arnold, why Plaintiff Leon Weingrad identified himself as Joseph Arnold during a recorded call with the Phone Number at Issue, why Plaintiff Leon Weingrad then claimed he was Jill Herrala during recorded calls with the Phone Number at Issue, how consent to contact the Phone Number at Issue was provided to Exact Care and its vendor, whether that acquisition constitutes consent under the TCPA, and whether the Plaintiff has standing are all questions raised by the Opposition. Tellingly, Plaintiff does not and cannot dispute that he (posing as Jill) expressly gave "permission to be transferred to Exact Care advisors to assist [him] in enrolling" in Exact Care's services. *See* Opp. Exh. 6 (file name

9

+15034046898-2502270943) at time stamp 09:35-9:54; *see also* Mot. Exh. C (file name 2-27-2025 Conversion Finder Call 4599287478) at time stamp 08:40-8:58.  In light of the unique circumstances underlying Plaintiff's claim, there would be no significant overlap between Plaintiff's individual claims and purported class certification issues.  Therefore, it is most efficient and in the interest of all parties to determine the threshold issues of Plaintiff's individual claim before engaging in potentially unnecessary, expensive and burdensome class discovery.

The issues unique to Plaintiff's individual consent and standing are case dispositive issues.  The TCPA creates liability for calls made to a telephone number only if the calls were made without prior express consent.  *See* 47 U.S.C. § 227(b)(1)(A).  Accordingly, consent is an absolute defense to a TCPA claim.  *Pavelka v. Paul Moss Ins. Agency, LLC*, No. 1:22 CV 02226, 2023 U.S. Dist. LEXIS 94011, at *8 (N.D. Ohio May 29, 2023) ("[P]rior express consent to receive the calls at issue is a complete defense to TCPA claims."); *see also Miller v. 3G Collect, LLC*, 302 F.R.D. 333, 338 (E.D. Pa. 2014).  Relatedly, a Plaintiff's lack of a concrete injury (i.e., standing) where the evidence established that the calls at issue were induced for the purpose of bringing a TCPA claim is also an absolute defense to a TCPA claim.  *See* Brief in Spt. Mot. at 9-10.

Despite Plaintiff's assertion that he did not induce the calls at issue there are at least sufficient red flags that support focusing targeted discovery first on these issues before any (potentially unnecessary) class discovery:

- Plaintiff appears to have more than one phone number that he uses when bringing these TCPA cases. *See Weingrad v. Quotewizard.com, LLC*, M.D. Pa. Case No. 1:25-cv-00002, Doc. 5-1 at p. 10 (stating "Regarding Plaintiff's nine Eastern District of Pennsylvania cases, Plaintiff alleges his residential phone number begins with (267).  In Plaintiff's two other cases venued in the Middle District of Pennsylvania, Plaintiff claims his residential phone number begins with (503).");

- Plaintiff obtained the Phone Number at Issue in this case just a few months before the calls were made. *See* Doc. 27-11 at ¶ 6;

10

- Plaintiff anticipated these calls given that he recorded them;

- While Plaintiff claims he does not know anyone named Joseph Arnold he identified himself as Joseph Arnold—the name of the individual who provided consent to be contacted at the Phone Number at Issue via the online consent form—in the Recordings. *See* Doc. 27-11 at ¶¶ 8-9; Pl's Opp. Exh. 2; Doc. 19-3 at ¶ 6;

- Plaintiff uses multiple names and provides inconsistent and false information throughout the Recordings. *See supra*, § II.A;

- Plaintiff (posing as Jill) expressly gave "permission to be transferred to Exact Care advisors to assist [him] in enrolling" in Exact Care's services. *See* Pl's Opp. Exh. 6 at time stamp 9:35-9:54; *see also* Exh. C to Mot. at time stamp 08:40-8:58;

- Plaintiff shows interest throughout the Recordings and claims he only does so in order to find out who is calling him, but the Recordings indicate that he proceeds to stay on the calls and show interest well *after* he learns who is calling. *See* Pl's Opp. Exhs. 2-3 and 5-9; and

- Plaintiff does not inform Exact Care that he does not want to be contacted until the final March 7, 2025 call, after which Exact Care did not contact the Phone Number at Issue again. *See* Mot. Exh. F, Opp. Exh. 9, and Doc. 19-3 at ¶ 12.

Thus, there is a plethora of evidence (including that Plaintiff relies on) that supports bifurcated discovery. Exact Care is not asking the court to decide this case now, but rather to separate discovery into two efficient phases to proceed with discovery of the unique issues that pervade Plaintiff's individual claim.[9]

Plaintiff's unsupported assertion that class discovery would impose "no additional burden" on Exact Care is simply false. This is especially so given that Plaintiff seeks to represent not just one, but four, patently overbroad classes. See Doc. 1, Compl. ¶ 46. Federal courts across the country recognize that "class discovery is expensive and resource intensive[,]" so it is "reasonable for [the Defendant] to seek to test [Plaintiff's] personal claims before engaging in extensive class

---

[9] Plaintiff makes much of alleged "spoofing" of caller ID numbers by Exact Care's vendors to Plaintiff. Although Exact Care disputes there was any "spoofing," this is an issue the parties can engage in discovery on in Exact Care's proposed initial, targeted discovery on Plaintiff's individual claims. Exact Care also notes that the Complaint alleges that the March 6, 2025 and March 7, 2025 outbound calls by Exact Care were made with a caller ID that showed Exact Care Pharmacy, which are the only two outbound calls that were made by Exact Care itself to the Phone Number at Issue. *See* Doc. 1, Compl., at ¶ 26; *see also* Declaration of Todd Donnelly at ¶ 6, attached hereto as Exh. 1.

11

discovery" and "[d]oing so therefore avoids potential prejudice to [the Defendant] (in the form of substantial, unnecessary costs)[,] and 'serves judicial economy.'" *Kemen v. Cincinnati Bell Telephone Company LLC*, Case No. 1:22-cv-152, 2024 U.S. Dist. LEXIS 137287, at *6–9 (S.D. Ohio Aug. 2, 2024) (granting Motion to Bifurcate Discovery in TCPA case); *see also* Pavelka v. Paul Moss Ins. Agency, LLC, No. 1:22 CV 02226, 2023 U.S. Dist. LEXIS 94011, at *8 (N.D. Ohio May 29, 2023) (granting bifurcated discovery in TCPA case "[b]ecause consent is a dispositive issue, [.] limited discovery on how [Defendant] acquired Plaintiff's contact information and whether that acquisition constitutes consent under the TCPA 'has the potential to save the parties and the Court from the substantial costs and burdens associated with whole scale class action discovery.'"). This is why courts often approve bifurcated discovery in TCPA cases where, as here, potentially dispositive issues can be decided prior to costly class discovery. *See* Brief in Spt. Mot. p. 7-9. Tellingly, Plaintiff's Opposition does not address any of these cases.

Despite Plaintiff's conclusory statements to the contrary, the unique factual circumstances underlying this case are distinguishable from the cases cited in Plaintiff's Opposition. Some of the cases Plaintiff cites are not even TCPA cases and those that are either are not in the same procedural posture as this case (i.e. are not considering a motion to bifurcate discovery) or do not present the same unique red flags that support focused, targeted discovery as in this case. For example, the cases cited in Plaintiffs' Opposition do not consider a situation where, as in this case, the Plaintiff's own evidence indicates that he used multiple names during the calls at issue, gave express permission for calls under different names, and provided inconsistent and false information throughout the calls. None of the cases Plaintiff cited consider such a unique situation.

Rather, this case is exactly like *Pavelka, supra,* and *Kemen v. Cincinnati Bell Telephone Company LLC*, both cited in the Motion. *See* Brief in Spt. Mot. p. 11-12. As in *Pavelka* and

12

*Kemen*, limited discovery on threshold issues unique to Plaintiff's individual claim, namely the consent to contact the Phone Number at Issue, has the potential to save the parties and the Court from the substantial burdens associated with whole scale class action discovery and will promote an efficient and expeditious resolution of this matter. Accordingly, this Court should likewise find that bifurcating discovery into two phases beginning with limited discovery into the merits of Plaintiff's individual TCPA claim will promote the efficient resolution of the matter and will allow the Court to address a potentially dispositive issue in a timely and cost-effective manner with no significant prejudice to Plaintiff. Nothing in Plaintiff's Opposition warrants a different conclusion.

### C. Bifurcation will not cause any harm or prejudice.

Contrary to Plaintiff's assertions, Exact Care's request for a brief bifurcation of discovery to focus discovery first on targeted potentially case dispositive issues, would not prejudice Plaintiff. Plaintiff's attempts to cobble together some sort of prejudice are unavailing and outweighed by the benefits of bifurcated discovery.

Bifurcated discovery would not require the parties to "start all over again" as Plaintiff posits, but rather would simply separate discovery into two targeted and efficient phases-- discovery on Plaintiff's individual claim and then if Plaintiff's individual claim survives, class discovery. This is commonplace in TCPA cases such as this. *See* Brief in Spt. Mot. p. 7-9.

Plaintiff suggests that bifurcated discovery may delay resolution of this case. However, bifurcated discovery will make it more likely that the case will be resolved because it will allow the parties to focus on the key threshold issues at the outset. Courts routinely grant and find that Exact Care's requested time frame and procedure for bifurcated discovery to be reasonable (*i.e.*, until October 6, 2025 to conduct discovery on Plaintiff's individual claims and then until November 6, 2025 to file dispositive motions on Plaintiff's individual claims). *See Leschinsky v. Inter-Cont'l Hotels Corp.*, 2015 WL 6150888, at *2 (M.D. Fla. Oct. 15, 2015) (granting bifurcated

13

discovery for 90 days after the date of the Order in a TCPA case to determine whether the named plaintiff had an actionable TCPA claim); *Moore v. Demand Sci. Grp.*, LLC, 2024 WL 175743, at *1 (N.D. Ill. Jan. 4, 2024) (same); *Akselrod v. MarketPro Homebuyers LLC*, 2021 WL 100666, at *2 (D. Md. Jan. 12, 2021) (allowing roughly 90 days for the first phase on the merits of plaintiff's individual TCPA claims and the second phase to class discovery); *Katz v. Liberty Power Corp., LLC*, 2019 WL 957129, at *4 (D. Mass. Feb. 27, 2019) (same). However, further briefing may be unnecessary to resolve this case once the parties engage in bifurcated discovery. For example, in at least one TCPA case, the case was voluntarily dismissed two months after the court bifurcated discovery. *See Osidi v. Assurance IQ, LLC*, Case No. 1:21-cv-11320-ADB (D. Mass. May 4, 2022), Dkts. 31 & 32. In short, bifurcated discovery is likely to expedite resolution of this case.

Plaintiff failed to demonstrate any actual prejudice that will result from bifurcating discovery in this case. Even if he did, "any prejudice to Plaintiff [because of bifurcated discovery] is significantly outweighed by the potential burdens and costs associated with unnecessary class action discovery" that Defendants and the Court will face here, should narrower discovery prove he has no claim or lacks standing. *Newell v. Aliera Healthcare, Inc.*, 2020 WL 13568762, at *3 (N.D. Ga. Apr. 6, 2020). Therefore, it is in the interests of judicial and party efficiency and economy to bifurcate discovery. The Court should grant Exact Care's Motion.

### III.  CONCLUSION

For the foregoing reasons and those set forth in Exact Care's Brief in Support of its Motion, Exact Care respectfully requests that the Court order bifurcated discovery into two distinct segments: (1) discovery on the threshold issue of Plaintiff's individual TCPA claims, followed by (2) class-wide discovery, if Plaintiff's individual claim survives. Targeted discovery at the outset into the discreet, individual issues related to Plaintiff's individual TCPA claims, namely standing

14

and the consent to contact the Phone Number at Issue, will be much more efficient; conserve judicial and party resources; save the parties, their counsel, and this Court from an unnecessary and burdensome foray into class-wide discovery; and likely lead to a swifter resolution of this case. Plaintiff's Opposition to Exact Care's Motion only reinforces this conclusion.

        Respectfully submitted,

        */s/ Sean P. Fahey*
        Sean P. Fahey (PA 73305)
        Christopher M. Brolley (PA 322851)
        TROUTMAN PEPPER LOCKE LLP
        3000 Two Logan Square
        Eighteenth and Arch Streets
        Philadelphia, PA 19103
        (215) 981-4000
        Sean.Fahey@troutman.com
        christopher.brolley@troutman.com

        Colleen M. O'Neil (OH 0066576)
        CALFEE, HALTER & GRISWOLD LLP
        The Calfee Building
        1405 East Sixth Street
        Cleveland, OH 44114
        (216) 622-8200 (Phone)
        (216) 241-0816 (Fax)
        coneil@calfee.com
        *Admitted pro hac vice*

        Gretchen L. Whaling (OH 0096780)
        CALFEE, HALTER & GRISWOLD LLP
        1200 Huntington Center
        41 South High Street
        Columbus, Ohio 43215
        (614) 621-1500 (Phone)
        (614) 621-0010 (Fax)
        gwhaling@calfee.com
        *Admitted pro hac vice*

        *Attorneys for Defendant, Exact Care Pharmacy, LLC*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been filed electronically on July 22, 2025, with the United States District Court for the Eastern District of Pennsylvania. Notice of the filing will be sent by email to all counsel by operation of the Court's electronic filing system, and all parties may access this filing through that system.

<em>/s/ Sean P. Fahey</em><br>
Sean P. Fahey

<em>Counsel for Defendant<br>
Exact Care Pharmacy, LLC</em>

4934-2586-3252, v.4