## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**LEON WEINGRAD,** individually and on behalf of all others similarly situated,

　　　　　　*Plaintiff,*

*v.*

**EXACT CARE PHARMACY, LLC,**

**CONVERSION FINDER, AND**

**JORDAN SOBLICK**

　　　　　　*Defendants.*

　Case No.
2:25-cv-1843

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## [PROPOSED]
## FIRST AMENDED CLASS ACTION COMPLAINT
## AND DEMAND FOR JURY TRIAL

Plaintiff Leon Weingrad ("Plaintiff" or "Mr. Weingrad") brings this Class Action Complaint and Demand for Jury Trial against Defendants Exact Care Pharmacy, LLC, "Conversion Finder," and Jordan Soblick ("Defendants") and alleges as follows:

1.　　　Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2.     "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id*…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people.  The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C*., 925 F.3d 643, 649-50 (4th Cir. 2019).

3.     The Plaintiff brings this action to enforce the consumer-privacy provisions of the TCPA alleging that Exact Care Pharmacy, LLC, through the entities it hired, Mr. Soblick and Conversion Finder, violated the TCPA by making telemarketing calls to Plaintiff and other putative class members listed on the National Do Not Call Registry without their written consent, by making telemarketing calls without the accurate provision of Caller ID Name (CNAM), as well as calling people who had previously asked to no longer receive calls.

**PARTIES**

4.    Plaintiff Leon Weingrad is an individual.

5.    Defendant Exact Care Pharmacy, LLC, which does business under the name Exact Care Pharmacy, is an Ohio LLC which is registered to do business in Pennsylvania, with its registered agent office address in Montgomery County, which lies within this District.

6.    Defendant "Conversion Finder," does not appear to be a registered business in any state or jurisdiction, but rather appears to be a fictitious name used by Defendant Soblick for the provision of call center and telemarketing services.

7.    Defendant Jordan Soblick is an individual adult resident of Florida who was involved in the placing of some of the calls at issue to the Plaintiff's telephone number.

**JURISDICTION AND VENUE**

8.    This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

9.    The Court has general personal jurisdiction over Defendant Exact Care because it has registered to do business in Pennsylvania, thereby consenting to the exercise of general personal jurisdiction in Pennsylvania.

10.    This court has specific personal jurisdiction over Conversion Finder and Soblick because they contracted with Exact Care in a contract for the conduction of the illegal telemarketing at issue with a company subject to general personal jurisdiction in Pennsylvania.

11.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(3) because all Defendants are subject to personal jurisdiction in this District.

## BACKGROUND

**A.    The TCPA Prohibits Calls to Numbers on the National Do Not Call Registry.**

12.    The TCPA prohibits making multiple telemarketing calls to a residential

telephone number that has previously been registered on the National Do Not Call Registry. *See*

47 U.S.C. § 227(c)(5).

13.    The National Do Not Call Registry allows consumers to register their telephone

numbers and thereby indicate their desire not to receive telephone solicitations at those numbers.

*See* 47 C.F.R. § 64.1200(c)(2).

14.    A listing on the National Do Not Call Registry "must be honored indefinitely, or

until the registration is cancelled by the consumer or the telephone number is removed by the

database administrator." *Id.*

15.    The TCPA and implementing regulations prohibit the initiation of telephone

solicitations to residential telephone subscribers on the Registry and provide a private right of

action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47

U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

**B.    The TCPA Also Requires Telemarketers to Transmit Caller Identification Information Including the Telemarketer's Name.**

16.    The TCPA requires any "person or entity that engages in telemarketing" to

"transmit caller identification information." 47 C.F.R. § 64.1601(e).

17.    The relevant regulation defines "caller identification information" as "either CPN

or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer." 47

C.F.R. § 64.1601(e)(1).

18. The regulations also require any caller identification information to "include either CPN or ANI" and "permit any individual to make a do-not-call request during regular business hours." *Id.*

19. A violation of this subsection of the TCPA is enforceable under the private right of action provided for under 47 U.S.C. § 227(c)(5)'s private right of action. *Dobronski v. Selectquote Ins. Servs.*, No. 2:23-CV-12597, 2025 WL 900439, at *3 (E.D. Mich. Mar. 25, 2025).

20. This Court recently confirmed that there is a private right of action for violations of this provision. *Newell v. JR Cap., LLC*, No. CV 25-1419, 2025 WL 2004706, at *1 (E.D. Pa. July 16, 2025).

## FACTUAL ALLEGATIONS

21. The Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

22. At no point did the Plaintiff consent to receiving telemarketing calls or text messages from the Defendants prior to receiving the calls at issue.

23. Plaintiff's telephone number, (503) XXX-XXXX, is a residential, non-commercial telephone number.

24. Mr. Weingrad uses the number for personal, residential, and household reasons.

25. Mr. Weingrad does not use the number for business reasons or business use.

26. The number is a residential telephone line because it is assigned to a residential telephone exchange service for consumers and is not assigned to a telephone exchange service for businesses.

27.     Moreover, the telephone line is assigned to a cellular service which is presumptively residential and was eligible for registration on the National Do Not Call Registry at the time it was registered.

28.     Plaintiff's telephone number has been listed on the National Do Not Call Registry for over a year prior to the calls at issue.

29.     Plaintiff has never been a customer of Exact Care.

30.     Despite that fact, the Plaintiff received over ten telemarketing calls from the Defendants, starting on November 27, 2024 and continuing through present.

31.     The calls all came from the following numbers, and transmitted the caller ID, in the form of both CPN and ANI as follows, which included "spoofed" or potentially "spoofed" numbers. Counsel for the Plaintiff has access to "dip" the Caller ID database of the calling carrier to ascertain the CNAM information to ascertain (1) whether caller name delivery (CNAM) is available with the Defendants' calling carrier, and (2) whether such CNAM information contained the name of the telemarketer. The results of those dips are as follows:

| Number | Date | CNAM Avail? | CNAM Result | Carrier |
|--------|------|-------------|-------------|---------|
| 5032888192 | 27/11/2024 | Y | O'NEILL CHRISTI | Comcast (spoofed) |
| 5037556487 | 07/12/2024 | Y | SEASIDE OR | IP Horizon (ps) |
| 5034613416 | 27/02/2025 | Y | CANNON BEACH OR | Commio (ps) |
| 5039908308 | 27/02/2025 | Y | INC RAYS PRODUC | Comcast (spoofed) |
| 5032884576 | 27/02/2025 | Y | PORTLAND OR | Onvoy (spoofed) |
| 5034046898 | 27/02/2025 | Y | COLLINSAEROSPAC | Teleport (spoofed) |
| 5037556487 | 28/02/2025 | Y | SEASIDE OR | IP Horizon (ps) |
| 8773557225 | 06/03/2025 | Y | EXACT CARE PHARM | ANI Networks |
| 5038560896 | 06/03/2025 | Y | SALEM,OR | Qwest (spoofed) |

| 8773557225 | 07/03/2025 | Y | EXACT CARE PHARM | ANI Networks |

32.    As the aforementioned chart shows, the CNAM transmitted by the Defendant Exact Care's ultimate telephone carrier, ANI Networks, provided accurate CNAM functionality in at least two instances, but provided inaccurate CNAM functionality in all others.

33.    Moreover, in the case of several of the numbers at issue, the Defendants appear to have either spoofed them or potentially spoofed them, as will be revealed through discovery, to further hide their location.

34.    The call from 503-404-6898 on February 27, 2025 was spoofed to reflect Collins Aerospace, a US Government Defense Contractor.

35.    The call from 503-288-4576 on February 27, 2025 was spoofed to reflect a number that was not in service or assigned to anyone.

36.    The call from 503-856-0896 on March 6 was spoofed to reflect a number that was not in service or assigned to anyone.

37.    Finally, the 503-288-8192 and 503-990-8308 numbers are assigned to innocent and unrelated Comcast subscribers.

38.    With respect to each of the numbers listed above, excluding the calls from 877-355-7225, and possibly 503-461-3416, none of the numbers permit a caller to call the number and lodge a do not call request during regular business hours. It is not possible to call any of those numbers back to lodge a Do Not Call request during regular business hours.

39.    Nor will anybody texting or calling those telephone numbers receive an alternate number to call to lodge a Do Not Call request during regular business hours.

40.    The first such listed call was an individual named "Lisa" who was calling from "Exact Care Pharmacy." "Lisa" was calling to pitch the Plaintiff for a home delivery medication

service, but could not validate that the Plaintiff had insurance, and so could not proceed, and wished the Plaintiff a good day.

41.    However, the calls continued, including the call on February 27, 2025 at 7:45 AM local time from the "spoofed" caller ID 503-461-3416. During this call, the Plaintiff spoke with "Sophia" who initially claimed to be calling from the fictitious alias "Healthcare Benefits," and pitched the Plaintiff on a home delivery service for medication, and attempted to collect various personal information, including the medications that the Plaintiff was taking and his Medicare number.

42.    During that call, "Sophia" transferred the call to a "Diane" of "Exact Care Pharmacy's" "shipping team." "Diane" continued the sales pitch by stating that "Exact Care Pharmacy now offers complimentary services like automatic delivery of your prescriptions with free shipping, re-sorting of your medications into pockets marked with a time and date to take them, and your pharmacist will review your medications to look for possible risk to you." However, upon review, "Diane" stated, "Exact Care pharmacy doesn't participate with your current insurance plan, so we cannot proceed with the onboarding process." "Diane" then hung up the call.

43.    However, the Plaintiff received yet another call from "Sophia" from the alias "Healthcare Benefits" from the apparently "spoofed" caller ID 503-404-6898 that same day. "Sophia" stated that Exact Care would be able to ship out the Plaintiff's medication if the Plaintiff stated that he was on Medicaid and did not have private insurance. "Sophia" then transferred the call to "Snowar" with "Exact Care Pharmacy," who confirmed all the Plaintiff's information, and then transferred the call to "Sephra," who stated that she was an "onboarding specialist" at "Exact Care Pharmacy."

44.    "Sephra" further explained the nature of the services offered by Defendant Exact Care and attempted to sell them, including by stating that Exact Care was a "family-owned and operated pharmacy serving facilities, institutions, and project patients with over 30 years of experience" and advertised the ability to get prescriptions synchronized and packaged in pre-sorted packaging.

45.    At the conclusion of the call, the Plaintiff stated that he was busy and that he would call the caller back.

46.    However, despite not calling the caller back, the calls continued, including a February 28 call from the "spoofed" caller ID 503-755-6487. During that call, the Plaintiff spoke with "Hazel" from "Healthcare Benefits." The Plaintiff hung up.

47.    Thereafter, on March 6, 2025, the Plaintiff spoke with an individual named "Justin" calling from the caller ID 877-355-7225, stating that he was looking to offer prescription delivery and that "We offer a service where we would sort and prepackage her prescription medications for her based on when she's scheduled to take it. And then we would deliver it at no additional cost. So we were just reaching out to see if that's something she would be interested in."

48.    During this call, the Plaintiff stated that he was working and would give a call back if he was interested.

49.    Thereafter, that same day, the Plaintiff received a call from the "spoofed" number 503-856-0896, with "Jane" calling from "Healthcare Benefits." During this call, "Jane" went through nearly the same script as "Justin" did previously and stated that the Plaintiff would receive a call back from someone regarding medication delivery. The Plaintiff stated that he would call the caller back.

50.    Finally, on March 7, 2025, the Plaintiff received yet another call. It was "Justin" calling from the caller ID 877-355-7225, stating that he was looking to offer prescription delivery, using much the same script. The Plaintiff stated, "I'm at work, and you guys are calling me like every day. You guys can stop doing that."

51.    Defendant Exact Care ratified Conversion Finder and Soblick's conduct by accepting the lead and referrals generated as a result of Conversion Finder and Soblick's illegal telemarketing conduct for some of the calls at issue.

52.    For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

53.    In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

54.    The FCC has instructed that sellers such as Exact Care may not avoid liability by outsourcing telemarketing to third parties, such as Conversion Finder and Soblick:

[A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (cleaned up).

55.    In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of

agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

56.     Exact Care is liable for any telemarketing calls placed by Conversion Finder and Soblick and transferred to and using Exact Care's name to generate customers for Exact Care, including the Plaintiff.

57.     Exact Care was interested in hiring a lead generator that could make phone calls to potential customers, vet potential clients, and work up deals by taking advantage of an outsourced sales process, including collecting personal information that would then be sold to Exact Care so that Exact Care could ultimately sell its products and services.

58.     To do so, it hired Conversion Finder and Soblick to orchestrate an *en masse* telemarketing campaign that incentivized them to work up interested customer prescription deals that met Exact Care's criteria, including requiring the called party to have at least five prescriptions.

59.      To that end, the indicia of the calls, and the questions asked, including the number and types of medication the caller was taking, as well as coaching the caller as to the insurances that Exact Care would accept, were all criteria that Exact Care instructed Conversion Finder and Soblick to inquire of and only sell them leads that met those criteria.

60.     Exact Care controlled the day-to-day activities of Conversion Finder and Soblick by allowing them to work up such prescription deals on their behalf before closing them itself.

61.     Exact Care also could have prohibited Conversion Finder and Soblick from generating leads based on calls placed to numbers on the Do Not Call Registry, let alone using highly-illegal spoofed caller ID information.

62.     It did not.

63.     Finally, Exact Care could have terminated Conversion Finder and Soblick once it learned of Conversion Finder and Soblick's illegal marketing conduct, let alone its suspected fabrication of evidence in this case.

64.     It did not.

65.     A reasonable seller would investigate into the reasons why their marketer would be calling numbers using highly illegal calls to numbers on the Do Not Call Registry, let alone as to why it was using clearly illegal spoofed caller IDs to place the calls, including Collins Aerospace, a US Government Defense Contractor.

66.     It did not.

67.     Exact Care hired Conversion Finder and Soblick without a proper investigation and did not terminate them when they were informed of Conversion Finder and Soblick's illegal calling conduct.

68.     As such, they knowingly ratified Conversion Finder and Soblick's conduct.

69.     Exact Care accepted the Plaintiff's lead and then utilized it for a benefit by continuing to promote its services to him.

70.     The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

71.     Defendant Soblick may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, *inter alia*: "[T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as of that person*." 47 U.S.C. § 217 (emphasis added).

72.     As an initial matter, despite ostensibly acting as a "company," Conversion Finder is not a cognizable legal entity and merely appears to be a fictitious name *alter ego* for Soblick.

73.    Soblick personally directed the TCPA-violative conduct at issue because he personally went off and did business under the name "Conversion Finder" without appropriately forming or incorporating such business in any apparent state or jurisdiction.

74.    Moreover, Soblick personally took responsibility for the calling conduct by responding to third-party discovery propounded on him, producing call recordings pursuant to that discovery, and assisting Exact Care in its defense of this case, including providing information for Exact Care's own discovery responses.

75.    Mr. Soblick is also suspected to have provided Exact Care the altered recordings that Exact Care then provided to the Court.

76.    Soblick was also the individual responsible for drafting, setting, implementing, and controlling this illegal marketing strategy, including the use of illegal calls to numbers on the Do Not Call Registry, the use of illegally spoofed caller IDs, the hiring of the call center staff to work up those leads, and the other works involved in placing such calls, as well as his strategy of obsfucating corporate identity.

77.    The foregoing facts demonstrate that Soblick had direct, personal knowledge of and participation in the conduct and course of conduct complained of which violated the TCPA.

78.    Plaintiff and all members of the Classes, defined below, have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed and harassed. Plaintiff and the Class Members were also harmed by use of their telephone power, network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

79.    The calls were unwanted.

80.    The calls were nonconsensual encounters.

81.    Plaintiff's privacy has been repeatedly violated by the above-described telemarketing calls, including by calling in violation of the calling hours restrictions of the TCPA.

82.    Plaintiff never provided his consent or requested the calls.

83.     Plaintiff and the Classes have been harmed by the acts of Defendants because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, storage space, and bandwidth, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## CLASS ACTION ALLEGATIONS

84.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

85.     Plaintiff brings this action on behalf of himself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23.

**National DNC Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendants encouraging the purchase of goods or services, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

**Exact Care National DNC SubClass:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendants encouraging the purchase of Exact Care's goods or services, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

**Telemarketing Caller ID Class:** All persons within the United States to whom: (1) Defendants (or a third-party acting on behalf of Defendants) sent (2) two or more telemarketing calls in a 12-month period, (3) which either (a) did  not transmit caller identification information that included either CPN or ANI and the Defendants' or telemarketer's name, (b) did not transmit a valid CPN or ANI at all, or (c) transmitted a CPN or ANI that would not have allowed an individual to make a do not call request during regular business hours, (4) within the four years prior to the filing of the Complaint.

**Early/Late Calls Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendants (or a third-party acting on behalf of Defendants) called, (2) within any 12-month period, (3) promoting goods or services, (4) before the hour of 8 a.m. or after 9 p.m. (local time at the called party's location).

**Internal DNC Class:** All persons within the United States to whom: (1) Defendants (or a third-party acting on behalf of Defendants) sent (2) two or more telemarketing calls in a 12-month period, (3) who were not current customers of the Defendants at the time of the calls, (4) who had previously asked for the calls to stop and (5) within the four years prior to the filing of the Complaint.

86.    **Numerosity**: The exact number of Class members is unknown but based on the *en masse* nature of telemarketing is believed to be at least hundreds of persons at this time, and individual joinder in this case is impracticable. Class members can be easily identified through Defendants' records, or those of their agents.

87.    **Typicality**: Plaintiff's claims are typical of the claims of other Class members in that Plaintiff, and Class members, sustained damages arising out of Defendants' telemarketing calls and Class members sustained similar injuries and damages as a result of Defendants' uniform illegal conduct.

88.    **Adequacy**: Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel competent and experienced in complex class actions to vigorously prosecute this action on behalf of the Classes. Plaintiff has no interests that conflict with, or are antagonistic to those of, the Classes, and Defendants have no defenses unique to Plaintiff.

89.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and members of the Classes, and those questions predominate

over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to, the following:

a.       Whether Defendants obtained "prior express invitation or permission" under the TCPA, before the calls at issue;

b.       whether Defendants recorded or honored "do not call" requests of Plaintiff and members of the Internal Do Not Call Class;

c.       whether Defendants transmitted CPN or ANI and their name in the caller ID information, when provided as an option by their telephone carrier, to Plaintiff and members of the Telemarketing Caller ID Class;

d.       whether Defendants placed calls in violation of the TCPA's calling hour restrictions, to Plaintiff and members of the Early/Late Calls Class;

e.       Whether Defendants have established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the TCPA's do-not-call regulations;

f.       Whether Defendants should be held liable for violations committed on their behalf; and

g.       Damages, including whether any violations were performed willfully or knowingly, such that Plaintiff and the other Class members are entitled to treble damages under 47 U.S.C. § 227(c)(5).

90.     **Superiority**: Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions

would entail.  There are hundreds of Class members in each class, such that joinder of all members is impracticable.

91.    In addition to satisfying the prerequisites of FED. R. CIV. P. 23(a), Plaintiff satisfies the requirements for maintaining a class action under FED. R. CIV. P. 23(b) because:

a.    The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendants;

b.    The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

c.    Defendants have acted or refused to act on grounds that apply generally to the proposed Classes, thereby making final injunctive relief or declaratory relief herein appropriate with respect to the proposed Classes as a whole; and

d.    Questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## COUNT I
### Violations of the TCPA, 47 U.S.C. § 227
### (On Behalf of Plaintiff and the National DNC Class)

92.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

93.    It is a violation of the TCPA to initiate any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry. 47 C.F.R. 64.1200(c)(2).

94.    Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violated the TCPA by causing multiple telephone solicitation calls to be initiated to Plaintiff and members of the National DNC Class in a 12-month period, despite the person's registration of his or her telephone numbers on the National Do Not Call Registry.

95.    These violations were willful or knowing.

96.    As a result of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA's national do-not-call rule, Plaintiff and members of the National DNC Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

97.    Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

<u>**COUNT II**</u>
**Violations of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the Telemarketing Caller ID Class)**

98.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

99.    It is a violation of the TCPA to make a telemarketing call without the transmission of caller identification information including either a CPN or ANI and, when available by the telemarketer's carrier, the name of the telemarketer. 47 C.F.R. § 64.1601(e)(1).

100.    It is a violation of the TCPA to transmit a CPN or ANI that does not allow any individual to make a do-not-call request during regular business hours. 47 C.F.R. § 64.1601(e)(1).

101.    Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violated the TCPA by causing multiple telemarketing calls to be initiated to Plaintiff and members of the Telemarketing Caller ID Class in a 12-month period, without transmitting the name of the telemarketer, despite such option for transmission of accurate CNAM information being available by its carrier, by calling without transmitting CPN or ANI, or by calling while transmitting non-compliance CPN or ANI.

102.    These violations were willful or knowing.

103.    As a result of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA's telemarketing Caller ID transmission requirement, Plaintiff and members of the Telemarketing Caller ID are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

104.    Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

**COUNT III**
**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c))**
**(On Behalf of Plaintiff and the Early/Late Call Class)**

105.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

106.    It is a violation of the TCPA to initiate any telephone solicitation before 8:00 AM or after 9:00 PM, local time at the called party's location, as the Defendants did for some of the calls received by Plaintiff. 47 C.F.R. § 64.1200(c)(1)

107.    Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violated the TCPA by sending such messages outside the permitted hours.

108.    These violations were willful or knowing.

109.    As a result of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA's calling hours restrictions, Plaintiff and members of the Early/Late Call Class are each entitled to an injunction and up to $500 in damages for each such violation. 47 U.S.C. § 227(c)(5).

110.    Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

## COUNT IV
### Violations of the TCPA, 47 U.S.C. § 227
### (On Behalf of Plaintiff and the Internal DNC Class)

111.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

112.    The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by sending telemarketing calls, except for emergency purposes, to Plaintiff and members of the Internal Do Not Call Class despite previously requesting that such calls stop.

113.    Because such violations were willful or knowing, the Court should treble the amount of statutory damages, pursuant to 47 U.S.C. § 227(c)(5).

114.    As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Internal Do Not Call Class are entitled to an award of up to $500 and in damages for each and every call sent and up to $1,500 in damages if the calls are found to be willful.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Classes, respectfully request

that the Court enter judgment against Defendants for:

    A.    Certification of the Classes as alleged herein;

    B.    Appointment of Plaintiff as representative of the Classes;

    C.    Appointment of the undersigned as counsel for the Classes;

    D.    Damages to Plaintiff and members of the Class pursuant to 47 U.S.C. § 227(c)(5);

    E.    Injunctive relief for Plaintiff and members of the Class, pursuant to 47 U.S.C. § 227(c)(5), preventing the Defendants from making calls to numbers listed on the National Do Not Call Registry, to those who have asked them to stop, outside the permitted hours, or while failing to transmit the caller ID information required by law;

    F.    Attorneys' fees and costs, as permitted by law; and

    G.    Such other or further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

RESPECTFULLY SUBMITTED AND DATED this 19th day of August, 2025.

                          */s/ Andrew Roman Perrong*
                          Andrew Roman Perrong, Esq.
                          PA Bar #333687
                          Perrong Law LLC
                          2657 Mount Carmel Avenue
                          Glenside, Pennsylvania 19038
                          Phone: 215-225-5529 (CALL-LAW)
                          Facsimile: 888-329-0305
                          a@perronglaw.com