IN IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LEON WEINGRAD,** individually and on behalf of all others similarly situated, | Case No. 2:25-cv-1843 |
| *Plaintiff,* | **CLASS ACTION** |
| *v.* | **JURY TRIAL DEMANDED** |
| **EXACT CARE PHARMACY, LLC,** | |
| *Defendant.* | |

## <u>OPPOSITION TO DEFENDANT'S MOTION TO COMPEL</u>

Defendant's motion to compel represents the culmination of Defendant's litigation strategy of punishing the Plaintiff for daring to hold Defendant to account for its illegal telemarketing conduct. The motion seeks to chill the exercise of the Plaintiff's rights through the use of highly invasive, unwarranted, and disproportional discovery, including seeking to compel unlimited and unrestricted forensic imaging of all the Plaintiff's internet devices for evidence surrounding an alleged website visit that third party discovery confirms could not have occurred. Moreover, at the parties' meet and confer, Defendant revealed its true motives, not to seek discoverable information, but to use the discovery sought to be compelled as an avenue to chill the Plaintiff's exercise and pursuit of his consumer rights. The motion should be denied.

## LEGAL STANDARD

"Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). However, that mutual knowledge is not unlimited, and although the scope of discovery is broad, it is not unlimited. *Inventio AG v. Thyssenkrupp Elevator Ams. Corp.*, 662 F. Supp. 2d 375, 381 (D. Del. 2009). Courts will not

permit parties to engage in fishing expeditions. *Eisai Inc. v. Sanofi-Aventis U.S., LLC*, No. 08-4168(MLC), 2012 WL 628320, at *3 (D.N.J. Feb. 27, 2012). And, a court may *sua sponte* limit the frequency or extent of discovery if the discovery is outside the permissible scope, the party has had ample opportunity to obtain the information, or if the discovery "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C).

As the moving party, Exact Care bears the burden of demonstrating both the relevance and propriety of the discovery sought to be compelled. *Gardner v. Boone*, No. 19-CV-5572, 2023 WL 1927992, at *2 (E.D. Pa. Feb. 9, 2023). If defendant demonstrates relevance and propriety, that is, demonstrates that the scope of discovery satisfies the requirements of the federal rules, the burden shifts to the opposing party, who must demonstrate that the discovery is overly broad, privileged, or otherwise improper. *Id.*

## ARGUMENT

**1. Exact Care's unprofessional and inadequate meet and confer efforts.**

As Exact Care observed, the parties met and conferred on August 15, 2025 regarding the subject disputed discovery requests.

However, Exact Care fails to acknowledge in its motion the highly unprofessional conduct of attorney Colleen O'Neil on this call, which has not been addressed or defended in the email thread attached herein as Exhibit A. During this call, the parties discussed their disagreements as to a proposed ESI protocol, and Attorney O'Neil called the Plaintiff's proposal "just a bunch of B.S." When Plaintiff's counsel observed that the Plaintiff's proposed protocol was the same one used by Judges Restrepo, Savage, Hodge, and Slomsky, Attorney O'Neil shockingly stated that those Judges' protocols were also "just a bunch of B.S." Attorney O'Neil

continued to insult Plaintiff's counsel during the meet and confer call, including by stating that she was "talking to a five year old," and calling Plaintiff's counsel "Judge Perrong." During the course of the call, Ms. O'Neil continued to make vituperative *ad hominem* sarcastic and extraneous remarks directed toward Plaintiff and Plaintiff's counsel, including accusing Plaintiff and his counsel of perpetrating a fraud on this Court, insulting Plaintiff's Counsel for failing to turn his camera on and show his face, among other comments.

Despite such unprofessional conduct, Plaintiff's counsel sent an email to Defendant's counsel shortly after the meet and confer call outlining some points of agreement and the circumstances under which the Plaintiff would provide responsive documents upon certain limitations and conditions. Instead of so much as responding to these proposals or attempting to seek further dialogue on the issues, as will be discussed herein, Defendant's counsel simply ignored this email and went forward with the filing of the motion.

Simply put, the unprofessional conduct during the parties' meet and confer is illustrative of the purpose of the extremely invasive and unwarranted discovery. Opposing counsel's conduct during the call shows that the information sought is not *truly* necessary to proving and disproving the claims and defenses at issue in this case, but were rather intended to bully, intimidate, and harass the Plaintiff and Plaintiff's counsel. The Plaintiff has provided Exact Care with the evidence it needs during this first phase of discovery that Defendant Exact Care itself has sought. The Plaintiff offered to supplement his discovery responses, consistent with reasonable limitations to protect Plaintiff's privacy interests in this litigation which concerns violations of consumer privacy statutes. The tenor and context of the meet and confer communications show that the information sought to be compelled is not *truly* necessary but

rather that the motion was filed for an improper purpose: to bully, harass, and intimidate the Plaintiff and his counsel.

The totality of the circumstances thus shows that Exact Care and particularly Ms. O'Neil failed to exercise "reasonable efforts" to resolve the instant dispute before involving the Court, as prohibited by the Local Rules. These factors alone demonstrate that Exact Care did not make "reasonable efforts" to resolve the subject discovery dispute, warranting denial.

**2.  Plaintiff's Interrogatory responses are proper.**

<u>Interrogatory 2</u>

Plaintiff's other telephone numbers (if any) are completely irrelevant to any claim or defense and are thus not discoverable. Indeed, in *Moser v. Health Insurance Innovations, Inc.*, the Court denied a motion to compel as to any telephone numbers that were not involved in TCPA litigation filed by the Plaintiff. No. 17CV1127-WQH(KSC), 2019 WL 2271804, at *11 (S.D. Cal. May 28, 2019). *Moser* appears to represent the only case in which a court has addressed the issue and admittedly takes a broad view that any telephone number under which the Plaintiff has filed a lawsuit under the TCPA is discoverable, although it expressly held that any other numbers for which Plaintiff did not sue under the TCPA are not.

However, several points counsel against even compelling the information regarding any of the Plaintiff's other numbers (if any) involved in TCPA litigation, other than the number at issue here. As an initial matter, such information is invasive of the Plaintiff's privacy and is simply a fishing expedition for Plaintiff's private information and other phone numbers that has no bearing on the claims at issue here. Moreover, the information is outside the scope of the bifurcated discovery that the Defendant itself requested, which is limited to "issues unique to Weingrad's individual Telephone Consumer Protection Act ("TCPA") claims." Plaintiff's other

lawsuits and any other telephone numbers he may have are not issues unique to his claims *in this case*, which involve telephone calls which were placed to a *single phone number* of the Plaintiff's. The Plaintiff does not contend that he received any calls from Exact Care or Conversion Finder on any telephone number other than the one disclosed in the Complaint. It stretches credulity that Defendant claims that "any one of his [phone numbers] could have been used in the present case" in order to drum up more TCPA litigation against Exact Care. If that were true, and if the Plaintiff was as improperly self-interested as Exact Care claims, then the Plaintiff would have pled calls to those additional numbers (if any). He has not for the simple fact that he only received calls from Exact Care and Conversion Finder from a single number and pled as much. Thus, only the number that received the calls at issue is potentially relevant and proportional to the case needs here, particularly when taking into account the Plaintiff's privacy interest and bifurcated discovery.

At least one other Court has agreed with Mr. Weingrad's position. Indeed, at a case management conference where the Court granted similar bifurcation to that which the Defendant sought here, in *Weingrad v. DaBella Exteriors LLC*, Judge Simon of the District of Oregon observed that the Plaintiff's other litigation and phone numbers would not be relevant to the merits of the instant claim and expressly prohibited the Defendant from seeking discovery into the Plaintiff's other telephone numbers. That being the case here, and it being the case that no other numbers have been implicated in this litigation, this Court should not compel a response to this interrogatory.

<u>Interrogatories 9 and 10</u>

Courts have time and again denied to compel interrogatories similar to Interrogatories 9 and 10 in TCPA cases. "The attempted use of past litigation to prevent a litigant from pursuing a

valid claim in federal court warrants our most careful scrutiny." *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1040 (9th Cir. 2008) (*quoting Outley v. City of New York*, 837 F.2d 587, 592 (2d Cir. 1988)). Defendant's proposition that the "amount of money and income he has made from these cases is relevant to Exact Care's defense that Mr. Weingrad abuses and misuses the TCPA" commits at least two logical fallacies, demonstrating that the information is irrelevant and simply sought to embarrass, harass, and annoy the Plaintiff and chill the Plaintiff and the exercise of his rights.

*First*, it commits the fallacy of correlation without causation. The amount of money in statutory damages one receives from a TCPA action has nothing to do with whether they "abuse and misuse" federal law; it is simply indictive of how many unwanted illegal calls they received and how many lawsuits they receive to collect statutory damages as a result, and is often driven by other factors, such as the Defendant's financial condition. *Second*, as other Courts have remarked, one's decision to pursue large numbers of those who call them illegally does not mean that they asked for the calls as an initial matter or somehow caused them to occur. "[N]othing in the Constitution, though, requires a plaintiff to be a naïf. Litigation is not college athletics: there is no 'amateurs only' rule." *Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187, 1195 (M.D. Tenn. 2017); *see also Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) ("What the district judge did not explain, though, is why 'professional [plaintiff]' is a dirty word. It implies experience, if not expertise. The district judge did not cite a single decision supporting the proposition that someone whose rights have been violated by 50 different persons may sue only a subset of the offenders."); *Abramson v. Oasis Power LLC*, No. 2:18-cv-00479, 2018 U.S. Dist. LEXIS 129090, at *16 (W.D. Pa. July 31, 2018) ("As other courts addressing this issue have agreed, a citizen's decision to aggressively enforce his rights under the TCPA

should not negate otherwise valid privacy interests"); *Shelton v. Nat'l Gas & Elec., LLC*, No. CV 17-4063, 2019 WL 1506378, at *4 (E.D. Pa. Apr. 5, 2019) ("[T]he fact that Plaintiff warns telemarketers on his website that he will sue them if they violate the TCPA does not raise an inference that he "hopes for and encourages" potential defendants, acquires phones to increase his chances of receiving calls, or is doing anything other than exercising his rights."). To the contrary, suing telemarketers demonstrates that the calls are unwanted and that the recipient simply wants them to stop. *Mantha v. QuoteWizard.com, LLC*, 347 F.R.D. 376, 394 (D. Mass. 2024) ("Though his number was not in QuoteWizard's DNC files, that is because he expressed his desire for the texts to cease by suing, rather than texting back.").

*Third*, some of the Plaintiff's civil cases are subject to strict confidentiality agreements, some including prior disclosure provisions and the subject of court-enforceable confidentiality orders and stipulations, especially with respect to settlement amounts. As the Plaintiff noted in his discovery responses, the Third Circuit imposes a heightened relevance standard when it comes to the discoverability of settlement information, thus distinguishing this case from the citations from other circuits proffered by the Defendant. *Spear v. Fenkell*, No. CIV.A. 13-02391, 2015 WL 3947559, at *1 (E.D. Pa. June 26, 2015). As such, the Plaintiff will not, and stands on his objection that he should not, disclose the monetary value of any confidential settlement, either individually or in the aggregate. Courts are generally "not persuaded that financial information such as the specific amounts of Plaintiff's prior TCPA settlements or awards is relevant to [Defendant's] defenses." *Charvat v. Southard Corp.*, No. 2:18-CV-190, 2019 WL 13196991, at *3 (S.D. Ohio Feb. 13, 2019); *Quinn v. Branch Banking & Tr. Co.*, No. 5:19-CV-433-OC-30PRL, 2020 WL 264696, at *4 (M.D. Fla. Jan. 17, 2020) (holding that information

regarding settlements for TCPA claims were not "relevant to the claims or defenses in this action and proportional to the needs of the case, and will not be permitted.").

Moreover, as noted above, disclosure of settlement amounts would contravene Rule 408's purposes, are largely inadmissible for the purposes sought under Rule 408, and otherwise probative of little. *Jackson v. Clear Link Ins. Agency, LLC*, No. 4:22-CV-01466, 2023 WL 6436692, at *2-*4 (M.D. Pa. Sept. 29, 2023) ("cases settle for different amounts and on different timetables for any number of reasons."). The only conceivable way that Exact Care could possibly show that the Plaintiff is "abusing and misusing" the TCPA is by demonstrating that the Plaintiff obtained settlement payments to him in excess of his legally permissible statutory damages. However, that is patently not the case here, and the Plaintiff is willing to confirm in a supplemental response that he did not obtain a settlement value in excess of the statutory maximum for settling any of his previous TCPA claims, thus addressing the only point of relevance which Defendant has. Such a disclosure would also alleviate the confidentiality and proactiveness concerns surrounding the dollar value of the settlements themselves.

<u>Interrogatories 11 and 12</u>

The Plaintiff's concerns and objections with these interrogatories are twofold. Plaintiff proposed a protocol which would alleviate those concerns during the meet and confer, but they were flatly rejected by Exact Care. *First*, as the Plaintiff's discovery responses note, Request 11 is vague, insufficiently specific, and tremendously overbroad, taking into its sweep any electronic devices the Plaintiff has so much as "utilized" in an almost two year period, without identifying which such device or information it possesses with respect to the alleged website submission. So too with Request 12, which is insufficiently specific and technically incorrect, as well as being overly broad as it loops in IP addresses besides the single IP address,

54.149.123.160, which is alleged to have submitted the information to some website, additional information surrounding the submission of which has yet to be identified.

*Second*, the Plaintiff fears that providing the information sought without a special master or *in camera* review will allow the Defendant to manufacture evidence after the fact. This is not a mere hypothetical concern, particularly given that the Defendant has presented recordings to the Court which do not match telephone company records of call duration and which Plaintiff contends have been altered because they do not match the contents of the same call recordings in Plaintiff's possession. Moreover, this concern is all the more palpable because Defendant has not produced any documentation regarding the website submission at all, despite Plaintiff requesting it in discovery and Defendant has agreed to provide this information. All Defendant has contended is that the website visit originated from a single IP address, 54.149.123.160, without providing any of the associated information that it seeks to compare with the purported submission. Nor has Exact Care produced a *single page of evidence* to show that the purported website visit occurred at all, let alone any of the information sought to cross-reference with that evidence. Nor can it. As the responses of Amazon and NetXposure attached herein as Exhibit B make clear, this IP address wasn't even assigned or used by anyone, let alone Plaintiff, and could not have submitted information to any website.

Plaintiff's *in camera* review proposal addresses both concerns, both as to broadness (because such disclosure would be limited to a single day), and the concerns about data security and fabrication of evidence (because of the simultaneous submission to the Court of the competing evidence). As such, if the Court compels some form of response to these interrogatories, it should first require Defendant to identify the evidence upon which it contends was associated with the purported website submission. Otherwise, the interrogatories become

fishing expeditions that implicate significant personal privacy concerns, the privacy interests of

third parties,  as well as data security interests, such as by exposing IP addresses to potential

hacking. This is not to mention the evidence fabrication concerns. In the event this Court

compels production, the Court should first require Defendant to make some contentions with

respect to the sought information (for example, if Exact Care contends that the sign up originated

from IP address 54.149.123.160, which had a User Agent of a Windows 10 computer). This

avoids a needless fishing expedition. Once Exact Care provides that information to the Court or

to a special master *in camera*, the Plaintiff will provide his information independently, and the

Court or special master can state whether or not the information matches. Such a protocol would

limit disclosure of protected information while at the same time providing Exact Care its defense

if the information matches. Exact Care has flatly rejected this proposal without explanation or

providing any alternative to address these concerns.

### 3.  The disputed Request for Admission is moot.

As an initial matter, the Plaintiff stands by his objections to this Request for Admission.

The Defendant has no right to ask for whether the Plaintiff visited a website with no apparent

relevance or bearing on this case any more than the Defendant has the right to ask if the Plaintiff

visited an adult website, either. The website robocalls.cash is apparently a website that sells a

"kit" to stop robocalls. Defendant had and has no scintilla of evidence that the Plaintiff ever

visited that website, purchased a "kit," or has anything to do with that website. Nor has the

Defendant contended that this website was at all involved in the conduct or calling at issue. As

such, the issue of whether or not the Plaintiff has visited a random website has no relevance to

the claims at issue in this case. Defendant's explanation that visiting a website that sells

information on how to stop robocalls somehow "tends to prove" the issue of whether or not the

Plaintiff has "unclean hands" is nonsensical and questionable, as Defendant points to no website content that would show that, let alone that Plaintiff somehow adopted the website content as his own. Plaintiff feared, and continues to fear, that Defendant will continue to abuse the Request for Admission device to ask the Plaintiff whether he visited any number of irrelevant websites and opens the door to a slippery slope. Nevertheless, the Plaintiff has, without waiving objections, denied that he visited the website. As such, the motion to compel on this Request is moot.

    **4. Plaintiff's Request for Production responses are proper.**

    <u>Request for Production 11</u>

    Contrary to Exact Care's contentions, the Plaintiff is not refusing to produce documents which support his claims, assertions and allegations. However, as written, this Request for Production is impossible to comply with because it seeks "all documents" which support "any of his claims assertions, or allegations." Such a broad and vague request sweeps every allegation and assertion in the Complaint into its scope, instead of a reasonably particularized category of documents as required by the Rules. This Court has already held multiple times that "requests using the phrase 'all documents relating or referring to' to be vague and broad." *Manville Sales Corp. v. Paramount Sys., Inc.*, No. CIV.A. 86-4157, 1987 WL 14794, at *2 (E.D. Pa. Oct. 20, 1987) (citing *Cont'l Access Control Sys., Inc. v. Racal-Vikonics, Inc.*, 101 F.R.D. 418, 419 (E.D. Pa. 1983)).

    In essence, this Request asks the Plaintiff to "give us everything even remotely related to this case." That is plainly impermissible because it is not narrowly tailored, nor does it provide enough information to determine what documents Exact Care is seeking. *See Hart v. Nationwide Mut. Fire Ins. Co.*, 270 F.R.D. 166, 169 (D. Del. 2010) ("The Court will not order Defendant to produce 'all documents, correspondence, memoranda and emails responsive to Plaintiff's

requests.' . . . without more specific guidance from Plaintiff on what responses it is challenging

and why. In essence, Plaintiff has failed to provide the necessary specificity to allow the Court to

compel Defendant to reply to any individual request."); *Parks, LLC v. Tyson Foods, Inc.*, No.

5:15-CV-00946, 2015 WL 5042918, at *6 (E.D. Pa. Aug. 26, 2015) (denying motion to compel

115 requests for production without specifically identifying deficiencies in documents to be

produced). During the parties' meet and confer conference, the Plaintiff stated that he would

supplement with responsive documents, so long as Exact Care set forth particularized assertions

and categories of documents it desired. Exact Care has refused to identify the same and instead

moved to compel. But because even its motion is insufficiently specific as to what exactly Exact

Care is seeking to compel, or to permit a search to take place, the motion should be denied.

<u>Request for Production 13-14</u>

Contrary to Defendant's assertions, both Joseph Arnold and Jill Herrala are real people.

As Plaintiff also explained, simply seeking "all documents" related to these persons is

insufficiently specific and will encompass hundreds of irrelevant and disproportional documents

in its scope. As Plaintiff also explained, and as best Plaintiff can ascertain, Joseph Arnold is a

diseased individual who was the previous assignee of the Plaintiff's number, and the Plaintiff

gets many calls a day with telemarketers and individuals seeking to speak to Joseph Arnold. The

Plaintiff has a right to investigate who is calling him illegally without his consent. Clearly, all the

other calls in which the Plaintiff has received a call looking for "Joseph Arnold" is not relevant

to the calls at issue. But even if there was some degree of relevance, the request fails on

proportionality because any probative value of Exact Care's contention that some other calls

involving "Joseph Arnold" somehow manufactured the instant lawsuit. That contention makes

little sense as it is not clear how anything that is said in any other telephone call in which Joe

Arnold is mentioned, which Exact Care would have no knowledge of, could have caused Exact

Care to call the Plaintiff, and thus allegedly "manufactured" this lawsuit. So too with Jill Herrala.

As the Plaintiff explained, Ms. Herrala is an individual with a special relationship to Plaintiff

who has permitted the Plaintiff to use her Medicare number to investigate and confirm the

identity of illegal callers who insist they are provided a Medicare number. Given the nature of

that special relationship, the request as written would encompass many documents of a personal

and confidential nature having nothing to do with the TCPA or the claims or defenses at issue.

This court should decline to compel such an overly broad and disproportionate interrogatory. The

Plaintiff has already produced those documents which pertain to this case, which consist of all

recordings, including those in which these names were mentioned.

<u>Request for Production 15</u>

This Court should decline to compel production of this Request for similar reasons to

Request 11, although to an even greater extent here. Not only does this request seek all

documents relating to the litigation, but it goes one step further by asking for "all documents" in

any manner so much as "referring or relating to" a particular topic, which is here the very statute

under which this litigation is proceeding. As has already been mentioned, the Eastern District has

held "all documents reflecting or referring to" and similar such language to be impermissible

because it is overly vague and broad. Such requests do not identify what documents it seeks to

discover through the request. *Manville Sales Corp.*, 1987 WL 14794, at *2.

Courts within the Third Circuit have denied even more tailored requests, such as seeking

"all documents or objects relating to or referring to [a specific person]." *E.g.*, *Patroski v. Ridge*,

No. 02:11-CV-01065, 2011 WL 5977582, at *2 (W.D. Pa. Nov. 29, 2011) (denying motion to

compel and directing the propounding party to "make a more particularized request as opposed

to the current open-ended request for "all" documents that relate or refer to Plaintiff"); *Huertas v. Beard*, No. 1:10-CV-10-SJM-SPB, 2012 WL 3096430, at *7 (W.D. Pa. July 30, 2012) (affirming magistrate's denial of a motion to compel seeking "all documents" relating to an individual's incarceration on the grounds that the request was insufficiently specific and further agreeing "that the request for any and all documents that merely "mention" or "refer" to the "practice" of the LTSU is overly broad and unduly burdensome") *Diglio v. Air Prods. & Chemicals, Inc.*, No. CIV. A. 95-7818, 1998 WL 126948, at *3 (E.D. Pa. Mar. 17, 1998) (refusing to compel information related to handling of sexual harassment complaints at a company with respect to other individuals than Plaintiff). And although the discovery sought here is impermissible under any manner, it is particularly not subject to compulsion here where the Court has bifurcated and limited discovery into the Plaintiff's individual claims. The Plaintiff's other TCPA lawsuits have nothing to do with the individual merits of his particularized claim here and should likewise not be compelled.

Request for Production 18

This request is objectionable on the same basis as Interrogatories 9 and 10, but furthermore objectionable in that it seeks attorney-client materials, such as investigative correspondence sent to companies in anticipation of litigation, as well as all communications at all related to any of the Plaintiff's TCPA complaints. These include both settlements and other correspondences with opposing counsel, as well as documents protected by protective orders, confidentiality agreements, and the like. Given that Interrogatories 9 and 10 are objectionable and irrelevant even to the extent they seek to ascertain how much the Plaintiff has recovered in statutory damages as a result of his litigation, this request is doubly objectionable on the same basis. Moreover, the confidentiality and other concerns, including those of privilege are all the

more palpable here. And finally, this request mirrors and calls for essentially the same documents as Request for Production 15, which called for "all documents" that "refer or relate to" the TCPA, and is objectionable on the same reasons, including because it does not identify what documents it seeks to discover through the request,.

Request for Production 21

Request for Production 21 is the most chilling and inappropriate of all the requests for production that Defendant seeks to compel. Through this request, Exact Care seeks "forensic images" of "all devices identified in your response to Interrogatory No. 11." Thus, as an initial matter, before even turning to the Plaintiff's own devices, this request for production seeks to purport to want to have the Plaintiff produce a *forensic copy* of *every electronic device he has used* at any point in the identified time period, regardless of whether or not those devices are even his. Thus, as an initial matter, it intrudes upon the privacy and data security interests of third parties. But even to the extent that this reached the Plaintiff's own devices, the request is objectionable. There is simply no reason why copying all the Plaintiff's personal electronic devices, including his computer and cell phone, would be proportional to the needs of the case, let alone be likely to result in discoverable information. To the contrary, it would provide to Exact Care and its counsel information of a highly-sensitive and personal nature, not to mention information protected by various privileges, not the least among them the attorney-client and spousal communications privileges. Here, Exact Care's request to image "all devices" so it can rummage through them is the exact definition of a fishing expedition and demonstrates that the true purpose of this requests is to pry into the Plaintiff and third parties' private lives and drive up the costs of litigation, not to obtain specific, proportional, and targeted evidence. That is precisely the kind of harassment that Rule 26(g)(1)(B) forbids.

Realizing this, this very Court has labeled an even more limited version of the forensic examination that the Defendant seeks here an extraordinary and "drastic" discovery measure that is highly intrusive. *See, e.g., Stewart v. First Transit, Inc.*, No. CV 18-3768, 2019 WL 13027112, at *1 (E.D. Pa. Sept. 3, 2019). The circuit courts of appeal have counseled that a Court should only begin to consider this remedy when there is evidence that a party has spoliated or is withholding discoverable information, and when no other more narrowly tailored and direct method of discovery will result in the discovery of the information sought. *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008). Clearly, the vast majority of the information on the Plaintiff's electronic devices and all that contains: photographs, personal content, contacts, messages with friends and family, saved passwords and banking information, communications with one's spouse, counsel, therapists, doctors, music, and copyrighted material, have precisely nothing to do with the TCPA claims at issue here, and are completely irrelevant and disproportionate to the case's needs. *Rheem v. UPMC Pinnacle Hosps.*, No. 1:23-CV-75, 2024 WL 4494695, at *6 (M.D. Pa. Oct. 15, 2024) (citing *John B.* and *Riley* for the proposition that courts should guard against intrusiveness in forensic imaging given that most adults "keep on their person a digital record of nearly every aspect of their lives—from the mundane to the intimate."). The mere suspicion of spoliation, as Exact Care intimates here without evidence (and indeed, where the evidence shows the opposite), is insufficient. *Id.*

And the two pieces of information which would be remotely applicable to the claims and defenses here: the call logs and IP address logs, are not only discoverable, but have already been discovered, produced, and answered from other, less intrusive sources. *See Par Pharm., Inc. v. QuVa Pharma, Inc.*, No. CV 17-6115 (BRM), 2019 WL 959700, at *5-*6 (D.N.J. Feb. 27, 2019) (denying request for forensic examination and citing *John B.* and the Sedona Principles for

proportionality and tailored search process, even when there was evidence of spoliation and further noting that "mere skepticism that an opposing party has not produced all relevant information is not sufficient to warrant drastic electronic discovery measures."). And Defendant appears to have mis-cited the holding in *Sherman v. Yahoo!*, a case which Defendant does not even cite correctly and which decision does not appear to exist, particularly as the *Sherman* court granted a motion to dismiss his claims just days prior to the cited decision, but conditioning dismissal on Plaintiff's deposition. *Sherman v. Yahoo! Inc.*, No. 13CV0041-GPC-WVG, 2015 WL 473270, at *7 (S.D. Cal. Feb. 5, 2015). As the Southern District of Florida has held in rejecting a similar argument to Exact Care's that a forensic examination will show if the Plaintiff "abuses and misuses" the TCPA in *Ramos v. Hopele of Fort Lauderdale, LLC*, No. 17-62100-CIV, 2018 WL 1383188, at *3 (S.D. Fla. Mar. 19, 2018):

> Hopele argues that a forensic examination will help establish "Plaintiff's activities and the circumstances before, during and after her alleged receipt of the Text Message," all of which Hopele argues are crucial to its defense of an absence of any injury-in-fact. However, current Eleventh Circuit law holds that an unsolicited receipt of a one-page fax advertisement constitutes injury-in-fact under the TCPA. *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245 (11th Cir. 2015). And district courts in this District have cited Palm Beach Golf Center in holding that receipt of unsolicited text messages alone constitutes an injury-in-fact under the TCPA. See *Salcedo v. Hanna*, 2017 WL 4226635, at *1 (S.D. Fla. June 14, 2017) (Gayles, J.) (certifying interlocutory appeal of an order denying a motion to dismiss where the injury alleged under TCPA was receipt of one unsolicited text message); *Mohamed v. Off Lease Only, Inc.*, 2017 WL 1080342, at *2 (S.D. Fla. Mar. 22, 2017) (Cooke, J.) (plaintiff who received unsolicited text messages had standing to sue under TCPA).
>
> Hopele argues that a forensic examination is "likely to yield evidence regarding whether Plaintiff is similarly situated to other putative class members and whether her alleged damages would be the same (and therefore, whether the class is ascertainable)" [DE 44]. However, Hopele makes no showing of the relevance to a class determination of whether the named Plaintiff opened or clicked on the message or purposefully deleted the message. At this time, issues related to the putative class do not compel a forensic examination of Plaintiff's cell phone.
>
> Finally, in its reply memorandum, Hopele argues that a forensic examination will "clear up" the confusion regarding Plaintiff's late disclosure of eight other text messages

received by Plaintiff. The Court notes that those eight text messages are not alleged in the Complaint and, therefore, at this moment, are not relevant to the claims or defenses in the case.

In sum, the Court finds that Hopele's request for a forensic examination of Plaintiff's cell phone is not tailored to obtain information that is relevant to any claim or defense in this case. Furthermore, the proposed forensic examination is not proportional to the needs of the case or to Plaintiff's privacy concerns.

Even to the extent that Defendant were willing to limit its copy and search to such things relevant to the case as to any logged IP addresses on the devices and the Plaintiff's telephone records so as to demonstrate purported consent, far less invasive methods of searching remain available. *See Id.* ("Hopele has not shown that a forensic examination of Plaintiff's cell phone is required to determine whether she expressly consented by providing her phone number through Defendant's website.").  For example, with respect to phone calls, the Plaintiff has produced his telephone records reflecting the calls at issue. There is no need to review the Plaintiff's phone to confirm those records and calls, particularly as they are available and can be authenticated by a disinterested third party. Indeed, this posture has resulted in the *production* of records through a more reasonable, more reliable, more narrowly tailored, and more direct means than the proposed imaging sought, unlike in *Bratcher v. Navient Solutions, Inc.*, where the Middle District of Florida concluded that *inspection* (not imaging) of the Plaintiff's cell phone to ascertain whether her cell phone blocked any of the calls was *unwarranted,* noting that there is "no routine right of direct access" to a party's device. 249 F. Supp. 3d 1283, 1286 (M.D. Fla. 2017 (citing *Hiscox Dedicated Corp. Member, Ltd. v. Matrix Grp. Ltd., Inc.*, No. 8:09-cv-2465-T-33AEP, 2011 WL 13150168, at *2 (M.D. Fla. June 14, 2011)). Relatedly, Defendant's request (even if appropriate, which it is not), does not include any proposal for the protection of privacy rights, protection of privileged information, and the need to separate out and ignore non-relevant information.

So too with the IP address information. Defendant's story is that someone visited a third party website using the IP address 54.149.123.160 and provided the Plaintiff's telephone number and consented for Exact Care to contact the Plaintiff from an internet connection with that IP address. There is no purpose or use in forensically examining, let alone copying, the Plaintiff's phone to seek evidence of use of an IP address that yet another independent and disinterested third party has confirmed was not assigned to anyone and thus could not have conducted the website visit alleged, as the Defendant claims. As Exhibit B reflects, the IP address through which the Defendant contends consent was obtained, 54.149.123.160, was operated by Amazon Web Services, who in turn assigned it to another customer, NetXposure. When Plaintiff propounded a subpoena on NetXposure, NetXposure confirmed that "NetX has never used the IP address identified in the Subpoena, nor has it assigned the same to anyone."

This raises the question of how Exact Care can claim that it has evidence of a website visit originating from that IP address, given that (1) it has not produced any non-hearsay and admissible evidence, such as a server log, showing that the website visit took place, which would be in its own records in any event, and (2) NetX has confirmed it did not use or assign the IP to anyone. Assuming NetX is telling the truth (which Plaintiff has no reason to doubt), that would render the website visit an impossibility. A website visit, let alone submission, requires a valid source and destination IP address. DARPA INTERNET PROTOCOL SPECIFICATION (RFC 791) sec. 1.4 (Sept. 1981), https://www.rfc-editor.org/rfc/rfc791.html ("The internet modules use the addresses carried in the internet header to transmit internet datagrams toward their destinations. The selection of a path for transmission is called routing."). That would be akin to claiming that one received an envelope from the mailman with the address field blank. Since a "court should not enter an order compelling a party to produce documents where the documents do not exist,"

*Wells v. JPC Equestrian, Inc.*, No. 3:13-CV-2575, 2014 WL 5641305, at *4 (M.D. Pa. Nov. 4, 2014), this Court should resist ordering a forensic copy of electronic devices for material that never would have existed.

Together, these decisions reflect a uniform consensus that the Defendant's motion to compel in this regard is due to be denied. Exact Care has not even begun to make the specific showing it is required for even a limited and delineated search of a specific device, including by showing that the information is likely on the device (it is not), that targeted and less intrusive discovery has been trailed and failed (it has, and has been successful), or that any imaging would be governed by a review, segregation, and use protocol. This is not to mention that the Request does not even begin to address common rules of e-discovery practice such as the Sedona Principles. The motion to compel should be denied.

Request for Production 26

As the Plaintiff has noted in his meet and confer correspondence, given that the TCPA is a remedial statute implicating significant personal privacy concerns, the Plaintiff's other call records are simply not relevant, and the information sought is clearly not proportional to the needs of the case. They include calls to family, friends, acquaintances, counsel, privileged calls, and other records of not only a highly-sensitive and personal nature. That being said, the Plaintiff was willing to discuss a narrower scope than the two years proposed by opposing counsel such as the days of the calls at issue. Defendant instead filed the instant motion. And in *Roth v. PTGMB LLC*, No. 1:20-CV-00231-SAB, 2020 WL 5820611, at *8 (E.D. Cal. Sept. 30, 2020), the Court refused to compel calling records from 2016 when the calls were made in 2019. Other courts have limited call records to some shorter period than the two years sought here, such as the day of the calls at issue. *See, e.g.*, *Kizer v. Starr Indem. & Liab. Co.*, No. CIV-18-846-D, 2019 WL

2017556, at *3 (W.D. Okla. May 6, 2019) (compelling production of 26 hours of telephone records to show negligence in an auto accident); *Clark v. Johnson*, No. 14-CV-582-JED-PJC, 2015 WL 4694045, at *3 (N.D. Okla. Aug. 6, 2015) (compelling a single hour of records to show negligence and divorce information); *Clay v. Lambert*, No. 17-CV-00085-PAB-MEH, 2017 WL 4755152, at *1 (D. Colo. Oct. 20, 2017) (quashing and modifying subpoena for call records to one day before to one day after an accident). Plaintiff remains willing to reevaluate a more narrow scope and produce such records upon entry of an appropriate protective order, but compelling almost two years' worth of calling history is patently overly broad.

## CONCLUSION

For the foregoing reasons, the motion should be denied in its entirety.

RESPECTFULLY SUBMITTED AND DATED this 11th day of September, 2025.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
PA Bar #333687
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing via ECF on September 11, 2025, which will automatically send a copy to all attorneys of record on the case.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.