# Exhibit 2

# Sherman v. Yahoo! Inc.

United States District Court for the Southern District of California

February 20, 2015, Decided; February 20, 2015, Filed

Case No. 13-CV-00041-GPC (WVG)

**Reporter**
2015 U.S. Dist. LEXIS 192206 *

RAFAEL DAVID SHERMAN and SUSAN PATHMAN, individually and on behalf of all others similarly situated, Plaintiffs, v. YAHOO! INC., a Delaware corporation, Defendant.

**Prior History:** Sherman v. Yahoo! Inc., 997 F. Supp. 2d 1129, 2014 U.S. Dist. LEXIS 13286 (S.D. Cal., Feb. 3, 2014)

**Counsel:** [*1] For Rafael David Sherman, individually and on behalf of all others similarly situated, Susan Pathman, individually and on behalf of all others similarly situated, Plaintiffs: Abbas Kazerounian LEAD ATTORNEY, Kazerounian Law Group, APC, Costa Mesa, CA USA; David James McGlothlin, Joshua B. Swigart, LEAD ATTORNEYS, Hyde & Swigart, San Diego, CA USA; Vincent Louis DiTommaso, LEAD ATTORNEY, PRO HAC VICE, DiTommaso Lubin, P.C., Oakbrook Terrace, IL USA; Jason A. Ibey, Mohammad Kazerouni, Kazerouni Law Group, APC, Costa Mesa, CA USA.

For Yahoo! Inc., a Delaware corporation, Defendant: Ian Charles Ballon, LEAD ATTORNEY, Greenberg Traurig LLP Santa Monica, CA USA; Justin Alexander Barton, Lori Chang, LEAD ATTORNEYS, Greenberg Traurig LLP, Los Angeles, CA USA; Nina D. Boyajian, LEAD ATTORNEY, Greenberg Traurig, LLP, Los Angeles, Ca.

**Judges:** Hon. William V. Gallo, United States Magistrate Judge.

**Opinion by:** William V. Gallo

## Opinion

**ORDER ON PLAINTIFFS' BRIEF REGARDING DISCOVERY DISPUTE, YAHOO! INC.'S BRIEF IN OPPOSITION TO PLAINTIFF SUSAN PATHMAN'S REQUEST FOR PRODUCTION NO. 7 FOR ALL DOCUMENTS DEMONSTRATING PRIOR EXPRESS CONSENT FOR ALL MEMBERS OF THE PUTATIVE CLASS, AND YAHOO! INC.'S BRIEF IN SUPPORT OF REQUEST FOR PRODUCTION [*2] NO. 21 FOR A FORENSIC IMAGE OF PLAINTIFF SUSAN PATHMAN'S MOBILE PHONE**

**(Doc. Nos. 100, 101, 102)**

**I. INTRODUCTION**

Before the Court are Plaintiffs' Brief Regarding Discovery Dispute ("Plaintiffs' Brief"), Yahoo! Inc.'s Brief in Opposition to Plaintiff Susan Pathman's Request for Production No. 7 for All Documents Demonstrating Prior Express Consent for All Members of the Putative Class ("Defendant's First Brief"), and Yahoo! Inc's Brief in Support of Request for Production No. 21 for a Forensic Image of Plaintiff Susan Pathman's Mobile Phone ("Defendant's Second Brief") (collectively, "Parties' Briefs"). On January 30, 2015, this Court held a telephonic conference

("Conference") with counsel for Ms. Susan Pathman ("Plaintiff"), the sole remaining plaintiff,[1] (Doc. No. 106), and Yahoo! Inc. ("Yahoo" or "Defendant"), so as to consider ten separate discovery disputes generated by the Parties' interrogatories and requests for production (individually, "RFP," and collectively, "RFPs").[2] (Doc. No. 96 at 1-2.) While the Court resolved seven of these disagreements, it ordered further briefing-the Parties' Briefs-as to three. (Id. at 2, 4-5.) Having now weighed these documents, as detailed below, this Court ORDERS **[*3]** (1) Defendant to comply with Plaintiff's RFP Number 7 and (2) Plaintiff to provide its mobile phone to Defendant for its forensic imaging in response to Defendant's RFP Number 22 in accordance with the specific conditions set forth in this order's conclusion. See infra Part III.

## II. BACKGROUND

### A. Procedural Background

On September 30, 2014, Plaintiff filed an amended complaint for damages, injunctive relief, and any other legal or equitable remedies against Defendant for purportedly "negligently and/or intentionally contacting Plaintiff[] on Plaintiff[']s[] cellular phone, in violation of the Telephone Consumer Protection Act," thereby violating her "privacy." (Doc. No. 64 ¶ 1.) Subject to some exceptions, the Telephone Consumer Protection Act of 1991 ("TCPA"), codified in 47 U.S.C. § 227 et seq., principally prohibits four practices. Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 132 S. Ct. 740, 745, 181 L. Ed. 2d 881 (2012). Most relevantly, its second paragraph "makes it unlawful to use an automatic telephone dialing system or an artificial or prerecorded voice message, without the prior express consent of the called party, to call any . . . cellular telephone, or other service for which the receiver is charged for the call." Id. (construing 47 U.S.C. § 227(b)(1)(A)(iii)); accord Nigro v. Mercantile Adjustment Bureau, LLC, 769 F.3d 804, 805 (2d Cir. 2014). Supported by consumer groups and many telephone **[*4]** customers, the TCPA was designed "to protect the public from automated telephone calls," legislatively denounced as "an invasion of privacy, an impediment to interstate commerce, and a disruption to essential public safety services." S. REP. 102-178 at 3, 5 (1991); see also Labau v. Cellco P'ship, No. 2:13-CV-00844-MCE-EFB, 2014 U.S. Dist. LEXIS 89602, at *7, 2014 WL 2987767, at *3 (E.D. Cal. June 30, 2014) (citing to the full Report of the Senate Committee on Commerce, Science, and Transpiration).[3]

### B. Dispute Regarding Plaintiff's RFP Number 7

During the course of discovery, Plaintiff submitted a number of RFPs.[4] The seventh asked Defendant to "[p]roduce the DOCUMENTS that YOU used to determine whether the persons contacted by YOU via SMS text message through YOUR PC2SMS platform had provided their "prior express consent", as that term is used in 47 U.S.C. Section 227(b)(1)(A), prior to making any attempt to contact those numbers, including but not limited to any electronic notations in the outgoing text message lists that the contacted party provided "prior express consent", and including all DOCUMENTS that YOU may rely on at trial or other hearing in this case to establish 'prior express consent' as provided to YOU since four years prior the filing of the [First Amended Complaint] in this action." (Doc. **[*5]** No. 96 at 2 (capitalization in original); Doc. No. 100 at 2 (capitalization in original).) Both in paper form and by spoken word, Defendant thereafter protested.

---

[1] As Mr. Sherman was dismissed from this proceeding on February 5, 2015, (Doc. No. 106), this order will employ the singular "Plaintiff" unless the plural form "Plaintiffs" had been used in any docketed document's formal title.

[2] Newer disputes have arisen since these documents' filing. Those disputes will be the subject of a conference to be held at 11:00 a.m. on February 20, 2015.

[3] The Westlaw citation contains a different filing date (July 1, 2014).

[4] The disputes engendered by Plaintiff's RFP Numbers 6 and 22 and Interrogatory Number 14 were decided by this Court on January 30, 2015. (Doc. No. 96 at 2, 3-4.)

In renewing this seventh RFP, Plaintiff enumerates ten reasons. First, this Court has "previously ordered production of prior express evidence as to the putative class prior to a motion for class certification"; such "consent documents" have generally been found to be "clearly relevant," a history that underscores the relevance and importance of the documents encompassed by RFP Number 7 in this TCPA litigation. (Doc. No. 100 at 2.) Second, since Plaintiff has agreed to limit the request to the month of May 2013, it has "significantly reduce[d] any burden on Yahoo," and Defendant has not yet demonstrated how "the benefit of the request is outweighed by the burden," as Rule 26(b) mandates.[5] (Id. at 2.) Third, despite Defendant's claims of technological impracticability, Plaintiff is not actually "asking Yahoo to perform a reverse phone number lookup on the cell phone numbers to which it sent the SPAM text message at issue . . . nor is Ms. Pathman asking the Defendant to cross reference those numbers against the Neustar database . . . to determine [*6] if the telephone numbers are ported"; instead, "all that Defendant would need to do is compare the cell phone numbers in the notification database . . . with defendant's other databases," a task that would, at worst, require the creation of a software program. (Id. at 3-4.) Fourth, since the burden of proving the affirmative defense of prior express consent falls upon Defendant, it should be compelled to perform such matching now rather than being allowed to "wait[] to oppose a motion for class certification and claiming that such task is not reasonably possible." (Id. at 4.) Fifth, in its original response to RFP Number 7, Defendant did technically object, but it then added, "Subject to and without waiving the foregoing general and specific objections . . . ." (Id.) On more than one occasion, such responses have been deemed "confusing" and "misleading" by this Court, their utilization effecting a waiver of the objection first raised. (Id.) Sixth (and relatedly), both because Defendant castigated RFP Number 7 as "overboard" and unduly burdensome without explaining how or why Plaintiff's request could be so branded and because such responses have been deemed improper by this and other courts for their [*7] almost nugatory nature, these objections must also be struck as insufficient. (Id. at 5.) Seventh, Defendant's objection that this RFP seeks a legal conclusion is inaccurate, as Plaintiff is only demanding documents that will be used to support Defendant's affirmative consent defense and not for Defendant to prove such consent's prior provision,[6] and cannot constitute a valid reason to refuse an RFP. (Id. at 5-6.) Eighth, Defendant demurred on the basis that certain words and phrases-"contacted," "attempted to contact," "electronic notations," and "outgoing text message lists"-were vague and ambiguous. (Id. at 6.) These terms cannot be so described, Plaintiff insists, as they possess "standard dictionary meaning[s]." (Id. ) Ninth, Defendant objected on the basis of the potential information's confidential status; Plaintiff counters by emphasizing the reality of a broad protective order. (Id.) Finally, Defendant maintained that the relevant texts were not sent by Yahoo but rather by Plaintiff. (Id.) Whatever their truth, Plaintiff denies that this assertion can be "an excuse to withhold evidence of an affirmative defense." (Id.)

In Defendant's Second Brief, Defendant reiterates four general rationales underlying [*8] its refusal to reply to Plaintiff's RFP Number 7, characterized as "***not*** a straightforward factual inquiry that can be answered by a simple document search." (Doc. No. 102 at 2 (emphasis added).) First, Yahoo's PC2SMS records phone numbers, not names or Yahoo identifications, so that it has no feasible way of matching these phone numbers to the particular users who allegedly provided their express consent. (Id. at 3-4.) As such, "[b]ased on the records maintained by Yahoo in the ordinary course of business, Yahoo cannot feasibly and fully evaluate how each recipient of a notification message consented to be contacted via Yahoo's PC2SMS system." (Id. at 2.) Second, reverse lookup services, the very ones so championed by Plaintiff in their filings and the Parties' meetings, cannot assist in identifying whether a recipient consented to receive a notification message without being "cost and time-prohibitive" and may "in some instances fail to produce any helpful information." (Id. at 4-5.) Third, "[w]ithout a personalized inquiry, Yahoo cannot definitively state whether any recipient did not provide consent to receive a notification message." (Id. at 6.) Yahoo adds: "The absence of documents in Yahoo's databases does not [*9] prove that Yahoo does not have a valid consent defense." (Id.) Finally, because Yahoo has not yet had the opportunity to

---

[5] Unless otherwise noted, "Rule" refers to the Federal Rules of Civil Procedure throughout this order.

[6] Plaintiff goes a bit too far when it writes, "Ms. Pathman is not asking Yahoo to admit here that it has no consent evidence." (Doc. No. 100 at 6.) Yahoo may, in fact, have much such evidence. Neither this Court nor Plaintiff definitely know.

depose Pathman, it would "be unreasonable to prevent . . . [it] from offering evidence it obtains at a later date when plaintiffs still owe Yahoo discovery." (Id. at 6 n.5.)[7]

### C. Dispute Regarding Defendant's RFP Number 21

In its twenty-first RFP,[8] Yahoo sought "[a] forensic image of the cellular telephone on which You allege that You received the Messages referenced in paragraph 18-19 of the Amended Complaint." (Doc. No. 96 at 4; Doc. No. 101 at 2.) Plaintiff has denounced this request as "not relevant, vague and ambiguous, overbroad, unduly burdensome, and invaded plaintiff's right to privacy."[9] (Doc. No. 101 at 2.) During the Conference, Plaintiff apparently regrouped and distilled these objections, insisting that the imaging would be expensive, intrusive, and burdensome. (Doc. No. 96 at 4.) In general, both in other filed papers and specifically in Defendants' First Brief, Yahoo presents four discrete counters. First, "[d]ata retrieved from . . . [a phone's] forensic imaging - data that is no longer available to plaintiff and/or that plaintiff may have forgotten about - may reveal **[*10]** critical information, pertaining to plaintiff's consent to receive the text messages at issue," (Doc. No. 101 at 3); thus, forensic imaging may net relevant and discoverable electronically stored information as broadly defined by Rule 26. Second, forensic imaging is likely to be "fast and unobtrusive," taking no more than a few hours and possible to "be performed at a location of [P]laintiff's convenience, including her home or attorney's offices, or wherever she prefers." (Id. at 3.) Logically, the speed of this imaging depends on the phone model, the forensic software or hardware necessary, and the device's passcode, if one exists. (Id. at 2.) Third, in spite of "the fairly minimal cost this imaging would be for [P]laintiff, Yahoo is willing to pay for the cost . . . pursuant to the protocol set forth in the concurrently filed Declaration of Jonathan Karchmer." (Id. at 3.) Finally, as already mandatory per judicial order, (Doc No. 94), Defendant will "treat the material obtained from the forensic imaging as Confidential." (Doc. No. 101 at 3.)

## III. DISCUSSION

### A. Resolution of Dispute Regarding Plaintiff's RFP Number 7

Though the Court acknowledges the potential difficulties involved in satisfying Plaintiffs's RFP **[*11]** Number 7, it is not persuaded by Defendant's Second Brief for four reasons.[10]

First, considering Plaintiff has now limited the coverage of RFP Number 7 to May 2013 only and not "the 4-year class period," (Doc. No. 102 at 2), the financial and administrative onus of compliance has been dramatically minimized. Though it may still be considerable, it by definition can no longer be as substantial, and it is this reduced cost that matters under Rule 26(b)(2). SHIRA A. SCHEINDLIN & DANIEL J. CAPA, ELECTRONIC DISCOVERY AND DIGITAL EVIDENCE 314 (2009) ("Costshifting is available even for accessible data based on the proportionality factors set forth in Rule 26(b)(2)(C)."); accord, e.g., Zeller v. South Cent. Emergency Med. Servs., No. 1:13-CV-2584, 2014 U.S. Dist. LEXIS 68940, at *25 n.6, 2014 WL 2094340, at *9 n.6 (M.D. Pa. May 20, 2014); Cochran v. Caldera Med., Inc., 2014 U.S. Dist. LEXIS 55447, at *8, 2014 WL 1608664, at *3 (E.D. Pa. Apr. 22, 2014).

---

[7] Yahoo took Plaintiff's deposition on February 7, 2015.

[8] The disputes created by Defendant's RFP Numbers 6, 7, 8, and 9 were the subject of this Court's prior order. (Doc. No. 96 at 4-5.)

[9] It is worth noting that Plaintiff thus peppered its objections with the same kind of generic and boilerplate language for which it attacks Defendant. Plaintiff should not forget an old saw: "[I]t is simply the pot calling the kettle black." Coats v. Penrod Drilling Corp., 61 F.3d 1113, 1155 n.24 (5th Cir. 1995).

[10] In the absence of concerns regarding venerable privileges, even one of these reasons may have been sufficient to support this Court's order. Nonetheless, for completeness, this Court will specify its conclusion's major buttresses.

Case 2:25-cv-01843-MMB   Document 46-2   Filed 09/18/25   Page 6 of 19

Page 5 of 7
2015 U.S. Dist. LEXIS 192206, *11

Second, Defendant's response, which made use of the ever prevalent "subject to and without waiving the foregoing general and specific objections," (Doc. No. 100 at 4), ignored both a warning articulated in this Court's Chambers Rules-"[R]esponses to discovery requests that are 'subject to' and 'without waiving objections' are improper, the objections are deemed waived, and the response to discovery request stands," CHAMBERS RULES at 10, available at https://www.casd.uscourts.gov/Rules/SitePages/Home.aspx- [*12] and sundry other judicial opinions, see, e.g., Haeger v. Goodyear Tire & Rubber Co., 906 F. Supp. 2d 938, 976-78 (D. Ariz. 2012); Leisure Hospitality, Inc. v. Hunt Props., Inc., No. 09-CV-272-GKF-PJC, 2010 U.S. Dist. LEXIS 93680, at *33-34, 2010 WL 3522444, at *3 (N.D. Okla. Sept. 8, 2010).

Third, applying a principle enunciated in scores of cases, this Court finds most of Defendant's objections, such as "overbroad" and "unduly burdensome," (Doc. No. 100 at 5-6), to be the kind of unsubstantiated boilerplate prohibited by Rule 34 and to have thus amounted to a complete waiver of any legitimate opposition to RFP Number 7. Mancia v Mayflower Textile Servs. Co., 253 F.R.D. 354, 358-59 (D. Md. 2008) (collecting cases and concluding that "boilerplate objections that a request for discovery is 'overbroad and unduly burdensome, and not reasonably calculated to lead to the discovery of material admissible in evidence' . . . persist despite a litany of decisions from courts, including this one, that such objections are improper unless based on particularized facts" at the time made).

Fourth, Defendant's assertion that certain common words were themselves "vague" and "ambiguous," that the response required a legal conclusion, and that its confidentiality may be endangered by a thorough response are bereft of substantial merit, needlessly technical and argumentative. Whether in an RFP or in daily conversation, most words retain their common denotation, [*13] and confusion regarding a technical meaning does not thereby excuse a party from attempting to honor a request coached in the common tongue. Certainly, "contacted," "electronic notations," and "outgoing text messages list" would not strike even a casual reader as so dense and fraught with nuance as to be deemed vague.[11] At the very least, if Defendant had some basis for such a conclusion, the proper response would have been to demand clarification, not ignore a dictionary. Similarly, a legal conclusion need not be drawn-a jury or a judge will do so later-for Defendant to tender documents it may have "used" to identify those persons who had given prior consent; they will not themselves establish whether that consent was given as a matter of law. Any reliance on confidentiality is, of course, inapposite, for, as Defendant itself repeats, (Doc. No. 102 at 3), a protective order will govern any information obtained via any RFP, including Plaintiff's seventh one. In sum, the Court sees no merit in Defendant's refusal to response to Plaintiff's RFP Number 7.

Even as it so decides, this Court takes notice of Plaintiffs' language and adds one further observation. Admittedly, this Court now orders [*14] Defendant to provide any documents responsive to RFP Number 7, in part so as to ensure trial is "less a game of blindman's bluff." United States v. Procter & Gamble, 356 U.S. 677, 682, 78 S. Ct. 983, 986, 2 L. Ed. 2d 1077 (1958).[12] However, once Defendant performs a reasonable search of its files in a good faith effort to satisfy its duties, as attested to under the pains and penalties of perjury, this Court will not bar Defendant from using any other documents subsequently obtained that were not uncovered during the course of their first diligent query. Indeed, Rule 26(e)(1) commands a party "to supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . ." FED. R. CIV. P. 26(e)(1); see also Trask v. Olin Corp., 298 F.R.D. 244, 258 (W.D. Pa. 2014) (explicating Rule 26(e)). It is the *failure* to do so that renders a party liable for sanctions, FED. R. CIV. P. 37, and the very kind of interest in just adjudication that Plaintiff now emphasizes, (Doc. No. 100 at 4), would only strengthen Defendant's own case for this court to allow for prospective supplementation. In regards to the dangers Plaintiff seemingly conjectures, safeguards exist, [*15] including sanctions in the form of attorneys' fees, Royal Ins. v. Lynnhaven Marine Boatel, Inc., 216 F. Supp. 2d 562, 567 (E.D. Va. 2002) (summarizing the relevant doctrine), upon a concrete and convincing showing made upon this possibility's actual

---

[11] Such disputes are more properly the province of lexicographers, not lawyers.

[12] Plaintiff both cites the wrong page and incorrectly transcribes the relevant quote. (Doc. No. 100 at 4.)

realization. Thus, even as Defendant is ordered to respond in full to RFP Number 7, this Court chooses not to foist upon a limitation inconsistent with the Rules' prevailing tenor. With this precept in mind, this Court will not prohibit Defendant from supplementation as to this issue upon the unearthing of relevant documents after the completion of a most assiduous search.

### B. Resolution of Dispute Regarding Defendant's RFP Number 21

In contrast, this Court finds Plaintiff's opposition to Defendant's RFP Number 21 without merit and agrees with Defendant that Plaintiff must submit her phone for forensic imaging, its reasoning far simpler. As both Parties note, a confidentiality order protects Plaintiff's privacy interests in full, and moreover, Defendant has offered to bear the full cost. Even if the forensic imaging takes more than an hour, even if it takes three or four, this Court cannot discern any real burden in such a temporally limited deprivation.[13] This federal suit is Plaintiff's own, one inaugurated by her own complaint **[*16]** and initiated based on Defendant's purportedly unauthorized messaging to the very phone Defendant now hopes to image. It is simply unreasonable for her to now contend that she can rightfully and adequately represent millions—and, if successful, earn millions—but that she will not submit to the minor inconvenience of lacking access to her phone for a handful of hours. This forensic imaging, so minor in objective inconvenience and conceivably divulging relevant and discoverable information on a key claim and issue (jurisdiction), cannot be justly denied as "unduly burdensome."

Additionally, to the extent the views of Plaintiff's expert are relevant and technically correct,[14] they do not in fact wholeheartedly endorse Plaintiff's resistance. Instead, his comments establish that any predications regarding the length of a phone's forensic imaging can be notoriously imprecise in the absence of data regarding the phone type and model. But, in this Court's view, such information could be sent to Defendant's counsel prior to any imaging, thereby reducing the time spent picking and utilizing the right program. In other words, any delay in knowing which program to use to undertake this forensic **[*17]** imaging promptly yet thoroughly is a dilatoriness that could easily be dispelled by Plaintiff offering the precise specs of a phone that she herself owns. That burden is equally light in this Court's opinion.

### IV. CONCLUSION

Based on the foregoing analysis, this Court orders as follows:

First, Defendant is to respond to Plaintiff's RFP Number 7, as limited to May 2013, to the full extent possible. Defendant is to produce these documents **on or before 5:00 P.M., on February 25, 2015**.

Second, Plaintiff is to comply in full with Plaintiff's RFP Number 21. Moreover, Plaintiff must provide Defendant with the relevant phone's manufacturing and program specifications so Defendant can ensure the proper programs are ready upon the phone's provision. This information is to be submitted by Plaintiff's counsel to Defendant's counsel **no later than 12:00 p.m., on February 22, 2015**. The imaging shall occur **no later than 5:00 p.m., on February 25, 2015**, in a location mutually agreed upon by the Parties or, if no such agreement is reached, in the offices of Plaintiff's counsel.

IT IS SO ORDERED.

DATED: February 20, 2015

---

[13] In fact, Plaintiff's counsel has orally represented to this Court that part of the reason such imaging once posed a burden was that Plaintiff was awaiting calls from employers in December 2014 and January 2015. Those two months have long since passed.

[14] The Court does not take kindly to Defendant's brief sketch of Plaintiff's expert, who "lacks expertise in this field and is not even college educated." (Doc. No. 101 at 2.) The first point is more than acceptable; arguably, all lawyers should so asseverate as to their opponent's chosen specialist. The second is gratuitously derogatory; geniuses of all kinds have boasted no college degree.

/s/ William V. Gallo

Hon. William V. Gallo

U.S. Magistrate Judge

---

**End of Document**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAFAEL DAVID SHERMAN and SUSAN PATHMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YAHOO! INC., a Delaware corporation<br><br>Defendant. | Case No. 13-CV-00041-GPC (WVG)<br><br>**ORDER ON PLAINTIFFS' BRIEF REGARDING DISCOVERY DISPUTE, YAHOO! INC.'S BRIEF IN OPPOSITION TO PLAINTIFF SUSAN PATHMAN'S REQUEST FOR PRODUCTION NO. 7 FOR ALL DOCUMENTS DEMONSTRATING PRIOR EXPRESS CONSENT FOR ALL MEMBERS OF THE PUTATIVE CLASS, AND YAHOO! INC.'S BRIEF IN SUPPORT OF REQUEST FOR PRODUCTION NO. 21 FOR A FORENSIC IMAGE OF PLAINTIFF SUSAN PATHMAN'S MOBILE PHONE**<br><br>**(Doc. Nos. 100, 101, 102)** |

**I.     INTRODUCTION**

Before the Court are Plaintiffs' Brief Regarding Discovery Dispute ("Plaintiffs' Brief"), Yahoo! Inc.'s Brief in Opposition to Plaintiff Susan Pathman's Request for Production No. 7 for All Documents Demonstrating Prior Express Consent for All Members of the Putative Class ("Defendant's First Brief"), and Yahoo! Inc's Brief in Support of Request for Production No. 21 for a Forensic Image of Plaintiff Susan Pathman's Mobile Phone ("Defendant's Second Brief") (collectively, "Parties' Briefs"). On January 30, 2015, this Court held a telephonic conference ("Conference") with

counsel for Ms. Susan Pathman ("Plaintiff"), the sole remaining plaintiff,[1] (Doc. No. 106), and Yahoo! Inc. ("Yahoo" or "Defendant"), so as to consider ten separate discovery disputes generated by the Parties' interrogatories and requests for production (individually, "RFP," and collectively, "RFPs").[2] (Doc. No. 96 at 1–2.) While the Court resolved seven of these disagreements, it ordered further briefing–the Parties' Briefs–as to three. (Id. at 2, 4–5.) Having now weighed these documents, as detailed below, this Court ORDERS (1) Defendant to comply with Plaintiff's RFP Number 7 and (2) Plaintiff to provide its mobile phone to Defendant for its forensic imaging in response to Defendant's RFP Number 22 in accordance with the specific conditions set forth in this order's conclusion. See infra Part III.

## II. BACKGROUND

### A. Procedural Background

On September 30, 2014, Plaintiff filed an amended complaint for damages, injunctive relief, and any other legal or equitable remedies against Defendant for purportedly "negligently and/or intentionally contacting Plaintiff[] on Plaintiff[']s[] cellular phone, in violation of the Telephone Consumer Protection Act," thereby violating her "privacy." (Doc. No. 64 ¶ 1.) Subject to some exceptions, the Telephone Consumer Protection Act of 1991 ("TCPA"), codified in 47 U.S.C. § 227 *et seq.*, principally prohibits four practices. Mims v. Arrow Fin. Servs., LLC, 132 S. Ct. 740, 745, 181 L. Ed. 2d 881 (2012). Most relevantly, its second paragraph "makes it unlawful to use an automatic telephone dialing system or an artificial or prerecorded voice message, without the prior express consent of the called party, to call any . . . cellular telephone, or other service for which the receiver is charged for the call." Id. (construing 47 U.S.C. § 227(b)(1)(A)(iii)); accord Nigro v. Mercantile Adjustment Bureau, LLC, 769 F.3d 804,

---

[1] As Mr. Sherman was dismissed from this proceeding on February 5, 2015, (Doc. No. 106), this order will employ the singular "Plaintiff" unless the plural form "Plaintiffs" had been used in any docketed document's formal title.

[2] Newer disputes have arisen since these documents' filing. Those disputes will be the subject of a conference to be held at 11:00 a.m. on February 20, 2015.

805 (2d Cir. 2014). Supported by consumer groups and many telephone customers, the TCPA was designed "to protect the public from automated telephone calls," legislatively denounced as "an invasion of privacy, an impediment to interstate commerce, and a disruption to essential public safety services." S. REP. 102-178 at 3, 5 (1991); see also Labau v. Cellco P'ship, No. 2:13-CV-00844-MCE-EFB, 2014 U.S. Dist. LEXIS 89602, at *7, 2014 WL 2987767, at *3 (E.D. Cal. June 30, 2014) (citing to the full Report of the Senate Committee on Commerce, Science, and Transpiration).[3/]

**B.  Dispute Regarding Plaintiff's RFP Number 7**

During the course of discovery, Plaintiff submitted a number of RFPs.[4/] The seventh asked Defendant to "[p]roduce the DOCUMENTS that YOU used to determine whether the persons contacted by YOU via SMS text message through YOUR PC2SMS platform had provided their "prior express consent", as that term is used in 47 U.S.C. Section 227(b)(a)(A), prior to making any attempt to contact those numbers, including but not limited to any electronic notations in the outgoing text message lists that the contacted party provided "prior express consent", and including all DOCUMENTS that YOU may rely on at trial or other hearing in this case to establish 'prior express consent' as provided to YOU since four years prior the filing of the [First Amended Complaint] in this action." (Doc. No. 96 at 2 (capitalization in original); Doc. No. 100 at 2 (capitalization in original).) Both in paper form and by spoken word, Defendant thereafter protested.

In renewing this seventh RFP, Plaintiff enumerates ten reasons. First, this Court has "previously ordered production of prior express evidence as to the putative class prior to a motion for class certification"; such "consent documents" have generally been found to be "clearly relevant," a history that underscores the relevance and importance of the documents encompassed by RFP Number 7 in this TCPA litigation. (Doc. No. 100 at 2.)

---

[3/] The Westlaw citation contains a different filing date (July 1, 2014).

[4/] The disputes engendered by Plaintiff's RFP Numbers 6 and 22 and Interrogatory Number 14 were decided by this Court on January 30, 2015. (Doc. No. 96 at 2, 3–4.)

Second, since Plaintiff has agreed to limit the request to the month of May 2013, it has "significantly reduce[d] any burden on Yahoo," and Defendant has not yet demonstrated how "the benefit of the request is outweighed by the burden," as Rule 26(b) mandates.[5] (Id. at 2.) Third, despite Defendant's claims of technological impracticability, Plaintiff is not actually "asking Yahoo to perform a reverse phone number lookup on the cell phone numbers to which it sent the SPAM text message at issue . . . nor is Ms. Pathman asking the Defendant to cross reference those numbers against the Neustar database . . . to determine if the telephone numbers are ported"; instead, "all that Defendant would need to do is compare the cell phone numbers in the notification database . . . with defendant's other databases," a task that would, at worst, require the creation of a software program. (Id. at 3–4.) Fourth, since the burden of proving the affirmative defense of prior express consent falls upon Defendant, it should be compelled to perform such matching now rather than being allowed to "wait[] to oppose a motion for class certification and claiming that such task is not reasonably possible." (Id. at 4.) Fifth, in its original response to RFP Number 7, Defendant did technically object, but it then added, "Subject to and without waiving the foregoing general and specific objections . . . ." (Id.) On more than one occasion, such responses have been deemed "confusing" and "misleading" by this Court, their utilization effecting a waiver of the objection first raised. (Id.) Sixth (and relatedly), both because Defendant castigated RFP Number 7 as "overboard" and unduly burdensome without explaining how or why Plaintiff's request could be so branded and because such responses have been deemed improper by this and other courts for their almost nugatory nature, these objections must also be struck as insufficient. (Id. at 5.) Seventh, Defendant's objection that this RFP seeks a legal conclusion is inaccurate, as Plaintiff is only demanding documents that will be used to support Defendant's affirmative consent defense and not for Defendant to prove such consent's prior

---

[5] Unless otherwise noted, "Rule" refers to the Federal Rules of Civil Procedure throughout this order.

provision,[6] and cannot constitute a valid reason to refuse an RFP. (Id. at 5–6.) Eighth, Defendant demurred on the basis that certain words and phrases–"contacted," "attempted to contact," "electronic notations," and "outgoing text message lists"–were vague and ambiguous. (Id. at 6.) These terms cannot be so described, Plaintiff insists, as they possess "standard dictionary meaning[s]." (Id.) Ninth, Defendant objected on the basis of the potential information's confidential status; Plaintiff counters by emphasizing the reality of a broad protective order. (Id.) Finally, Defendant maintained that the relevant texts were not sent by Yahoo but rather by Plaintiff. (Id.) Whatever their truth, Plaintiff denies that this assertion can be "an excuse to withhold evidence of an affirmative defense." (Id.)

In Defendant's Second Brief, Defendant reiterates four general rationales underlying its refusal to reply to Plaintiff's RFP Number 7, characterized as "***not*** a straightforward factual inquiry that can be answered by a simple document search." (Doc. No. 102 at 2 (emphasis added).) First, Yahoo's PC2SMS records phone numbers, not names or Yahoo identifications, so that it has no feasible way of matching these phone numbers to the particular users who allegedly provided their express consent. (Id. at 3–4.) As such, "[b]ased on the records maintained by Yahoo in the ordinary course of business, Yahoo cannot feasibly and fully evaluate how each recipient of a notification message consented to be contacted via Yahoo's PC2SMS system." (Id. at 2.) Second, reverse lookup services, the very ones so championed by Plaintiff in their filings and the Parties' meetings, cannot assist in identifying whether a recipient consented to receive a notification message without being "cost and time-prohibitive" and may "in some instances fail to produce any helpful information." (Id. at 4–5.) Third, "[w]ithout a personalized inquiry, Yahoo cannot definitively state whether any recipient did not provide consent to receive a notification message." (Id. at 6.) Yahoo adds: "The absence of documents in Yahoo's databases does not prove that Yahoo does not have a valid

---

[6] Plaintiff goes a bit too far when it writes, "Ms. Pathman is not asking Yahoo to admit here that it has no consent evidence." (Doc. No. 100 at 6.) Yahoo may, in fact, have much such evidence. Neither this Court nor Plaintiff definitely know.

1 consent defense." (Id.) Finally, because Yahoo has not yet had the opportunity to depose
Pathman, it would "be unreasonable to prevent . . . [it] from offering evidence it obtains
at a later date when plaintiffs still owe Yahoo discovery." (Id. at 6 n.5.)[7]

**C.     Dispute Regarding Defendant's RFP Number 21**

In its twenty-first RFP,[8] Yahoo sought "[a] forensic image of the cellular
telephone on which You allege that You received the Messages referenced in paragraph
18-19 of the Amended Complaint." (Doc. No. 96 at 4; Doc. No. 101 at 2.) Plaintiff has
denounced this request as "not relevant, vague and ambiguous, overbroad, unduly
burdensome, and invaded plaintiff's right to privacy."[9] (Doc. No. 101 at 2.) During the
Conference, Plaintiff apparently regrouped and distilled these objections, insisting that
the imaging would be expensive, intrusive, and burdensome. (Doc. No. 96 at 4.) In
general, both in other filed papers and specifically in Defendants' First Brief, Yahoo
presents four discrete counters. First, "[d]ata retrieved from . . . [a phone's] forensic
imaging - data that is no longer available to plaintiff and/or that plaintiff may have
forgotten about - may reveal critical information, pertaining to plaintiff's consent to
receive the text messages at issue," (Doc. No. 101 at 3); thus, forensic imaging may net
relevant and discoverable electronically stored information as broadly defined by Rule
26. Second, forensic imaging is likely to be "fast and unobtrusive," taking no more than a
few hours and possible to "be performed at a location of [P]laintiff's convenience,
including her home or attorney's offices, or wherever she prefers." (Id. at 3.) Logically,
the speed of this imaging depends on the phone model, the forensic software or hardware
necessary, and the device's passcode, if one exists. (Id. at 2.) Third, in spite of "the fairly
minimal cost this imaging would be for [P]laintiff, Yahoo is willing to pay for the cost . .

---

[7] Yahoo took Plaintiff's deposition on February 7, 2015.

[8] The disputes created by Defendant's RFP Numbers 6, 7, 8, and 9 were the subject of this Court's prior order. (Doc. No. 96 at 4–5.)

[9] It is worth noting that Plaintiff thus peppered its objections with the same kind of generic and boilerplate language for which it attacks Defendant. Plaintiff should not forget an old saw: "[I]t is simply the pot calling the kettle black." Coats v. Penrod Drilling Corp., 61 F.3d 1113, 1155 n.24 (5th Cir. 1995).

. pursuant to the protocol set forth in the concurrently filed Declaration of Jonathan Karchmer." (Id. at 3.) Finally, as already mandatory per judicial order, (Doc No. 94), Defendant will "treat the material obtained from the forensic imaging as Confidential." (Doc. No. 101 at 3.)

## III. DISCUSSION

### A. Resolution of Dispute Regarding Plaintiff's RFP Number 7

Though the Court acknowledges the potential difficulties involved in satisfying Plaintiffs's RFP Number 7, it is not persuaded by Defendant's Second Brief for four reasons.[10/]

First, considering Plaintiff has now limited the coverage of RFP Number 7 to May 2013 only and not "the 4-year class period," (Doc. No. 102 at 2), the financial and administrative onus of compliance has been dramatically minimized. Though it may still be considerable, it by definition can no longer be as substantial, and it is this reduced cost that matters under Rule 26(b)(2). SHIRA A. SCHEINDLIN & DANIEL J. CAPA, ELECTRONIC DISCOVERY AND DIGITAL EVIDENCE 314 (2009) ("Costshifting is available even for accessible data based on the proportionality factors set forth in Rule 26(b)(2)(c)."); accord, e.g., Zeller v. South Cent. Emergency Med. Servs., No. 1:13-CV-2584, 2014 U.S. Dist. LEXIS 68940, at *25 n.6, 2014 WL 2094340, at *9 n.6 (M.D. Pa. May 20, 2014); Cochran v. Caldera Med., Inc., 2014 U.S. Dist. LEXIS 55447, at *8, 2014 WL 1608664, at *3 (E.D. Pa. Apr. 22, 2014).

Second, Defendant's response, which made use of the ever prevalent "subject to and without waiving the foregoing general and specific objections," (Doc. No. 100 at 4), ignored both a warning articulated in this Court's Chambers Rules–"[R]esponses to discovery requests that are 'subject to' and 'without waiving objections' are improper, the objections are deemed waived, and the response to discovery request stands," CHAMBERS RULES at 10, available at

---

[10/] In the absence of concerns regarding venerable privileges, even one of these reasons may have been sufficient to support this Court's order. Nonetheless, for completeness, this Court will specify its conclusion's major buttresses.

https://www.casd.uscourts.gov/Rules/SitePages/Home.aspx– and sundry other judicial opinions, see, e.g., Haeger v. Goodyear Tire & Rubber Co., 906 F. Supp. 2d 938, 976–78 (D. Ariz. 2012); Leisure Hospitality, Inc. v. Hunt Props., Inc.,No. 09-CV-272-GKF-PJC, 2010 U.S. Dist. LEXIS 93680, at *33–34, 2010 WL 3522444, at *3 (N.D. Okla. Sept. 8, 2010).

Third, applying a principle enunciated in scores of cases, this Court finds most of Defendant's objections, such as "overbroad" and "unduly burdensome," (Doc. No. 100 at 5–6), to be the kind of unsubstantiated boilerplate prohibited by Rule 34 and to have thus amounted to a complete waiver of any legitimate opposition to RFP Number 7. Mancia v Mayflower Textile Servs. Co., 253 F.R.D. 354, 358–59 (D. Md. 2008) (collecting cases and concluding that "boilerplate objections that a request for discovery is 'overbroad and unduly burdensome, and not reasonably calculated to lead to the discovery of material admissible in evidence' . . . persist despite a litany of decisions from courts, including this one, that such objections are improper unless based on particularized facts" at the time made).

Fourth, Defendant's assertion that certain common words were themselves "vague" and "ambiguous," that the response required a legal conclusion, and that its confidentiality may be endangered by a thorough response are bereft of substantial merit, needlessly technical and argumentative. Whether in an RFP or in daily conversation, most words retain their common denotation, and confusion regarding a technical meaning does not thereby excuse a party from attempting to honor a request coached in the common tongue. Certainly, "contacted," "electronic notations," and "outgoing text messages list" would not strike even a casual reader as so dense and fraught with nuance as to be deemed vague.[11] At the very least, if Defendant had some basis for such a conclusion, the proper response would have been to demand clarification, not ignore a dictionary. Similarly, a legal conclusion need not be drawn–a jury or a judge will do so later–for Defendant to tender documents it may have "used" to identify those persons

---

[11] Such disputes are more properly the province of lexicographers, not lawyers.

Case 3:13-cv-02054-GPC-WVG Document 148-2 Filed 02/20/2015 Page 17 of 19
Case 3:10-cv-01401-JLS-WVG Document 113 Filed 02/18/15 PageID.2291 Page 9 of 11

who had given prior consent; they will not themselves establish whether that consent was given as a matter of law. Any reliance on confidentiality is, of course, inapposite, for, as Defendant itself repeats, (Doc. No. 102 at 3), a protective order will govern any information obtained via any RFP, including Plaintiff's seventh one. In sum, the Court sees no merit in Defendant's refusal to response to Plaintiff's RFP Number 7.

Even as it so decides, this Court takes notice of Plaintiffs' language and adds one further observation. Admittedly, this Court now orders Defendant to provide any documents responsive to RFP Number 7, in part so as to ensure trial is "less a game of blindman's bluff." United States v. Procter & Gamble, 356 U.S. 677, 682, 78 S. Ct. 983, 986, 2 L. Ed. 2d 1077 (1958).[12/] However, once Defendant performs a reasonable search of its files in a good faith effort to satisfy its duties, as attested to under the pains and penalties of perjury, this Court will not bar Defendant from using any other documents subsequently obtained that were not uncovered during the course of their first diligent query. Indeed, Rule 26(e)(1) commands a party "to supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . ." FED. R. CIV. P. 26(e)(1); see also Trask v. Olin Corp., 298 F.R.D. 244, 258 (W.D. Pa. 2014) (explicating Rule 26(e)). It is the *failure* to do so that renders a party liable for sanctions, FED. R. CIV. P. 37, and the very kind of interest in just adjudication that Plaintiff now emphasizes, (Doc. No. 100 at 4), would only strengthen Defendant's own case for this court to allow for prospective supplementation. In regards to the dangers Plaintiff seemingly conjectures, safeguards exist, including sanctions in the form of attorneys' fees, Royal Ins. v. Lynnhaven Marine Boatel, Inc., 216 F. Supp. 2d 562, 567 (E.D. Va. 2002) (summarizing the relevant doctrine), upon a concrete and convincing showing made upon this possibility's actual realization. Thus, even as Defendant is ordered to respond in full to RFP Number 7, this Court chooses not to foist

---

[12/] Plaintiff both cites the wrong page and incorrectly transcribes the relevant quote. (Doc. No. 100 at 4.)

9

10-CV-01401-JLS-WVG

upon a limitation inconsistent with the Rules' prevailing tenor. With this precept in mind, this Court will not prohibit Defendant from supplementation as to this issue upon the unearthing of relevant documents after the completion of a most assiduous search.

**B.     Resolution of Dispute Regarding Defendant's RFP Number 21**

In contrast, this Court finds Plaintiff's opposition to Defendant's RFP Number 21 without merit and agrees with Defendant that Plaintiff must submit her phone for forensic imaging, its reasoning far simpler. As both Parties note, a confidentiality order protects Plaintiff's privacy interests in full, and moreover, Defendant has offered to bear the full cost. Even if the forensic imaging takes more than an hour, even if it takes three or four, this Court cannot discern any real burden in such a temporally limited deprivation.[13/] This federal suit is Plaintiff's own, one inaugurated by her own complaint and initiated based on Defendant's purportedly unauthorized messaging to the very phone Defendant now hopes to image. It is simply unreasonable for her to now contend that she can rightfully and adequately represent millions—and, if successful, earn millions—but that she will not submit to the minor inconvenience of lacking access to her phone for a handful of hours. This forensic imaging, so minor in objective inconvenience and conceivably divulging relevant and discoverable information on a key claim and issue (jurisdiction), cannot be justly denied as "unduly burdensome."

Additionally, to the extent the views of Plaintiff's expert are relevant and technically correct,[14/] they do not in fact wholeheartedly endorse Plaintiff's resistance. Instead, his comments establish that any predications regarding the length of a phone's forensic imaging can be notoriously imprecise in the absence of data regarding the phone type and model. But, in this Court's view, such information could be sent to Defendant's

---

[13/] In fact, Plaintiff's counsel has orally represented to this Court that part of the reason such imaging once posed a burden was that Plaintiff was awaiting calls from employers in December 2014 and January 2015. Those two months have long since passed.

[14/] The Court does not take kindly to Defendant's brief sketch of Plaintiff's expert, who "lacks expertise in this field and is not even college educated." (Doc. No. 101 at 2.) The first point is more than acceptable; arguably, all lawyers should so asseverate as to their opponent's chosen specialist. The second is gratuitously derogatory; geniuses of all kinds have boasted no college degree.

counsel prior to any imaging, thereby reducing the time spent picking and utilizing the right program. In other words, any delay in knowing which program to use to undertake this forensic imaging promptly yet thoroughly is a dilatoriness that could easily be dispelled by Plaintiff offering the precise specs of a phone that she herself owns. That burden is equally light in this Court's opinion.

## IV. CONCLUSION

Based on the foregoing analysis, this Court orders as follows:

First, Defendant is to respond to Plaintiff's RFP Number 7, as limited to May 2013, to the full extent possible. Defendant is to produce these documents **on or before 5:00 P.M., on February 25, 2015**.

Second, Plaintiff is to comply in full with Plaintiff's RFP Number 21. Moreover, Plaintiff must provide Defendant with the relevant phone's manufacturing and program specifications so Defendant can ensure the proper programs are ready upon the phone's provision. This information is to be submitted by Plaintiff's counsel to Defendant's counsel **no later than 12:00 p.m., on February 22, 2015**. The imaging shall occur **no later than 5:00 p.m., on February 25, 2015**, in a location mutually agreed upon by the Parties or, if no such agreement is reached, in the offices of Plaintiff's counsel.

IT IS SO ORDERED.

DATED: February 20, 2015

Hon. William V. Gallo
U.S. Magistrate Judge