## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LEON WEINGRAD,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>*v.*<br><br>**EXACT CARE PHARMACY, LLC,**<br><br>**CONVERSION FINDER, AND**<br><br>**JORDAN SOBLICK**<br><br>*Defendants.* | Case No.<br>2:25-cv-1843 |

## OPPOSITION TO DEFENDANT CONVERSION FINDER AND JORDAN SOBLICK'S MOTION TO DISMISS

Attempts by the robocalling industry to blame the victims of their calls for failing to allege "sufficient" facts to connect the callers to the illegal calls are nothing new. Trial and appellate courts have had little trouble rejecting such tactics. But now, it has come to this. Defendants Conversion Finder and Jordan Soblick make a bold assertion without the corresponding factual predicate: that the Plaintiff cannot establish that they placed the calls using highly illegal spoofed caller IDs, despite being transferred to Exact Care agents on several calls, and despite *Exact Care's own pleadings* belying Conversion Finder and Soblick's positions in their motions. For this reason, this Court, like nearly every other Court to consider similar motions, should reject it. The Plaintiff has plausibly alleged a case for direct liability at the pleadings stage entitling him to further discovery. It alleges specific dates and times and a predicate for the logical, well-pled allegation that Defendants were responsible for the calls. Those facts state claims for direct liability under the TCPA. Defendants' other reasons for dismissing or striking the class allegations fare no better and have likewise been rejected by this

1

very Court. The motion ought be denied.

## FACTUAL BACKGROUND

Starting on November 27, 2024 and continuing to at least March 7, 2025, the Plaintiff alleges he received at least 10 calls from the Defendants, at least 8 of which Plaintiff alleges originated from the moving Defendants here, selling Exact Care Pharmacy branded prescription medication services. At least 5 of those 8 calls came from what were demonstrably spoofed caller IDs, including one which was spoofed to the telephone number for Collins Aerospace, a US Government Defense Contractor. The calls were all connected to the moving Defendants, and by extension, Exact Care, based on common indicia shared throughout the calls. For example, on the first call, the Plaintiff received a call from someone claiming to be calling from Exact Care Pharmacy, and pitching home delivery medication services, Exact Care's line of business. Then, on December 7, a few days later, the Plaintiff received a missed call from 503-755-6487. This number happens to be one of the "spoofed" numbers that called him on February 28, almost three months later, but unsurprisingly the day after Plaintiff received multiple calls, each of which were transferred to representatives of Exact Care, and each of which used the same fake alias, "Healthcare Benefits." So too with the four calls the Plaintiff received the day prior, on February 27, each of which were uniquely spoofed, used that same alias, and during two of those calls during which the Plaintiff was transferred to representatives of Exact Care.

For what it's worth, Defendant Exact Care has pointed the finger at the moving Defendants, Conversion Finder and Soblick, as being responsible for *at least* two or three of the February 27th calls. Specifically, in support of its Motion to Bifurcate discovery, Defendant Exact Care's Senior Vice President of Compliance stated, under penalty of perjury, that Exact Care "receives referrals for new patients from . . . patient lead generating companies," whom it refers to as "vendors." (ECF No. 19-3 ¶ 4-6.) It provided forged recordings which were

purportedly provided to it by the moving Defendants. And discovery revealed that the vendor at issue in the calling conduct described in Paragraphs 7 through 10 of the Donnely declaration was the moving Defendants here, Conversion Finder and Mr. Soblick.

In response to those well-pled allegations, the moving Defendants, Conversion Finder and Soblick, have moved to dismiss on a generalized, conclusory denial that they had nothing to do with the calls. Soblick himself moves for dismiss for a purported lack of personal liability. And both Defendants move to strike the claims for injunctive relief. This response follows.

**LEGAL STANDARD**

Under Rule 12(b)(6), a court may dismiss a complaint that fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rather than require detailed pleadings, the Rules demand only a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give defendant fair notice of what the claim is and the grounds upon which it rests." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (cleaned up). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

In determining whether a claim is plausible, the court must "draw on its judicial experience and common sense." *Connelly*, 809 F.3d at 786–87. After identifying elements to set forth a claim and removing conclusory allegations, the Court must accept all well-pled factual allegations as true and determine if they give rise to relief. *Id.* A complaint may be dismissed only where it appears that there are not "enough facts to state a claim that is plausible on its face," not merely because the defendant proffers some contrary facts. *Twombly*, 550 U.S. at 570.

The standards for 12(b)(1) challenges for a lack of subject matter jurisdiction are also well-settled in this circuit. Notably, there exist two types of 12(b)(1) challenges, each with their corresponding standards: facial and factual challenges. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Here, Defendants have submitted no additional evidence in order to support its contention that the injunctive relief claims should be dismissed. In so doing, Defendants mount a facial challenge. "In evaluating whether a complaint adequately pleads the elements of standing, courts apply the standard of reviewing a complaint pursuant to a Rule 12(b)(6) motion to dismiss for failure to state a claim: Court[s] must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party." *Huertas v. Bayer US LLC*, 120 F.4th 1169, 1174 (3d Cir. 2024).

Rule 12(f) provides that the court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," either on its own or on motion made by a party before responding to the pleading, such as the Complaint, as here. FED R. CIV. P. 12(f), (f)(2). However, the 12(f) device is used rarely and is particularly disfavoured, applying, by its very definition, to "redundant, immaterial, impertinent, or scandalous matter." The Third Circuit counsels against striking class allegations if discovery may reveal a certifiable class. *See Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93-94 (3d Cir. 2011). The Third Circuit has nevertheless noted that there are a "rare few" instances in which "the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." *Id.* at 93 n.30.

ARGUMENT

A.  *The complaint pleads sufficient facts to support direct liability against Conversion Finder.*

As described above, the Court's analysis must begin and end with whether or not the Plaintiff has plausibly alleged the moving Defendants' involvement in the calls with sufficient

specificity to give rise to the inference of direct liability. He has done so because he has pled facts which sufficiently prove at the pleadings stage that Defendants directly placed the calls complained of.

In essence, Defendants adopt the classic "we didn't do it" defense by disguising it as a challenge to the Plaintiff's allegations of direct liability at the pleadings stage. But Rule 12(b)(6) is not an appropriate device for testing the truth of what is asserted in the complaint or for determining whether the plaintiff has any evidence to back up what is in the complaint. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002). However, that's precisely what the Defendants attempt to do here, making a conclusory, undeveloped argument that the Plaintiff has failed to state a claim because he has allegedly failed to set forth facts giving rise to direct liability that the Defendants placed the calls at issue. But that's a "red herring" that begs the question "who did, then?" *See Consol. Grain & Barge, Inc. v. Anny*, No. CIV.A. 11-2204, 2013 WL 486687, at *6 (E.D. La. Feb. 6, 2013). Nevertheless, the Plaintiff has met his burden of pleading facts sufficient to give rise to the inference that Conversion Finder and Soblick placed the illegal calls at issue here.

The Plaintiff's complaint gives more than adequate notice of the Plaintiff's claims and the grounds upon which they rest. The Plaintiff has identified the dates, times, and "spoofed" caller IDs of the calls which he alleges that the moving Defendants placed on behalf of Exact Care. Exact Care has produced (forged) recordings of at least two or three calls on February 27. And Exact Care claims that it did not obtain those recordings itself. Instead, it confirms that the moving Defendants produced them to Exact Care. And Exact Care has already admitted, in sworn declarations, that it hires vendors to place calls and then transfer them to Exact Care, and has identified the moving Defendants as the vendors at issue here who placed the subject calls.

5

Plaintiff has pled as much, including the nature of the relationship between the parties, and developed through discovery, in as much detail as he had available to him in Paragraphs 51 through 77 of the Amended Complaint. This is sufficient. For example, in *Bird v. Pro Star Builders, Inc.*, No. 222CV03610JLSJEM, 2022 WL 18216007, at *3 (C.D. Cal. Nov. 28, 2022) (cleaned up) (emphasis added), which itself cited to other similar decisions, the court held:

> Further, it is reasonable to infer that Pro Star was responsible for the alleged February 24 unanswered call from the same number as the second call on April 19. Indeed, courts in other districts have recently found that a plaintiff has sufficiently alleged multiple calls from the same entity when he or she received more than one call from the same number but traced the calls back to the defendant after having answered only once. *See, e.g., Chapman v. Nat'l Health Plans & Benefits Agency, LLC*, 2022 U.S. Dist. LEXIS 138916, 2022 WL 3130225, at *7 (E.D. Mich. Aug. 4, 2022) (finding that plaintiff plausibly pleaded that four calls—including three unanswered calls—had come from the same defendant because they had originated from the same number and the plaintiff alleged that other individuals had complained about receiving solicitations from that number); *Spurlark v. Dimension Serv. Corp.*, 2022 U.S. Dist. LEXIS 120468, 2022 WL 2528098, at *3 (S.D. Ohio July 7, 2022) (finding that plaintiff who had ignored multiple calls from the same number until he answered and was able to identify the caller plausibly pleaded that the calls were all placed by the defendant). *The Court agrees that it is reasonable to infer that the same caller is responsible for calls from the same number, whether those calls are answered or not. Accordingly, the Court finds that Plaintiff has plausibly alleged that the two calls at issue came from Pro Star.*

Taking the well-pleaded facts as true, as the Court must for the purposes of the instant motion, as the Amended Complaint's allegations make clear, Plaintiff has pled more than adequate facts to allow this Court to determine that the moving Defendants directly placed the calls complained of at the pleadings stage, some of which because they transferred to Exact Care, including after having initially used the fake name "Healthcare Benefits" on the calls, and spoofed the caller IDs on the calls, including one such call which Exact Care admits was transferred to it, and which spoofed the name and telephone number of a government defense contractor. *Moore v. Healthcare Sols. Inc.*, No. 21-CV-4919, 2022 WL 17487823, at *3 (N.D. Ill. Dec. 7, 2022) ("Moore acknowledges that he never spoke with anyone — including anyone

from Healthcare Solutions — during the first call. That said, he points out that both calls came from the same number, on the same day. So, it is reasonable to assume that the same caller made both calls for the same reason. . . . The issue of who made the first call isn't much of a whodunit. Moore received two calls from the same number, and the second caller was Healthcare Solutions. It is reasonable to conclude that Healthcare Solutions called the first time, too. Does Healthcare Solutions share a phone number with someone else? Unlikely.").

As Judge Baylson of this Court noted with respect to a case with partially the same Plaintiff's counsel as here, the facts all support the conclusion that the moving Defendants were responsible for the eight calls alleged to have been placed by them, and as outlined in the Amended Complaint, because they all share indicia that they came from the same place, including naming Exact Care on the calls, and two of which were transferred to Exact Care, and which Exact Care identified as having originated from the moving Defendants. *See Smith v. Am.-Amicable Life Ins. Co. of Texas*, No. CV 22-333, 2022 WL 1003762, at *2 (E.D. Pa. Apr. 4, 2022). Indeed, this Court noted that the telephone number itself may further be evidence of a connection between the caller and a defendant, and the same facts appear here: all eight calls came from spoofed caller IDs (five of which so far have been affirmatively so confirmed), and at least two were *spoofed to the very same telephone number* months apart, but using the same fake "Healthcare Benefits" alias as used on the calls transferred to Exact Care, and both of which came with close temporal proximity to calls naming Exact Care. *See id*; *Moore*, 2022 WL 17487823, at *3*. When viewed in light of Exact Care's admission that it hired the moving Defendants to place the calls at issue, together with allegations of how its business model operates and the other well-pled allegations connecting the caller, calls, and their stated and admitted purpose, such allegations are plainly sufficient to demonstrate a theory of liability, in

this case direct liability, against moving Defendants at the pleadings stage.

Nor is it all availing that the caller IDs do not belong to the moving Defendants: they do not, *precisely because* they were spoofed to hide the identity and involvement of the moving Defendants. *See Fridline v. Int. Media, Inc.*, No. 24-CV-01770, 2025 WL 1162492, at *2 (M.D. Pa. Apr. 21, 2025) ("Plaintiff has adequately connected the numbers to Defendant through the content of the messages. . . . While the area codes are not associated with Missouri, the content of the messages sufficiently connects them to Interest Media."). Put a different way, "[defendant's] argument, if tenable, would reward robocallers for attempting to obfuscate their identity in order to prevent TCPA liability." *Cunningham v. Watts Guerra*, LLP. No. SA-22-CV-363-OLG (HJB), 2024 U.S. Dist. LEXIS 93370, at *4 (W.D. Tex. May 23, 2024). The Defendants' standard provides a perverse incentive for a caller to conceal their identity by making it impossible for any plaintiff to prove a claim against the defendant at the pleadings stage based on a lack of information and evidence. Luckily for consumers who receive unwanted calls, this is not the standard. *Abramson v. Josco Energy USA, LLC*, No. 2:21-cv-1322, 2022 U.S. Dist. LEXIS 237792, at *6 (W.D. Pa. Aug. 1, 2022) ("Defendant might dispute those facts, but as now alleged, they go beyond formulaically reciting the elements of Plaintiff's cause of action, and the Court must take them as true at this early stage in the litigation.").

As Judge Weilheimer of this Court ruled with respect to a similar situation where Defendants bickered about who placed the calls at issue and who was liable:

> On the merits, this Court finds that the factual allegations of the Complaint are sufficient- at this stage- to confer personal jurisdiction. The Complaint alleges that she received a call from Happy Quote "at Defendant Quest's direction." Plaintiff alleges that various of the people she spoke to on the phone were Quest employees and that the call waiting message identified that she was on hold with Quest. There is ample case law, cited by Plaintiff, which would suggest that these allegations, if true, could result in both personal jurisdiction in the Eastern District of Pennsylvania and substantive liability under the relevant statute.

8

> The grounds from which Quest seeks dismissal are essentially coterminous with Plaintiffs theory of liability against it. Effectively, Quest seeks dismissal by saying "we didn't do what the Complaint says we did!" That may well be true. But the sort of discovery which would be needed to aid an early jurisdictional dismissal on such fact-laden grounds would be barely less burdensome (if at all) than that needed to resolve the claims against Quest on their merits. For that reason, the Court thinks it would not be in the interest of judicial economy to create dual discovery tracks.

*Murch v. Quest Health Solutions, LLC*, No. 2:24-cv-05478-GAW, ECF No. 39 (E.D. Pa. June 2, 2025). The Court should similarly hold in this case. There is no inquiry without a starting point, and the starting points must be accepted as known in some sense, even if they are not known in the strictest sense. To attempt to doubt these starting points at the outset would prevent any inquiry from proceeding. Should this Court at all find the Plaintiff's pleading at all deficient, the Court only need give the order granting the Plaintiff leave to amend and he will do so to rectify any perceived deficiency.

  B. *Defendant Soblick is personally liable for the conduct alleged in the Amended Complaint.*

The TCPA is part of the Communications Act of 1934, as amended, and the Communications Act contains a *respondeat superior* provision. *See* 47 U.S.C. § 217 ("[T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as that of the person*.") (emphasis added). This provision applies when "construing and enforcing the provisions of the Communications Act," including the TCPA. *Reynolds Corp. v. National Operator Services, Inc.*, 73 F. Supp. 2d 299, 305 (W.D.N.Y. 1999).

District Courts across the country have consistently invoked this provision to apply to employees who have direct, personal involvement in the illegal conduct at issue, and held that the "any person" language in § 217 applies to all persons, including corporate officers and

employees. *See Williams v. Schanck*, No. 5:15-CV-01434-MHH, 2019 WL 4246570, at *4 (N.D. Ala. Sept. 6, 2019), *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011), *Texas v. Am. Blast Fax, Inc.*, 164 F. Supp. 2d 892, 898 (W.D. Tex. 2001). Indeed, the Plaintiff makes here manifestly similar allegations to those that this very Court has held to be sufficient in *Shelton v. Pro Source Lending Grp. LLC*, where Judge McHugh stated:

> Defendant Wilson argues that she may not be held liable under the TCPA. But her position ignores the plain text of the statute. Section 217 of the TCPA states: "In construing and enforcing the provisions of this chapter, the act, omission, or failure of any officer, agent, or other person acting for or *employed by* any common carrier or user, *acting within the scope of [her] employment*, shall in every case also be deemed to be the act, omission, or failure of such carrier or user *as well as of that person.*" (emphasis added). Plaintiff alleges that Ms. Wilson was directly involved in the communications with him, using her personal cell phone, a claim that falls within the literal terms of Section 217.

No. CV 24-4394, 2025 WL 817485, at *6 (E.D. Pa. Mar. 14, 2025).

Plaintiff here pleads exactly the same type of personal involvement as in *Shelton*. The Plaintiff has alleged several indices of personal involvement in the conduct at issue, including by responding to discovery and assisting Exact Care in its TCPA defense of this case. And contrary to Soblick's contention that the Plaintiff has failed to allege any specific conduct to show that he "actively oversaw and directed conduct in violation of the TCPA," the Plaintiff has alleged that Mr. Soblick personally provided the altered call recordings to Exact Care that Exact Care then provided to the Court, as well as "drafting, setting, implementing, and controlling this illegal marketing strategy, including the use of illegal calls to numbers on the Do Not Call Registry, the use of illegally spoofed caller IDs, the hiring of the call center staff to work up those leads, and the other works involved in placing such calls." That Soblick provided *altered and forged recordings* to Exact Care to hide his TCPA violations show that he had knowledge of the same and attempted to cover up the TCPA violative conduct. Those allegations are entitled to a presumption of truthfulness, and are further supported by the terms of the "Business Associate

Agreement" that Soblick himself personally signed between Conversion Finder and Exact Care.

The out-of-circuit cases Defendants cite are particularly distinguishable. In *Bank v. Simple Health Plans, LLC*, the plaintiff alleged *no factual support* to show that the defendants have any personal participation in the TCPA violations, such as that they oversaw day-to-day operations, set company policies, or were central figures behind the violations. No. 18CV6457MKBST, 2019 WL 7878570, at *7 (E.D.N.Y. Dec. 12, 2019). That is not the case here, where the Plaintiff not only alleges that Soblick covered up the TCPA violations by submitting forged recordings, the Plaintiff has alleged, and the contract Soblick signed with Exact Care confirms, that Soblick drafted, set, implemented, and controlled this marketing strategy, including by allegedly adhering himself to policies as a result of that relationship. And in *Lucas*, the court distinguished the case from *Am. Blast Fax* by noting that, unlike in that case, the individual personally sued was not the "sole officers, directors and shareholders and who oversaw and directed day-to-day operations of Blastfax." *Lucas v. Gotra*, No. 1:18-CV-664, 2019 WL 3349957, at *7 (S.D. Ohio July 25, 2019). Both *Cunningham* cases suffered from similar maladies, alleging that the corporate officers there were liable, unlike here, beyond "generic assertions" that the CEOs were "ultimately responsible" for their involvement merely because of their positions. *Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1202 (M.D. Tenn. 2017); *Cunningham v. Pro. Educ. Inst., Inc.*, No. 417CV00894ALMCAN, 2018 WL 6709515, at *4 (E.D. Tex. Nov. 5, 2018) ("merely naming a corporate officer as being liable for the actions of the corporation due to his employment status is insufficient for the officer to be held jointly and severally liable under the TCPA").

Though liability against a corporate officer *qua* corporate officer who had some degree of involvement placing the calls at issue because of that position, but which did not otherwise

place the calls themselves may be unsettled and unclear, the TCPA unquestionably imposes

personal participation liability for those who *actually* commit the telemarketing conduct at issue,

both under the express text of the TCPA and under common law personal liability principles.

*KHS Corp. v. Singer Fin. Corp.*, 376 F. Supp. 3d 524, 530 (E.D. Pa. 2019). Plaintiff alleges the

very same here. In other words, Plaintiff here seeks to impose personal TPCA liability on

Soblick *not* as the "captain of the ship"; but rather on Soblick as an *individual pirate* part of the

boarding party boarding the proverbial ship, particularly given his conduct of providing forged

recordings that were edited out to show evidence of TCPA violations to Exact Care.

The Third Circuit clarified this distinction in *City Select Auto Sales Inc. v. David Randall*

*Assocs., Inc.* and, in any event, held that that question was more appropriately addressed at jury

trial. In that case, the Third Circuit refused to impose personal TCPA liability on an individual

who testified that he did not "create the advertisement Business Solutions sent; discuss anything

related to the campaigns with Clemmer; review any communications to or from Clemmer

relating to the fax blitzes; communicate with Business Solutions; or authorize any of the conduct

at issue in the case." *City Select Auto Sales Inc. v. David Randall Assocs., Inc.*, 885 F.3d 154,

157 (3d Cir. 2018). That is plainly not the case of what is alleged here.

The Third Circuit went on to observe that the TCPA imposes personal liability on people

who "actually commit[] the conduct that violate[s] the TCPA," as Defendant Soblick here:

> Assuming that personal-participation liability is in fact available under the TCPA, a
> corporation's officer "may be personally liable under the [statute] if he had direct,
> personal participation in or personally authorized the conduct found to have violated the
> statute, and was not merely tangentially involved." *Am. Blastfax*, 164 F.Supp.2d at 898;
> *see also, e.g.*, *Ott v. Mortg. Inv'rs Corp. of Ohio, Inc.*, 65 F.Supp.3d 1046, 1060 (D. Or.
> 2014); *Balt.–Wash. Tel. Co. v. Hot Leads Co.*, 584 F.Supp.2d 736, 745 (D. Md. 2008). In
> other words, a corporate officer can be personally liable if he "actually committed the
> conduct that violated the TCPA, and/or [he] actively oversaw and directed this conduct."
> *Am. Blastfax*, 164 F.Supp.2d at 897

*City Select*, 885 F.3d at 162. The claim here is similar, if not more direct, than the Court in *Montelongo v. My Fin. Solutions LLC*, permitted to proceed, where the plaintiff sued a call center employee who did not place the plaintiff on a do-not-call list and the employee's manager who was responsible for "developing strategies to make unsolicited telemarketing calls" and "responsible for receiving, maintaining, investigating and responding to complaints about TCPA violations." No. SA-19-CV-00577-JKP, 2020 WL 210814, at *3 (W.D. Tex. Jan. 14, 2020). Here, the forged recordings, discovery responses, and contracts all underpin the factual basis for how Soblick took responsibility for responding to and investigated TCPA complaints. At bottom, the circumstances here are more than sufficient under any one of these bases to impose personal liability on Soblick.

### C. *Plaintiff has standing to seek injunctive relief.*

Defendants also move pursuant to FED. R. CIV. P. 12(b)(1) to dismiss Plaintiff's claims for injunctive relief, arguing Plaintiff lacks Article III standing to obtain injunctive relief. Under the 12(b)(1) standard, however, there unquestionably remains the risk of future harm. In this regard, the Defendants' only jurisdictional challenge attacks the Plaintiff's standing to seek injunctive relief on the specious basis that the Plaintiff has not adequately pled a risk of future injury. Defendants raise a mere facial challenge, not a factual one, as all the Defendants simply argue is that Plaintiff's pleadings have not shown any risk of future injury. Yet Plaintiff's allegations do establish a risk of future injury. As a telephone user, Plaintiff is at risk of future telemarketing calls from the moving Defendants. Defendants offer no facts or arguments rebutting the risk that they will continue to call, as alleged, nor do they even claim to have ceased making them, let alone with highly illegal spoofed caller IDs for which they have no legitimate reason to make. For a statutory injunction, like under the TCPA, Article III's standing requirement centers "on whether the party invoking jurisdiction had the requisite stake in the

outcome when the suit was filed." *Davis v. FEC*, 554 U.S. 724, 734 (2008). Particularly at this

stage, Plaintiff's allegations establish standing to seek injunctive relief.

Defendants' contention that the illegal conduct has ceased, even if true, is not the end of

the analysis. "The Supreme Court has recognized that when the time frame for the alleged injury

is by nature temporary, a named plaintiff can continue to pursue the interests of the class even

after his own claim has been rendered moot. Otherwise, a defendant could evade prospective

injunctive relief simply by inflicting harms that are too transitory to last the length of an entire

lawsuit or, in this case, by ceasing the alleged violations with respect to plaintiffs who step

forward." *Snyder v. Ocwen Loan Servicing, LLC*, 258 F. Supp. 3d 893, 901 (N.D. Ill. 2017).

*Snyder* rejected the argument that the cessation of calls deprives one of injunctive relief:

> If this were sufficient to defeat standing, Ocwen would be able to cease calls to
> any individual the instant he joined the case as a named plaintiff and thereby
> indefinitely avoid injunctive relief, while keeping the allegedly unlawful practices
> in effect. A defendant's choice to end the challenged behavior— where he
> remains free to resume the unlawful conduct at any time—is insufficient to render
> plaintiff's claim moot.

*Id.* at 901. Plaintiff's allegations here are sufficient. *Atkinson v. Choice Home Warranty*, No. CV

22-04464, 2023 WL 166168, at *7 (D.N.J. Jan. 11, 2023) ("[G]iven the recurrent and relatively

recent nature of the alleged calls and the fact that Defendant continued to call Plaintiff after she

repeatedly asked to be removed from the call list, the Court finds that Plaintiff has alleged facts

which, accepted as true, establish a sufficient likelihood that Defendant will call her again in the

future."). Thus, Plaintiff need not allege that he continues to receive calls. Nor, for that matter,

do the moving Defendants assert that they no longer make illegal calls or spoof caller IDs.

As such, an injunction is necessary to stop the aforementioned illegal conduct. The

allegations of caller ID spoofing and forging recordings themselves plausibly establish a risk of

future harm. And though the Plaintiff alleges future harm, he is not required to:

14

The Telephone Consumer Protection Act, 47 U.S.C. § 227 (b)(3), creates a private right of action and allows a Court to order injunctive relief, monetary relief, and treble damages. Plaintiff is not seeking a preliminary injunction, which would require a showing of likelihood of success on the merits and irreparable harm. Defendant argues that Plaintiffs allegations do not suffice to establish either prong, and are inadequate to state a claim for treble damages. . . . In *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1098 (11th Cir. 2004), the Eleventh Circuit differentiated statutory and non-statutory injunctions. . . . Where plaintiff sufficiently alleges a claim for a statutory violation, that is all that is required to request injunctive relief in a complaint.

*Gutierrez v. Fla. Advert. & Mktg. Corp.,* 387 F. Supp. 3d 1410, 1411 (S.D. Fla. 2019). Indeed, the Western District in *Abramson v. AP Gas & Elec. (PA), LLC*, No. CV 22-1299, 2023 WL 1782728, at *5 (W.D. Pa. Feb. 6, 2023), denied a similar motion to dismiss, reasoning that the conducing of "ongoing telemarketing" by the defendant, as well as a high number of calls (11) and disturbed solitude and annoyance, entitled the plaintiff to injunctive relief and adequately placed him within the "zone of interests protected by the" TCPA's injunctive relief provision and alleged, "a pattern and practice by AP Gas of violating the TCPA," which, if accepted as true, " permit an inference of future violations that the TCPA seeks to enjoin." Other federal courts have explicitly rejected the Defendants' arguments here. This Court should likewise hold, based on nearly identical pleading to that in *Abramson*.

D. *Class Certification under Rule 23(b)(2) is still appropriate.*

Even if the Court *does* dismiss the *injunctive relief* portion of the Rule 23(b)(2) class, the Plaintiff can, and still intends to, seek *declaratory relief* as permitted under the TCPA and Rule 23(b)(2). Accordingly, striking those class claims at the pleadings stage is inappropriate, particularly when such dismissal must be without prejudice. None of the cases cited by the Defendants stand for the proposition that, where, as here, declaratory relief is available as a remedy under the TCPA, it is inappropriate for certification under Rule 23(b)(2). To the contrary, courts *have* held that such relief was appropriate. *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 649 (W.D. Wash. 2007) (holding that classwide injunctive and declaratory relief was

appropriate); *Crawford v. Target Corp.*, No. 3:14-CV-0090-B, 2014 WL 5847490, at \*4 (N.D. Tex. Nov. 10, 2014) (denying motion to dismiss declaratory relief in TCPA case). To be sure, if there is no injunctive relief *or* declaratory relief available to the Plaintiff, then striking the 23(b)(2) class is an appropriate remedy. Because the Plaintiff is nevertheless entitled to declaratory relief (and Defendants do not argue otherwise), the Plaintiff's putative 23(b)(2) class remains viable.

Furthermore, while the moving Defendants correctly observe and cite cases for the proposition that monetary damages are often the primary remedy sought in TCPA cases, that fact does not preclude appropriately structured parallel certification of Rule 23(b)(2) and (b)(3) classes that appropriately reserve all monetary claims for the Rule 23(b)(3) class. Moving Defendants misread both the explicit text of Rule 23 and *Wal-Mart*. The problem in *Wal-Mart* was that the plaintiffs attempted to recover individualized monetary damages by shoehorning those damages into a Rule 23(b)(2) class, thus effectively sidestepping the necessity of making a showing of Rule 23(b)(3)'s requirements. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 347 (2011). Although the Third Circuit has not affirmatively ruled on the issue, courts in other circuits have certified parallel-tracked class certifications in TCPA cases for *both* injunctive/declaratory relief *and* monetary damages. *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) (upholding provisional 23(b)(2) certification on the injunction issue in a TCPA case); *West v. California Servs. Bureau, Inc.*, 323 F.R.D. 295, 307 (N.D. Cal. 2017) ("Where a plaintiff seeks both declaratory and monetary relief, courts may certify a damages-seeking class under Rule 23(b)(3), and an injunction-seeking class under Rule 23(b)(2)."); *Elrod v. No Tax 4 Nash*, No. 3:20-CV-00617, 2021 WL 1316703, at \*6 (M.D. Tenn. Apr. 8, 2021) (certifying under both rules).

16

*Cabrera*, *Jacobs*, and *Connelly* are all thus distinguishable because, in each of those cases, the plaintiffs sought certification of monetary damages under Rule 23(b)(2) as well, exactly as the plaintiffs in *Wal-Mart*, by arguing that such damages claims were merely "incidental" to the injunctive/declaratory relief claims, instead of seeking to parallel-track both claims. But Defendants' reliance on these out-of-jurisdiction cases is misplaced for an even more fundamental reason. Contrary to *those* courts, *this Court* has already held that claims similar to TCPA claims *are* merely "incidental" to the injunctive/declaratory relief claims because the statutory damages provided for under the TCPA are simply a matter of mathematical computation, and thus *are* permissibly included in a Rule 23(b)(2) class. *Scanlan v. Am. Airlines Grp., Inc.* 567 F. Supp. 3d 521, 535 (E.D. Pa. 2021).

As this Court's holding in *Scanlan* makes clear, when "the calculation of monetary relief will be mechanical, formulaic, a task not for a trier of fact but for a computer program, so that there is no need for notice and the concerns expressed in Wal-Mart opinion, then a district court can permit monetary damages in a (b)(2) class." *Id.* (citing *Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d 364, 372 (7th Cir. 2012)). That is plainly the case here under the TCPA, where the calculation of monetary relief will simply require a calculation of the number of class members called illegally multiplied by the amount of statutory damages given to each class member under the TCPA. As such, this Court need not conclude, let alone at the pleadings stage, that the damages the Plaintiff seeks are not "incidental," and thus ineligible for certification under Rule 23(b)(2).

In any event, striking the class claims based on the mere possibility that the Plaintiff will seek monetary damages in seeking a Rule 23(b)(2) class certification is wildly premature and better left for argument at class certification. *See Fitzhenry v. Career Educ. Corp.*, No. 14-CV-

17

10172, 2016 WL 792312, at *5 (N.D. Ill. Mar. 1, 2016) (refusing to determine this issue at the pleadings stage). This portion of the motion should thus also be denied entirely.

   E. *Dismissal should be without prejudice.*

   Should this Court find any of Plaintiff's allegations lacking, it should provide leave to amend. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). Plaintiff respectfully submits that the purported and received issues with the Plaintiff's own pleading are all manufactured red herrings of the Defendants' own devising. To the extent that something is nevertheless unclear, the Court need only send the order granting leave to amend and the Plaintiff will do so to rectify any deficiency.

   RESPECTFULLY SUBMITTED AND DATED this November 11, 2025.

   */s/ Andrew Roman Perrong*
   Andrew Roman Perrong, Esq.
   Pa. Bar #333687
   Perrong Law LLC
   2657 Mount Carmel Avenue
   Glenside, Pennsylvania 19038
   Phone: 215-225-5529 (CALL-LAW)
   Facsimile: 888-329-0305
   a@perronglaw.com

   *Attorney for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

   I, Andrew Roman Perrong, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

   DATED this November 11, 2025.

   */s/ Andrew Roman Perrong*
   Andrew Roman Perrong, Esq.

18