IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LEON WEINGRAD,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**EXACT CARE PHARMACY, LLC,**<br><br>**CONVERSION FINDER, AND**<br><br>**JORDAN SOBLICK**<br><br>*Defendants.* | Case No.<br>2:25-cv-1843 |

### OPPOSITION TO DEFENDANT EXACT CARE PHARMACY, LLC'S MOTION TO QUASH OR MODIFY SUBPOENA AND FOR A PROTECTIVE ORDER

Defendant's self-described motion to "quash or modify" and seek a protective order fails on multiple counts, including because Defendant does not have standing to quash a subpoena for a deposition subpoena directed to a third party, implicates no proprietary interest justifying entry of a protective order, misstates the procedural history and criticality of Mr. Donnelly's testimony in this litigation and the Plaintiff's Motion for Class Certification, and neglects to cite a mountain of Third and Fourth Circuit authority holding that personal scheduling conflicts, including things as trivial as vacations, even pre-planned ones, are insufficient for an extraordinary holding of "undue burden" to justify any of the relief sought.

Most importantly, the timing prejudice in the instant motion is obvious. Exact Care has noticed Plaintiff's deposition for January 14, 2026 in Philadelphia, and its counsel will be defending a deposition of another Exact Care employee in Cleveland on January 13. Currently, Plaintiff's class certification deadline is January 19, 2026, and Defendant's alternative dates for

1

Mr. Donnelly, its Senior Vice President for Compliance, and the individual who verified Exact Care's interrogatory responses, are all after that deadline. That effectively gives Exact Care all the depositions it wants to advance its own interests while simultaneously denying the Plaintiff the evidentiary record necessary to bring his motion for class certification.

## Procedural History

Defendant Exact Care's motion and refusal to produce Mr. Donnelly for a deposition before Plaintiff's Motion for Class Certification is the latest in a long line of obstructive, dilatory tactics that Exact Care and its counsel have adopted in this litigation. That is no way to litigate matters in the Eastern District of Pennsylvania.

The actual procedural posture of the instant motion and deposition scheduling is very different than the posture selectively outlined by the Defendant. Specifically, on **November 7, 2025,** Plaintiff's counsel emailed counsel for Exact Care seeking "some dates in *early December* for depositions of Meghan C. Bublitz and Todd Donnelly." According to Exact Care's statement of facts, which Plaintiff is now learning for the first time in its motion, Mr. Donnelly, who signed and verified Defendant's first set of interrogatory responses, retired from Exact Care on "October 10, 2025." (Mot. at 3). Despite the fact that Mr. Donnelly had been retired from Exact Care for over a *month* at that point, on November 12, 2025, counsel for Exact Care, Samantha Lamka, an attorney who claimed to represent Exact Care but who just entered her appearance *pro hac vice* yesterday, emailed Plaintiff's counsel and stated that Exact Care was "working on confirming dates for Meghan and Todd" and "expect to have these dates to you in the next few days."

That was a misrepresentation. On November 26, 2025, a full *19 days* after Plaintiff's counsel had requested deposition dates, Plaintiff's counsel sought a follow up due to a lack of response. No response was forthcoming to *that* email until *December 1, almost a month after the*

2

*initial request*, providing a *single date* for Ms. Bublitz and with a representation that Exact Care was "still working on dates for Todd." But this statement by Ms. Lamka must have been a misrepresentation as well because, by Exact Care's own admission, Mr. Donnelly had retired from the company *for almost two months at that point*. That leaves only two options: either Exact Care knew of Mr. Donnelly's retirement and failed to notify Plaintiff's counsel in good faith *or* Exact Care's counsel didn't even actually undertake to ascertain Mr. Donnelly's availability at all. Nevertheless, on December 1 through December 9, the parties worked to schedule in-person deposition dates to account for various scheduling conflicts.

But, on December 9, *over a month* since the Plaintiff initially sought dates for Mr. Donnelly's deposition, and over *three weeks* after Ms. Lamka first stated that Exact Care was "working on confirming dates"[1] for Mr. Donnelly (a party that counsel previously implied they represented), Ms. O'Neil emailed counsel for the Plaintiff and stated simply that "Todd Donnelly retired from Exact Care and, as such, I cannot produce him for deposition." So, after making clear that the Plaintiff intended to depose Mr. Donnelly on the same day as Ms. Bublitz, another Exact Care deponent, in Cleveland, and after failing to receive further confirmation or dates even for Ms. Bublitz, on December 22, 2025, the Plaintiff issued a deposition notice for Ms. Bublitz's deposition on January 13 and issued a subpoena for Mr. Donnelly's deposition, which was served at Mr. Donnelly's house in Chardon, Ohio, a suburb of Cleveland, the following day, December 23, 2025. That subpoena noted that Mr. Donnelly's deposition would be January 13, at 2:00 PM, after Ms. Bublitz's deposition at 9:00 AM.

---

[1] It is unclear how an attorney can represent in good faith to opposing counsel, not just once, but twice, that they are "working on" getting dates for the deposition of a party that they don't even represent.

3

Despite forcing the plaintiff to expend time, money, and effort in scheduling and serving a deposition of a third party, on December 24, Christmas Eve, and a day after the subpoena was served, Ms. Lamka, who, again, had not entered her appearance in this matter at that point, emailed Plaintiff's counsel stating "Todd Donnelly is out of town from 1/12/26 to 1/16/26, so he is unavailable for the 1/13/26 deposition. Can you let us know 2-3 more dates later in the month to reschedule? Thanks." Plaintiff's counsel immediately responded, noting the apparent incongruity between counsels' previous position just days earlier that they did *not* represent Mr. Donnelly and could not arrange for his deposition. In addition, Plaintiff requested that Exact Care supplement its Request for Production 22, which sought "All communications with any third party concerning this litigation other than your attorney." Exact Care now contends that the communications between Mr. Donnelly, whom its attorneys claimed they did not represent, and Exact Care, are privileged. Moreover, Exact Care insists on deposing the Plaintiff on January 14, but refuses to produce Mr. Donnelly until after the January 19 Class Certification deadline.

**Legal Standard**

"Generally speaking, a party does not have standing to quash a subpoena served on a third party." *Thomas v. Marina Assocs.*, 202 F.R.D. 433, 434 (E.D. Pa. 2001). The only exception to this general rule is when the litigating party "claims some personal right or privilege in respect to the subject matter" of the subpoena. *First Sealord Sur. v. Durkin & Devries Ins. Agency*, 918 F. Supp. 2d 362, 382 (E.D. Pa. 2013). The same is true of seeking a protective order. If a party lacks standing to move to quash or modify a subpoena, it may still move for a protective order to protect its own rights and interests, to the extent that they are jeopardized by the discovery sought from the third party. *US EEOC v. United Galaxy*, No. CIV.A. 10-4987 ES, 2011 WL 4072039, at *2 (D.N.J. Sept. 13, 2011). In seeking a protective order, it is incumbent

on the party seeking relief to demonstrate an "adequate reason" for seeking a protective order. *Crossley v. Iroquois Foundry Co.*, No. CIV. A. 91-1657, 1992 WL 114956, at *2 (E.D. Pa. May 18, 1992). Where "the party seeking the protective order seeks to prevent a deposition in its entirety, the movant must show that a clear injustice would occur if the deposition were permitted. Such motions are 'generally regarded as unusual and unfavorable.'" *Id.* (quoting *Inv. Props. Int'l., Ltd. v. IOS, Ltd.*, 459 F.2d 705, 708 (2d Cir. 1972)).

## Argument

1. Defendant Exact Care Pharmacy lacks standing to quash or modify and its interests are not jeopardized by the discovery sought.

As outlined above, as a general rule, Defendant Exact Care Pharmacy has no standing to attempt to quash or modify a subpoena served upon a third party, Todd Donnelly; that right is preserved by Mr. Donnelly and himself alone. *Thomas*, 202 F.R.D. at 434. It is equally clear that the exceptions to this general rule do not apply. The general principle is that a party-movant must claim some "personal right or privilege" in the subject matter of the subpoena served on a third party. Examples of personal rights or privileges include sensitive trade secret information, *Dart Indus., Inc. v. Liquid Nitrogen Processing Corp. of Cal.*, 50 F.R.D. 286, 291 (D. Del. 1970), or attorney-client privileged information, *Davis v. Gen. Acc. Ins. Co.*, No. CIV. A. 98-4736, 1999 WL 228944, at *3 (E.D. Pa. Apr. 15, 1999). But Exact Care does not explain, nor can it, why deposing a former employee who himself verified Exact Care's first set of interrogatory responses at all implicates any personal right or privilege of Exact Care's. Indeed, it *concedes* that it is seeking to quash the subpoena, not on the basis of any privilege or personal right, but simply to "avoid imposing an undue burden on Mr. Donnelly" to permit him to go on vacation. Exact Care thus lacks standing to quash or modify the subpoena.

To add insult to injury, besides plainly lacking standing to seek to quash or modify the subpoena, Exact Care *admits* it filed its motion in the wrong jurisdiction, essentially confirming that its motion to quash or modify is frivolous. (Mot. at 1 n.1 (conceding that Rule 45(d)(3)(A) requires a motion to quash to be filed in "the court for the district where compliance is required," i.e., the Northern District of Ohio, where the deposition is to take place)). If anyone should be paying costs here, it should be Exact Care for filing a frivolous motion that (1) it has no standing to file, and (2) even if it did, it admits it filed in the wrong court without a basis for so doing.

And though Exact Care has standing to seek a protective order, it does not meet the legal requirements to seek a protective order, either. The purpose of a protective order is to permit the *movant*, that is, Exact Care, to protect *its own* rights and interests, to the extent that they are jeopardized by the discovery sought from the third party. *United Galaxy*, 2011 WL 4072039, at *2. But Exact Care's own proprietary interests are not implicated by Mr. Donnelly wanting to take a vacation. So, without its motion identifying how it, as a "party," is subject to "annoyance, embarrassment, oppression, or undue burden or expense," Exact Care cannot seek a protective order. Indeed, the deposition was scheduled in a way so as to *limit* undue burden and expense on Exact Care and its counsel. It is on the same day, and the same place, where one of Exact Care's current employees, also a resident of the Cleveland metro area, and Exact Care, are located. And Plaintiff explicitly tried for *months* to secure and schedule the depositions, only to hit Exact Care's brick wall, including its counsel twice representing that it was "working on dates," then claiming it did not represent Mr. Donnelly, forcing the Plaintiff to incur undue burden and expense in serving him, only to immediately surface the following day and state that Exact Care's counsel was representing him. So, there is no basis to seek a protective order either.

2. A preplanned vacation is an insufficient basis to quash or modify a deposition subpoena or seek a protective order, particularly under the circumstances here.

Even to the extent the Court were to address the merits of Exact Care's motion, it should still require the deposition to go forward. Under either standard, the Court may enter a protective order, or quash a subpoena, to protect someone from "undue burden," FED. R. CIV. P. 45(d)(3)(A)(iv), or "undue burden or expense." FED. R. CIV. P. 26(c)(1). In evaluating this standard in the deposition context, the federal courts consider whether permitting the deposition to proceed would amount to a "clear injustice." *Crossley*, 1992 WL 114956, at *2. What is the "undue burden" or "clear injustice" that would result in requiring Mr. Donnelly to sit for a deposition? Mr. Donnelly would lose a few hours of vacation time. Courts in both the Third Circuit and Sixth Circuit are in almost unanimous agreement that preplanned vacations do not ordinarily constitute an "undue burden" except under exceptional circumstances. Missing a vacation is clearly not a "clearly defined and serious injury" justifying the relief sought. *Doe v. Princeton Univ.*, 349 F.R.D. 92, 96 (D.N.J. 2025). Mere travel inconveniences or scheduling conflicts are insufficient. *Charter Oak Fire Ins. Co. v. Am. Cap., Ltd.*, No. MISC. 1:12-MC-00358, 2012 WL 5862735, at *4 (M.D. Pa. Nov. 19, 2012). Here, there is a centrality to the testimony sought, and a serious injury *to Plaintiff* from his failure to obtain it for certification.

The facts of *Crossley* and *Charter Oak* counsel against the relief sought here. In *Crossley*, the defendant sought a protective order to prevent the deposition of the corporation's president "just three days prior to the close of discovery." 1992 WL 114956, at *2. This Court nevertheless compelled the deposition because it held that simply scheduling depositions near the end of the discovery period did not amount to the substantial or irreparable prejudice required under the rules. Moreover, this Court noted that the depositions would not be unduly burdensome merely because they imposed "some inconvenience," particularly where there was a showing that the

"noticed depositions will lead to relevant material." *Id.* And in *Charter Oak*, the Middle District considered arguments that the deponent was employed in a service-related field, had "limited vacation time and funds," and was the "primary care giver for her mother," but nevertheless permitted the deposition to proceed. 2012 WL 5862735, at *4.

Reasoning by differentiation, this case is nothing like ones in which courts in the Third and Sixth Circuits have been willing to reschedule depositions. The circumstances here are quite different from those in *Thompson v. Jones*, No. CV 09-1396, 2018 WL 4286196, at *2 (M.D. Pa. Sept. 7, 2018), for example, where the Middle District *did* permit a similar motion to excuse a witness from trial testimony when counsel had previously stated that trial testimony would not be required, the witness made opposing counsel aware of a pre-planned vacation, and agreed to schedule and sit for a videotaped trial deposition in lieu of trial testimony. It is also unlike *Gentille v. Kohl's Dep't Stores, Inc.*, No. 2:16-MC-54, 2016 WL 6080285, at *1 (S.D. Ohio Oct. 18, 2016), where the court quashed a deposition outside the geographical limits of Rule 45(c), on two days' notice, with a deponent who had care obligations for an elderly parent.

But even then, the motion gives insufficient information for Exact Care to satisfy its (or perhaps more accurately, Mr. Donnelly's) heavy burden of demonstrating a particular, irreparable hardship to the Court. Its motion fails on the evidence. Exact Care does not specify where Mr. Donnelly is travelling to or if any portion of his vacation is refundable, changeable, or cancelable. True, Exact Care states it is "out of state," and "already paid for," Mot. at 3, 5, but a road trip to visit in-laws in Pennsylvania with a prepaid but fully refundable hotel reservation is a very different thing than a honeymoon in Tokyo. Given that the motion does not reference air travel, nonrefundable accommodations, or any monetary loss or distance, it is fair for the Court to assume that the vacation is a relatively low impact one, and one that would impose minimal to

no burden or expense on Mr. Donnelly if he were to sit for the deposition on the 13th. In any event, it's incumbent on the movant to plead and demonstrate the facts necessary to meet the movant's burden for a protective order or to justify quashing, and Exact Care hasn't done so.

Furthermore, the circumstances of the motion show that it should not be granted. As outlined above, Plaintiff's counsel attempted to meet and confer for almost *two months* regarding scheduling Mr. Donnelly's deposition, and Mr. Donnelly's (and Exact Care's) counsel waited almost three weeks to even note that Mr. Donnelly was not employed by Exact Care, and further that that they would not be able to schedule Mr. Donnelly's deposition because they did not represent him, that despite two previous assurances that they were "working on" dates for Mr. Donnelly's deposition. Either counsel was not "working on" anything or counsel knew full well what it was doing in claiming it did not represent Mr. Donnelly and then proceeding to immediately claim they were representing him once served and seeking to reschedule. These sorts of circumstances may actually support a finding of costs *against Exact Care*. In *O'Donnell v. Pa. Dep't. of Corr.*, the Middle District of Pennsylvania sanctioned defense counsel for failing to disclose a vacation that conflicted with various pretrial and trial dates. No. 3:09-CV-1173, 2011 WL 3163230, at *8 (M.D. Pa. July 26, 2011). The Court concluded that these actions were "willful . . . strategic, self-serving, and intentional, and were designed to place greater priority on counsel's personal vacation plans than on her professional responsibilities to her clients and the court" and included "multiple failures to communicate one of the most material and basic facts in any litigation-whether a party plans to attend court." *Id.* This is not to mention the impropriety of Exact Care's and its counsel's claims that they cannot accept service of a subpoena or schedule depositions for a party that they claim not to represent, and simultaneously claim privilege over communications with a party without an attorney-client relationship.

Moreover, while Plaintiff certainly appreciates that Exact Care has provided alternative dates, Plaintiff is simply not in a position to agree to reschedule Mr. Donnelly's deposition until after his motion for class certification, a motion for an extension of that deadline which has not been ruled on as of present. Moreover, Mr. Donnelly's testimony is not simply that of "one former employee." (Mot. at 5). Mr. Donnelly was Exact Care's former Senior Vice President for Compliance, is (strangely enough) still listed as such on Exact Care's website, verified the first set of Plaintiff's interrogatories to Exact Care, and in that position, presumably spearheaded the initial investigation into the Plaintiff's claims. If anyone should be deposed in this litigation in advance of class certification, it is Mr. Donnelly, even taking into account this Court's admonitions of the propriety of and level of discovery necessary in advance of class certification.

Given that the Defendant has noticed the Plaintiff's deposition for January 14, and thus will have a full evidentiary record in both opposing Plaintiff's motion for class certification, and presumably in making an affirmative motion for summary judgment, it would be palpably prejudicial and give an unfair advantage to Exact Care in permitting Exact Care the depositions of the parties of its choosing while simultaneously denying that right to the Plaintiff.

### Conclusion

For the foregoing reasons, the Court should deny the motion in its entirety and tax fees and costs against the Defendant.

RESPECTFULLY SUBMITTED AND DATED this January 10, 2026.

/s/ *Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Pa. Bar #333687
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com
*Attorney for Plaintiff and the Proposed Class*

10

## CERTIFICATE OF SERVICE

I, Andrew Roman Perrong, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

DATED this January 10, 2026.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
